# **<u>EXHIBIT 1</u>**

skip to main content

Print

# CASE INFORMATION

## CV-20-928108 MARILYN WILLIAMS-SALMON vs. DEEPAK RAHEJA, M.D., ET AL

### Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 02/19/2020 | P1 | BR | BRIEF IN OPPOSITION FILED BY P1 MARILYN WILLIAMS-SALMON PLAINTIFF'S OPPOSITION TO MOTION TO STAY PROCEEDINGS | 📄 |
| 02/19/2020 | D4 | OT | STIPULATION FOR LEAVE TO PLEAD FILED STIPULATION TO EXTEND TIME FOR DEFENDANT AVANIR PHARMACEUTICALS, INC. TO ANSWER, PLEAD, OR OTHERWISE MOVE IN RESPONSE TO THE COMPLAINT | |
| 02/19/2020 | D4 | NT | NOTICE OF APPEARANCE, FILED D4 AVANIR PHARMACEUTICALS, INC. RICHARD T HAMILTON 0042399. | 📄 |
| 02/14/2020 | D3 | MO | MOTION FILED FOR D3 FRANK J. MAZZUCCO MOTION TO STAY PROCEEDINGS | 📄 |
| 02/14/2020 | D3 | NT | NOTICE OF APPEARANCE, FILED D3 FRANK J. MAZZUCCO DONALD J MALARCIK 0061902. NOTICE OF APPEARANCE AS COUNSEL | 📄 |
| 02/12/2020 | N/A | SR | USPS RECEIPT NO. 41033765 DELIVERED BY USPS 02/07/2020 RAHEJA, MD/DEEPAK/ PROCESSED BY COC 02/12/2020. | |
| 02/05/2020 | N/A | SR | USPS RECEIPT NO. 40907734 DELIVERED BY USPS 01/27/2020 HAYSLETTE/GREGORY/ PROCESSED BY COC 02/05/2020. | |
| 02/04/2020 | D1 | CS | WRIT FEE | |
| 02/04/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 02/04/2020 | D1 | SR | SUMS COMPLAINT(41033765) SENT BY CERTIFIED MAIL. TO: DEEPAK RAHEJA, MD 6463 CANTERBURY DRIVE HUDSON, OH 44236-0000 | 📄 |
| 02/03/2020 | P1 | SR | REQUEST FOR SERVICE FILED REQUEST FOR SERVICE UPON DEEPAK RAHEJA, M.D. | 📄 |
| 02/01/2020 | N/A | SR | FX RECEIPT NO. 40907654 RETURNED 1/23/2020 FAILURE OF SERVICE ON PARTY RAHEJA, MD/DEEPAK/ - BAD ADDRESS AFTER 8 DAYS | |
| 01/27/2020 | P1 | NT | NOTICE FILED BY P1 MARILYN WILLIAMS-SALMON NOTICE OF COMPLIANCE WITH R.C. 2923.34C | 📄 |
| 01/25/2020 | N/A | SR | FEDEX RECEIPT NO. 40907657 DELIVERED BY FEDEX 01/24/2020 AVANIR PHARMACEUTICALS, INC. PROCESSED BY COC 01/25/2020. | |
| 01/25/2020 | N/A | SR | FEDEX RECEIPT NO. 40907656 DELIVERED BY FEDEX 01/24/2020 MAZZUCCO/FRANK/J. PROCESSED BY COC 01/25/2020. | |
| 01/22/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 01/22/2020 | D2 | CS | WRIT FEE | |
| 01/22/2020 | D2 | SR | SUMS COMPLAINT(40907734) SENT BY CERTIFIED MAIL. TO: GREGORY HAYSLETTE 280 BIRCHBANK TRAIL AURORA, OH 44204 | 📄 |
| 01/22/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 01/22/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 01/22/2020 | D4 | CS | WRIT FEE | |
| 01/22/2020 | D4 | SR | SUMS COMPLAINT(40907657) SENT BY FEDERAL EXPRESS. TO: AVANIR PHARMACEUTICALS, INC. 30 ENTERPRISE SUITE 400 ALISO VIEJO, CA 92656 | 📄 |
| 01/22/2020 | D3 | CS | WRIT FEE | |
| 01/22/2020 | D3 | SR | SUMS COMPLAINT(40907656) SENT BY FEDERAL EXPRESS. TO: FRANK J. MAZZUCCO 4932 DONEGAL CLIFFS DUBLIN, OH 43016 | 📄 |
| 01/22/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 01/22/2020 | D1 | CS | WRIT FEE | |
| 01/22/2020 | D1 | SR | SUMS COMPLAINT(40907654) SENT BY FEDERAL EXPRESS. TO: DEEPAK RAHEJA, MD 2307 WEST 14TH STREET CLEVELAND, OH 44113 | 📄 |
| 01/21/2020 | P1 | MO | MOTION FOR ADDITIONAL TIME TO OBTAIN AFFIDAVIT OF MERIT MOTION . | 📄 |

THOMAS P RYAN (0082755)

| 01/21/2020 | N/A | SF | JUDGE PETER J CORRIGAN ASSIGNED (RANDOM) |
| 01/21/2020 | P1 | SF | LEGAL RESEARCH |
| 01/21/2020 | P1 | SF | LEGAL NEWS |
| 01/21/2020 | P1 | SF | LEGAL AID |
| 01/21/2020 | P1 | SF | COURT SPECIAL PROJECTS FUND |
| 01/21/2020 | P1 | SF | COMPUTER FEE |
| 01/21/2020 | P1 | SF | CLERK'S FEE |
| 01/21/2020 | P1 | SF | DEPOSIT AMOUNT PAID THOMAS P RYAN |
| 01/21/2020 | N/A | SF | CASE FILED: COMPLAINT, MOTION  |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

Website Questions or Comments.

Copyright © 2020 PROWARE. All Rights Reserved. 1.1.232



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**January 21, 2020 11:01**

By: THOMAS P. RYAN 0082755

Confirmation Nbr. 1920927

MARILYN WILLIAMS-SALMON

vs.

DEEPAK RAHEJA, M.D., ET AL

CV 20 928108

**Judge:** PETER J. CORRIGAN

**Pages Filed:** 172

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| MARILYN WILLIAMS-SALMON | ) | CASE NO: |
| 1001 EAST 71ST STREET | ) | |
| APARTMENT DOWN | ) | |
| CLEVELAND, OHIO 44103 | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| Vs. | ) | |
| | ) | (Jury Demand Endorsed Hereon) |
| DEEPAK RAHEJA, M.D. | ) | |
| 2307 WEST 14TH STREET | ) | MOTION FOR ADDITIONAL TIME TO |
| CLEVELAND, OHIO 44113 | ) | FILE AFFIDAVIT OF MERIT |
| | ) | ATTACHED PURSUANT TO OHIO |
| AND | ) | CIVIL RULE 10(D) |
| | ) | |
| GREGORY HAYSLETTE | ) | |
| 280 BIRCHBARK TRAIL | ) | |
| AURORA, OHIO 44204 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| FRANK J. MAZZUCCO | ) | |
| 4932 DONEGAL CLIFFS | ) | |
| DUBLIN, OHIO 43016 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| AVANIR PHARMACEUTICALS, INC | ) | |
| 30 ENTERPRISE | ) | |
| SUITE 400 | ) | |
| ALISO VIEJO, CA 92656 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| JOHN DOE (S) #1-#10 | ) | |
| Being any and all individuals that participated in | ) | |
| the acts set forth in this complaint, acting | ) | |
| individually and/or by or through their employees | ) | |
| and/or agents, and have caused injury to Plaintiff; | ) | |
| Names and addresses unknown | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## I.  SUMMARY OF ACTION

1.  This complaint seeks recovery for injuries caused to the Plaintiff as a direct and proximate cause of an illegal kickback scheme that involved a pharmaceutical corporation paying doctors to prescribe unnecessary medications to patients.

2.  This complaint is also an action for medical malpractice as a result of the negligent and intentional conduct of Defendant Deepak Raheja, M.D. and his failure to accurately diagnose and properly treat the Plaintiff's medical condition.

3.  Defendants are liable to the Plaintiff for their violation of numerous criminal acts, all which caused or contributed to injuries to the Plaintiff.

4.  Defendants were collectively engaged in a conspiracy to commit fraud through prescribing medications to the Plaintiff for a condition unsupported by her medical symptoms.

5.  Defendants were engaged in a drug kickback scheme within Ohio, and specifically Cuyahoga County, in which Defendant Avanir Pharmaceuticals, Inc. (hereinafter "Avanir") paid physicians (including Defendant Raheja) speaking fees in exchange for the physician's fraudulent prescription a drug sold by Avanir to unsuspecting patients.

6.  Specifically, Defendant Raheja diagnosed Plaintiff with a condition known as Pseudobulbar Affect (PBA), but the patient was knowingly misdiagnosed.  Plaintiff did not have the symptoms of PBA.  To "treat" this condition, Defendant Raheja prescribed a medication commercially sold under the name Nuedexta, a drug sold by Defendant Avanir and approved by the Food and Drug Administration ("FDA") to treat PBA.

7.  Due to the corruption and influence caused by the Defendants scheme, Plaintiff's actual neurological conditions were not treated, causing unnecessary seizures, dizziness, and falls.

Also, Plaintiff suffered from numerous side effects of Nuedexta, including increased dizziness, altered mental state, falls, and injuries to her liver.  All these injuries were caused through the unnecessary prescription and administration of the Nuedexta drug.

8.  Defendant Raheja was involved in a kickback scheme with the co-defendants that provided payments in exchange for writing additional (and unnecessary) prescriptions for Nuedexta. Plaintiff was one of the patients that was prescribed Nuedexta without the correct diagnosis of PBA.

9.  Defendant Raheja participated in this kickback scheme by knowingly soliciting and accepting kickbacks from Defendants Avanir, Gregory Hayslette, and Frank Mazzucco in return for prescribing Nuedexta to Plaintiff.

10. The kickback scheme interfered with the correct medical diagnosis for the Plaintiff, causing Plaintiff to have additional seizures, falls, and injuries, some of which are permanent, as a direct and proximate result of the conduct of the Defendants' collective action.

11. Defendants Raheja, Hayslette, and Mazzucco are presently being prosecuted by the United States Attorney for the Northern District of Ohio for conduct consistent those alleged in this complaint, in case docketed 19-CR-559.  A copy of the Indictment filed in that case is attached to this Complaint as Exhibit A.  The entirety of Exhibit A is incorporated and referenced as if fully rewritten herein.

12. Plaintiff discovered she was a victim of the kickback scheme, medical malpractice, and the actions and inactions of the Defendants through a letter she received from one of the Assistant United States Attorneys ("AUSA"), which was mailed to her on November 8, 2019.  A copy of this letter is attached to this complaint as Exhibit B and is fully

incorporated herein.

13.  Prior to receiving the letter from the AUSA, Plaintiff did not and could not have discovered the actions and failures committed against her were the cause of her continued seizures, dizziness, falls, altered mental state, and other injuries to her body.

14.  Defendants Raheja and Avanir Pharmaceuticals, Inc. are presently involved in a federal lawsuit alleging violations of the False Claims Act, 31 U.S.C. §§ 3729 and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) for conduct similar to the actions alleged in this complaint.  The case is being pursued in the United States District Court for the Northern District of Ohio, Case Number 5:15-CV-611.  A copy of the civil complaint is attached to this Complaint as Exhibit C.  The entirety of Exhibit C is incorporated and reference as if fully rewritten herein.

15.  As a direct and proximate result of the conduct of the Defendants, the Plaintiff was not adequately diagnosed and did not receive appropriate treatment for her condition in numerous respects, as more thoroughly identified below.

16.  As a direct and proximate result of the failures of the Defendants, Plaintiff continues to treat for the injuries sustained during the injuries caused by the misdiagnosis of her condition, the increased severity of seizures due to improper therapy, and the side effects of the drug Nuedexta and/or its components Dextromethorphan HBr and Quinidine Sulfate.

17.  As a direct and proximate result of the Defendants' negligent, intentional, criminal, and corrupt conduct, Plaintiff has suffered permanent injuries, permanent psychological injuries, and further severe and permanent injuries that will be demonstrated at trial.

18.  As a direct and proximate result of the Defendants' failures and deviations from the

standards of care, negligence, conduct, corrupt practices, and criminal violations, Plaintiff has suffered permanent injuries, permanent psychological injuries, and further severe and permanent injuries that will be demonstrated at trial.

19. The Defendants' negligence, criminal conduct, and corruption has caused the Plaintiff to suffer a permanent loss to an organ system of her body.

20. As a direct and proximate result of the negligence, intentional acts, criminal conduct, and corruption of the defendants, and failures to properly treat the patient, Plaintiff has been permanently injured and has incurred significant economic loss, including medical bills, loss of earnings potential, and other economic losses to be demonstrated at trial.

## II.      PARTIES

21. At all times relevant to this complaint, Plaintiff Marilyn Williams-Salmon was, and remains, a resident of the City of Cleveland, Cuyahoga County.

22. Plaintiff was treated by Defendant Raheja, M.D. within Cuyahoga County, primarily at his location at 2307 West 14th Street, Cleveland, Ohio 44113.

23. At all times mentioned in this Complaint, Defendant Deepak Raheja, M.D., and John Doe(s) Physicians or Specialists were and are physicians and/or specialists licensed under the laws of the State of Ohio and are or were engaged in the practice of their profession in the city of Cleveland, Ohio.

24. At all times mentioned in this Complaint, Defendant Deepak Raheja, M.D.'s principal place of business was located at 2307 West 14th Street, Cleveland, Ohio 44113.

25. The identity of Defendants John Doe(s) #1-#10 Physician(s) or Specialist(s) or nurse(s) or hospital(s) or corporation(s) is/are not presently known, and cannot be ascertained without

further discovery.  Plaintiffs have been unable to ascertain the names or identities of John Doe(s) #1-#10, but Plaintiffs reserve the right to substitute a named person or entity for such John (or Jane) Doe upon discovery of any such person or entity whose conduct may have fallen below accepted standards of care.  These Defendants are within the jurisdiction of the court.

26. Defendant Deepak Raheja, M.D. held himself out to the public as providers of medical services and care through medications, therapy, and/or other available treatment.

27. Defendant Gregory Hayslette is a resident of the state of Ohio.  During the relevant time period of this complaint, Defendant Hayslette performed business within Cuyahoga County.  At all times relevant to this complaint, Defendant Hayslette was a pharmaceutical sales representative employed by Defendant Avanir.  Defendant Hayslette was a Neuroscience Area Manager responsible for marketing the drug Nuedexta within Cuyahoga County.

28. Defendant Frank Mazzucco is a resident of the state of Ohio.  During the relevant time period of this complaint, Defendant Mazzucco performed business within Cuyahoga County.  At all times relevant to this complaint, Defendant Mazzucco was employed by Defendant Avanir as a Neuroscience Area Manager, and at some point, was promoted to a Regional Business Manager to an area that included Cuyahoga County.  At all times relevant to this complaint, Defendant Mazzucco was responsible for marketing Avanir's product, Nuedexta, within Cuyahoga County.

29. Defendant Raheja, at all times relevant to the claims alleged herein, was an employee/agent/consultant/servant of Defendant Avanir, and was acting within the scope of that employment/agency/consultancy/servant relationship when he committed the acts set

forth in this complaint that caused injury to the Plaintiff. Defendant Avanir is responsible to Plaintiff for the actions of Defendants Hayslette and Mazzucco through the doctrines of vicarious liability and/or *respondeat superior*.

30. Defendants Hayslette and Mazzucco were, at all times relevant to the claims alleged herein, were employees/agents/servants of Defendant Avanir, and were acting within the scope of that employment/agency/servant relationship when they committed the acts set forth in this complaint that caused injury to the Plaintiff. Defendant Avanir is responsible to Plaintiff for the actions of Defendants Hayslette and Mazzucco through the doctrines of vicarious liability and/or *respondeat superior*.

## III.      JURISDICTION AND VENUE

31. The Plaintiff in this case is a resident of Cuyahoga County.

32. The amount in controversy in this matter exceeds $25,000.00.

33. Upon information and belief, Defendant Deepak Raheja, M.D. has his principal place of business within Cuyahoga County, Ohio.

34. Upon information and belief, at all times relevant to events giving rise to this complaint, Defendant Hayslette was conducting business within Cuyahoga County.

35. Upon information and belief, at all times relevant to events giving rise to this complaint, Defendant Mazzucco was conducting business within Cuyahoga County.

36. Upon information and belief, at all times relevant to events giving rise to this complaint, Defendant Avanir was conducting business within Cuyahoga County.

37. The conduct, actions and inactions which gives rise the causes of actions set forth in this Complaint were caused by the negligent and/or intentional, and/or criminal, and/or corrupt

actions and conduct of one or more Defendants in Cuyahoga County, Ohio, and, accordingly, venue for this action exists in Cuyahoga County, Ohio, pursuant to Rule 3(C) of the Ohio Rules of Civil Procedure.

38. In accordance with Ohio Civil Rule 10(D), a motion for additional time to obtain an Affidavit of Merit is being filed concurrently with this Complaint.

## IV.        FACTS COMMON TO ALL COUNTS

39. Plaintiff incorporates all of the above listed paragraphs as if fully rewritten herein.   In addition, the factual support for this complaint includes the allegations in the attached exhibits to this Complaint.   The allegations set forth in Exhibits A – C are fully incorporated into this Complaint as if fully rewritten herein.   The below paragraphs summarize and supplement the factual allegations of the attachments and add further support for the counts set forth below.

### A.   *Avanir and Nuedexta*

40. The history of Defendant Avanir and the development of the drug Nuedexta is thoroughly described in Exhibits A – C, which, again, are fully incorporated into this Complaint.

41. Avanir is a biopharmaceutical company based in Aliso Viejo, California that markets and sells a single product, Nuedexta.

42. On January 13, 2015, Avanir was acquired by Otsuka Pharmaceuticals Co., Ltd. For $3.5 billion.   Avanir remains a wholly owned subsidiary of Otsuka, but remains the same corporate entity with its headquarters in Aliso Viejo, California.

43. In October 2010, the U.S. Food and Drug Administration approved Nuedexta as a treatment for the medical condition named Pseudobulbar Affect ("PBA").   PBA is a very rare

neurologic condition that causes involuntary outbursts of laughing and/or crying.  PBA can afflict patients who suffer from more serious conditions, such as epilepsy, seizures, dementia, traumatic brain injuries, and stroke.  Nuedexta is not effective for all patients with PBA.  The medical standard of care to diagnosis PBA is not conclusively established by the medical community.

44.     Doctors that observe PBA symptoms do not necessarily choose to treat PBA and rather focus on the treatment of the more serious underlying disease.

45.     Nuedexta can cause numerous side effects, including dizziness, diarrhea, hepatoxicity (liver toxicity), and cardiac conditions.  It also may cause "serotonin syndrome" with changes including altered mental status, restlessness, hyperthermia, shivering, and tremors.

46.     The only published study on the prevalence of PBA in the United States population is the PRISM study, released in 2013.  The PRISM study was funded and developed by Avanir.  One of the authors of the PRISM study was an employee of Avanir; another author received in excess of $60,000.00 in payments from Avanir.  Numerous other conflicts of interest with the PRISM study exist and are more thoroughly documented within Exhibits A-C.

47.     Clinical diagnosis of PBA is difficult and usually relies upon self-reporting of symptoms by the patient.  Avanir's sales and marketing division promoted Nuedexta for all patients with PBA symptoms.  However, a finding PBA or PBA symptoms does not necessarily mean that the pharmacological treatment with Nuedexta is appropriate.  Additionally, Nuedexta has potential side effects that can pose serious risks.  Because Nuedexta may cause dizziness, the danger of falling is heightened, a serious consequence for the elderly.

48.     According to the package insert, Nuedexta was contraindicated for certain patient

populations, including patients with a history of heart rhythm disorders, patients taking other specified medications, and patients taking certain medications for psychiatric disorders or depression.

**B.  _Medicare, Medicaid, and Nuedexta Payment Coverage_**

49.    The United States Congress enacted the Medicare Program in 1965 to provide medical insurance to any person age 65 or older, and to certain disabled persons.  Medicare has several subparts including Medicare Part B (payments for medically necessary doctor services, outpatient care, supplies), and Medicare Part D (prescription drug program). Plaintiff received treatment and drugs covered and reimbursed by Medicare parts B and D.

50.    Medicaid is a federal health care benefit program designated to provide medically necessary services, equipment, supplies and prescription drugs to individuals and families with low income, including those provided to Plaintiff.

51.    In Ohio, Medicaid is administered by the Ohio Department of Medicaid ("ODM").  Ohio providers claimed Medicaid reimbursement from ODM for services provided to individuals, including services provided to Plaintiff.

52.    For a drug to qualify for Medicare Part D reimbursement, the Medicare Prescription Drug Benefit Manual required it be provided only for "medically accepted indications."

53.    Nuedexta only qualified for Medicare Part D reimbursement when provided for its FDA-approved use.  Off-label usage of Nuedexta would not provide reimbursement.

54.    Likewise, Nuedexta only qualified for Ohio Medicaid reimbursement when it was prescribed for an FDA-approved use, absent compelling clinical evidence supporting off-label use by the physician.

55.  Ohio Medicaid Managed Care Organization, CareSource, required a prior authorization for Nuedexta and required a diagnosis of PBA.  Beginning on or about July 31, 2015, a CareSource prior authorization also required a primary diagnosis of a neurological disorder or brain injury.

### C.  *Avanir Promotion and Marketing of Nuedexta*

56.  Avanir began selling Nuedexta in January 2011 and primarily promoted the drug through a speaker's bureau program.   Under this program, Avanir representatives solicited and engaged doctors to speak about and promote Nuedexta to other medical professionals. Typical speaking engagements involved a dinner presentation at a restaurant.   Avanir provided the speaking physicians a slide deck containing the approved presentation materials.  The Avanir sales representative assigned to the speaking doctor was responsible for inviting attendees and was required to attend the presentation given by the doctor.

57.  Avanir had a national sales operation to support the sales of Nuedexta, including local and regional sales representatives.

58.  Avanir's corporate leadership determined and approved annual speaker program budget, to be distributed to the sales team.  Avanir approved these funds for the sales team to use to pay physicians that prescribe Nuedexta to appear at speaking engagements.

59.  On or about February 16, 2011, Defendant Raheja joined the Avanir speaker's bureau program.  From October 2011 through April 2016, Defendant Raheja gave in excess of 200 speaking presentations at various restaurants, including many presentations at restaurants located within Cuyahoga County.

60.  For each presentation, Avanir paid Defendant approximately $1,500.00.  During the same

period between October 2011 through April 2016, Avanir paid Defendant Raheja approximately $331,550.00 from Avanir for speaking engagements related to Nuedexta. Defendant Raheja was Avanir's third highest paid speaker.  During that same period, Defendant Raheja wrote approximately 10,088 Nuedexta prescriptions, (the highest in the country), including prescriptions to Plaintiff.

61. Nuedexta is typically prescribed for 30 days at a time, so that a refill is required every month.  The list price in 2014 was approximately $625 for a 30-day prescription.

62. From June 15, 2015 through September 26, 2016, Defendant Hayslette was a pharmaceutical sales representative employed by Avanir to market and encourage physicians working within Cuyahoga County to prescribe Nuedexta.

63. From November 22, 2010 through September 2, 2016, Defendant Mazzucco was employed by Avanir in a supervisory role over Defendant Hayslette with the primary assignment to market and encourage physicians working within Cuyahoga County to prescribe Nuedexta.

64. Avanir evaluates sales employee's performance based solely on the number of Nuedexta prescriptions written by physicians in their respective territories.  Avanir further encouraged improper sales techniques by rewarding sales representatives based on the total number of prescriptions in their territories, rather than the number of new prescribers in their territories.  Avanir measured prescription results solely on the total number of prescriptions (which includes refills), which creates an incentive for sales employees to encourage existing physician prescribers to prescribe more Nuedexta for inappropriate and illegal reason.

65. The combination of Avanir's measure of performance with the low prevalence of diagnosed

PBA necessarily leads to Sales Representatives rewarding high-volume prescribers with speaking fees to induce them to continue prescribing Nuedexta and to increase the number of their prescriptions.  The low prevalence of diagnosed PBA and the challenges involved in diagnosis make it difficult for an individual physician to consistently identify candidates for treatment with Nuedexta.   The only way for a physician to become a high-volume prescriber is to prescribe the drug to patients who present questionable or borderline cases for treatment, but do not necessarily benefit from Nuedexta.

66.  Defendant Raheja "solved" the low prevalence problem to become the physician that wrote the highest number of Nuedexta prescriptions by falsifying symptoms and fraudulently performing medical exams to justify unnecessary Nuedexta prescriptions.

67.  Because sales representatives and manager performances dependent upon the number of prescriptions generated, Defendants Hayslette and Mazzucco leveraged speaking fees to induce physicians to prescribe Nuedexta.  Defendant Raheja was one of the physicians paid speaking fees directly by, or at the direction of, Defendants Hayslette and Mazzucco.

### D.  *Avanir Had an Illegal and Corrupt Relationship with Defendant Deepak Raheja*

68.  Defendant Raheja was the most prolific prescriber of Nuedexta in the United States.  During the period from March to September 2014, Defendant Raheja wrote an average of 50 prescriptions per week, including prescriptions to Plaintiff.

69.  Defendant Raheja wrote more prescriptions for Nuedexta than the second and third nationally ranked physicians combined.

70.  Consistent with Defendant Avanir's policy of rewarding high-prescribing physicians with lucrative speaking fees, Defendant Raheja was Avanir's highest-paid speaker in the United

States.  In 2014, Defendant Raheja was paid $56,250.00 by Defendant Avanir in speaking fees as a kickback for the high number of prescriptions he wrote for Nuedexta.

71. During a conversation that occurred in September 2014, Defendant Mazzucco requested from his supervisor, Kevin Manieri, to budget eight or nine speaking engagements for Defendant Raheja.  When Mr. Manieri asked Defendant Mazzucco why the speaker funds that were already allocated were not enough, Defendant Mazzucco replied "[Defendant Raheja] is our biggest prescriber and he likes to speak."  When Mr. Manieri responded with concerns that Defendant Mazzucco was offering Defendant Raheja speaking engagements to encourage him to write prescriptions of Nuedexta, Defendant Mazzucco replied "Well, yeah, that's kind of what I'm doing."

72. In 2014, Defendant Raheja modified his patient prescription schedule to assist sales representatives to meet their goals.  Defendant Raheja used his influence with Avanir's management and advocated for a bonus for members of the Avanir sales team.

73. Avanir's Vice President of Sales was aware and tacitly approved of using the speaking fees paid to Defendant Raheja as a kickback to induce the increased prescriptions of Nuedexta.

74. When pressed about concerns of the use of speaker's fees to induce Nuedexta prescriptions, the Vice President of Sales stated it was "just something we have to do."

75. Avanir's Chief Commercial Officer, Rohan Palekar, knew or should have known that a *quid pro quo* relationship existed between Defendant Raheja and Avanir.  Mr. Paleka and Defendant Raheja met in person on several occasions to discuss Avanir's business.  Mr. Pelekar reported directly to the CEO of Avanir, Keith Katkin.

76. Numerous other examples of approval of the kickback scheme are listed within the Exhibits

A – C and involve other corrupt practices in areas outside of Cuyahoga County.

**E.  _History Between Plaintiff and Defendant Deepak Raheja_**

77.  Marilyn Williams began treatment with Defendant Deepak Raheja to address neurologic conditions that were debilitating and impacted her daily life.  These conditions include symptoms consistent with epilepsy, seizures, night seizures, memory loss, debilitating headaches, and other reported symptoms not presently available to Plaintiff because Defendant Raheja has not provided full and complete medical records.

78.  Plaintiff cannot recall the exact date when the treatment began with Defendant Raheja, but based upon her present memory and belief, the treatment began with Defendant Raheja over nine years ago and the treatment occurred at Huron Road Hospital in East Cleveland, Ohio.

79.  Huron Road Hospital closed in August 2011.  At around this time, Plaintiff recalls that her treatment with Defendant Raheja transferred from Huron Road Hospital to his location at 2307 West 14th Street, Cleveland, Ohio 44113.

80.  Based upon information and belief, Plaintiff continued to receive regular treatment and care from Dr. Raheja from 2011 through 2016.

81.  During the same period of time that Plaintiff was being treated by Defendant Raheja, Defendant Raheja was receiving paid kickbacks from Avanir for speaking engagements. This conflict was not disclosed to the Plaintiff and it was not discovered until November 2019.

82.  Plaintiff has requested medical records from Defendant Raheja and Grace Hospital on several occasions, but as of the filing of this complaint, they refuse to fully cooperate and

provide the requested information to Plaintiff or her counsel.

83.  As of the filing of this complaint, Plaintiff has received 20 pages of medical records from Defendant Raheja and no records from Grace Hospital.

84.  Based upon the limited medical records received from Defendant Raheja, Plaintiff received medical care from Defendant Raheja through January 26, 2016.

85.  From 2011 and 2016, Plaintiff continued to experience seizures, symptoms of epilepsy, and continued treatment with Defendant Raheja at his location on West 14th Street.

**F.   *Change in Plaintiffs Treatment Plan and Diagnosis of PBA; Criminal Conduct Between Defendants***

86.  At some point during Plaintiff's treatment, Defendant Raheja modified Plaintiff's diagnosis and incorrectly diagnosed Plaintiff with a neurological disorder known as pseudobulbar affect ("PBA").  Plaintiff did not have signs or symptoms consistent with PBA and the diagnosis was made incorrectly.  Plaintiff was unaware of the misdiagnosis until November 2019 when she received the letter from the AUSA's office informing her of the illegal kickback scheme involving the defendants.

87.  Defendant Raheja prescribed Nuedexta to treat the Plaintiff's incorrect diagnosis of PBA.

88.  Plaintiff trusted her physician, Defendant Raheja, and took the prescribed Nuedexta medication.

89.  Plaintiff's accurate medical diagnosis was concealed from the Plaintiff through January 26, 2016.

90.  Unbeknownst to Plaintiff, Defendants Hayslette and Mazzucco were paying Defendant Raheja to increase the number of prescriptions of Nuedexta and made illegal payments, more thoroughly described in the attached Exhibits A through C.

91. To incentivize physicians to write Nuedexta prescriptions, including Defendant Raheja, Defendants Hayslette and Mazzucco arranged speaker bureau programs for Defendant Raheja, and other physicians, to present information relating to Nuedexta.

92. Defendants Hayslette and Mazzucco, acting in their course and scope of employment with Avanir, facilitated payments and expenses to Defendant Raheja.

93. Defendant Hayslette would facilitate the submission of false and fictitious sign-in sheets from speaking engagements to justify the payments and other benefits to Defendant Raheja.

94. Defendant Hayslette facilitated the promotion of non-FDA approved uses and dosages of Nuedexta through the speaker's bureau program and the distribution of literature to physicians.

95. Defendant Hayslette offered and provided coffee, breakfast, lunch, and other food to Defendant Raheja with little to no substantive discussion about Nuedexta.

96. Defendant Hayslette accessed protected patient health information without authorization and facilitated the submission of false diagnoses of PBA on prior authorizations to Medicaid.

97. In exchange for the above listed payments, kickbacks, services, and benefits, Defendant Raheja wrote more Nuedexta prescriptions, including those to Plaintiff.

98. Defendant Raheja caused the submission of billings to Medicare and Medicaid for Nuedexta prescriptions for patients that did not have PBA, including Plaintiff.

99. Raheja submitted materially false and fictitious prior authorizations to ODM that reflected diagnoses of PBA for patients that did not actually have PBA, including Plaintiff.

100. Defendant Raheja falsely diagnosed patients with PBA, including Plaintiff.

101. Defendant Raheja recorded and falsified medical records to record false symptoms in patient records to support a diagnosis of PBA, including Plaintiff.

102. Defendant Raheja continued to misdiagnose, mistreat, and prescribe Nuedexta to Plaintiff through January 26, 2016.

### G. *Plaintiff is Evaluated by Cleveland Clinic Neurologist in Early 2016 – Does Not Have PBA and Nuedexta Prescription is Discontinued*

103. In the early months of 2016, Plaintiff was informed by Defendant Raheja's office that they could no longer treat her due to "insurance changes."

104. Plaintiff sought treatment and care at the Cleveland Clinic and was referred to Dr. Andrey Stojic, M.D., Ph.D.

105. Dr. Andrey and the Cleveland Clinic repeatedly requested a copy of the Plaintiff's medical chart from Defendant Raheja, but he refused to provide her records to Dr. Andrey.

106. Dr. Stojic evaluated the Plaintiff and determined that she was suffering from seizures and epilepsy and did not have symptoms consistent with PBA.   Dr. Stojic discontinued the Nuedexta prescription as of April 26, 2016.

107. The treatment provided by Dr. Stojic has caused life changing, positive modifications to her health.   The improvements include a significant reduction in the number of seizures, reduction in headaches, fewer falls, and more stable personality.

108. Despite the improvements, Plaintiff continues to suffer debilitating and permanent injuries as a direct and proximate cause of the years-long administration of Nuedexta.

109. Plaintiff was not aware that her improved symptoms were the result of a correct diagnosis and did not become aware of the conduct, mistreatment, and misdiagnosis of the Defendants until after November 19, 2019.

110. As a direct and proximate result of the Defendants' failure to diagnose in a timely manner, Plaintiff suffered additional injury and unnecessary treatment.

111. As a direct and proximate result of the Defendants' failures, Plaintiff's prognosis on life has been reduced.

### H. *Defendants Conduct Violated Numerous Federal and State Criminal Statutes*

112. The illegal kickback scheme violated numerous state and federal criminal statutes, including:

   a.  42 U.S.C. § 1320a-7b(b)(1)(B) (Receipt of Kickbacks in Connection with a Federal Health Care Program);

   b.  42 U.S.C. § 1320a-7b(b)(2)(B) (Offering or Paying Kickbacks in Connection with Federal Health Care Program;

   c.  18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud);

   d.  18 U.S.C. § 1347 (Health Care Fraud);

   e.  18 U.S.C. § 1035 (False Statement Relating to Health Care Matters);

   f.  18 U.S.C. § 1349 (Conspiracy to Commit Honest Services Mail Fraud and Wire Fraud)

   g.  O.R.C. § 2913.40 (Medicaid Fraud)

### I. *Defendants are Liable to Plaintiff for Damages Caused by their Conduct*

113. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has suffered personal and permanent injuries.

114. Plaintiff is seeking damages for all economic and non-economic damages caused by the Defendants, including those that occurred in the past and will continue into the future.

115. The Defendants conduct, actions, and/or omissions stated above demonstrate malice and/or aggravated or egregious fraud and constituted the conscious disregard of the rights and safety of the Plaintiff.

116. Defendant Avanir, as principal and/or master over the co-defendants, knowingly authorized, participated in, or ratified the actions or omissions of its agents or servants or consultants.

117. The Defendants conduct, actions, and/or omissions as stated above allows for the Plaintiff to pursue punitive and/or exemplary damages against the Defendants, as available at law.

118. The Defendants conduct, actions, and/or omissions as stated above allows for the Plaintiff to pursue additional statutory and/or treble damages against the Defendants, as available at law.

119. The Defendants conduct, actions, and/or omissions as stated above allows for the Plaintiff to pursue attorneys' fees and costs, as available at law.

**COUNT ONE**
<u>MEDICAL MALPRACTICE</u>
<u>(AGAINST DEFENDANT RAHEJA)</u>

120. Plaintiffs incorporate by reference each and every allegation contained in the above listed paragraphs as if fully rewritten herein.

121. Defendant Raheja had a duty to exercise and utilize the degree of skill and learning ordinarily used under the same or similar circumstances by members of each respective defendant's profession, position, and specialty. This duty included the diagnosis and treatment of patients with epilepsy, seizures, headaches, and PBA. Defendant Raheja specifically owed this duty to Plaintiff.

122. The treatment and care specified above was under the direction and administration of

Defendant Raheja.

123. Defendant Raheja falsified Plaintiff's medical records and misstated her symptoms to justify the prescription and administration of Nuedexta.

124. During the treatment and care of Plaintiff from 2010 through January 26, 2016, Defendant Raheja breached his duties owed to Plaintiff.

125. During the course of the treatment provided by Defendant Raheja, Defendant Raheja failed to meet the minimum standards of care, and breached his duties owed to the patient, which has caused permanent and severe pain, discomfort, emotional damages, shame, headaches, and permanent injuries to an organ system, including her liver.  Such injuries were caused by the negligent treatment and care of Defendant Raheja.

126. Defendant Raheja knew or should have known that Plaintiff did not have the condition known as PBA.  Defendant knew or should have known that Nuedexta was not the appropriate treatment for the correct diagnosis of Plaintiff's conditions.

127. Such negligent treatment set out in the above paragraphs caused the injury to Plaintiff's nervous system, brain, liver, and brought about by permanent damage to her organ systems and caused permanent injury to the Plaintiff.

128. Defendant Raheja, in his professional care and treatment of Plaintiff, was negligent and careless, and otherwise breached the applicable standard of care commonly exercised by other members of their professional community, in one or more of the following particulars as set out in the below paragraphs setting out the negligence.

129. Defendant Raheja, by his acts and/or omissions, failed to provide the Plaintiff with competent, safe, and acceptable medical care and treatment and negligently failed to follow

the usual skills and procedures regularly used by members of his profession in regard to the care and treatment that was rendered to the Plaintiff, over the course of several years from 2010 through 2016.

130. In addition, Defendant Raheja failed to obtain informed consent from the Plaintiff for the medical care provided such that a reasonable person in the position of the Plaintiff could have made informed decisions as to the medical care provided.

131. Defendant Raheja obtained the consent of Plaintiff to provide treatment through fraudulent means, as more thoroughly identified in the paragraphs above.

132. Defendant Raheja breached his duties owed to Plaintiff by negligently and carelessly failing to properly provide clinical follow-up and avoid sponge retention, as set out above.

133. Defendant Raheja negligently and carelessly failed to monitor the condition and changes of the Plaintiff's condition to guard against known side effects and cross-drug complications, as set out above.

134. Defendant Raheja committed negligence in that he failed to perform necessary treatments which were reasonably available and justified in the course and application of the relevant standard of professional medical care in caring for a patient with a history similar to Plaintiff, which was communicated to him.

135. Defendant Raheja negligently and carelessly failed to provide treatment including failure to perform the proper consultation and clinical follow-up of Plaintiff, as set out above.

136. As a direct and proximate result of the negligence and carelessness of Defendant Raheja, Plaintiff was caused to suffer and did sustain permanent injuries to her body, including those identified above, and significantly impairing her enjoyment of life, injuring Plaintiff in

various other ways which are permanent, and other negligent acts to the Plaintiff that shall be presented at the time of the trial of this matter.

137. As a direct and proximate result of the negligence and carelessness of Defendant Raheja, Plaintiff was caused to suffer and sustain the unnecessary treatment follow-up procedures, pain treatment and therapy. Such injuries caused by the Defendant's negligence has caused significant impairment to Plaintiff's enjoyment of life and has impacted her life in various other ways which are permanent, that shall be made clear at the time of the trial of this matter.

138. Defendant Raheja's actions set forth in this complaint constitute a conscious disregard to the rights and safety of his patient, Plaintiff Marilyn Williams, which subjects Defendant Raheja to punitive and exemplary damages.

139. As a direct and proximate result of the negligence and carelessness of Defendant Raheja, Plaintiff has incurred bills for medical care and treatment and will incur further expense in the treatment and care of the injuries set out above.

140. As a direct and proximate result of the negligence and carelessness of Defendant Raheja, Plaintiff has suffered economic loss through lost wages, and/or lost chance at wages.

141. As a direct and proximate result of the negligence and carelessness of Defendant Raheja, Plaintiff has suffered economic loss through the lost chance at future wages and/or lost earning capacity.

**COUNT TWO**
**MEDICAL BATTERY**
**LACK OF INFORMED CONSENT**
**(AGAINST DEFENDANT RAHEJA)**

142. Plaintiff incorporates by reference each and every allegation contained in the above listed

paragraphs as if fully rewritten herein.

143. Defendant Raheja obtained the consent of Plaintiff through false statements, false examinations, and false diagnosis of the patient.  The Plaintiff's continued consent for treatment was premised on the false statements made by Defendant Raheja that she had the condition PBA.

144. Defendant Raheja obtained consent for treatment through fraud and prevented the Plaintiff from making an informed decision about the medical care she would receive.

145. The consent obtained by Defendant Raheja was sought through fraudulent misrepresentation of material facts made to the Plaintiff.

146. Defendant Raheja was not acting in good faith when he obtained the consent for treatment of the Plaintiff.

147. Because the consent granted by Plaintiff was obtained through false or fraudulent means, the consent is deemed invalid and the treatment provided by Defendant Raheja was done without the Plaintiff's consent.

148.  Ohio Revised Code Section 2317.54 requires that written consent is only valid if it is obtained in good faith and without fraudulent misrepresentation of material facts.  The consent obtained by Defendant Raheja from Plaintiff did not comply with R.C. 2317.54.

149. Defendant Raheja performed medical treatment upon the Plaintiff and prescribed unnecessary medications without the consent of the Plaintiff.

150. Because there was no valid consent for treatment, Defendant Raheja committed a battery upon Plaintiff during the time period that he provided treatment to the plaintiff.

151. Defendant Raheja committed a battery upon the Plaintiff when he treated her without her

consent on the following dates:

    a.   May 27, 2015;

    b.   October 14, 2015;

    c.   December 21, 2015;

    d.   January 6, 2016;

    e.   January 26, 2016;

    f.   March 14, 2016.

152. Defendant committed a battery upon the Plaintiff on other dates, but Defendant Raheja has refused to provide medical records to verify the dates of treatment. Further dates when a battery occurred will be presented at the trial of this matter.

153. Plaintiff learned in November 2019 that Defendant Raheja obtained her consent through fraudulent means.

154. Defendant Raheja committed an intentional act upon the Plaintiff without the consent of the Plaintiff.

155. As a direct and proximate result of the battery committed by Defendant Raheja, Plaintiff was caused to suffer injuries, as more thoroughly specified above.

**COUNT THREE**
NEGLIGENCE
(AGAINST ALL DEFENDANTS)

156. Plaintiff incorporates by reference each and every allegation contained in the above listed paragraphs as if fully rewritten herein.

157. Defendants, individually and collectively, had the duty to refrain from interfering with the doctor-patient relationship and to adhere to state and federal laws. The duty to refrain from

interfering with the doctor-patient relationship was specifically applicable to the Plaintiff, as set forth in the above stated paragraphs.

158. Defendants, individually and collectively, had the duty to refrain from providing kickbacks for writing unnecessary prescriptions, which was specifically applicable to the Plaintiff, as set forth in the above stated paragraphs

159. Defendants, individually and collectively, were under the duty to refrain from unduly influencing the administration of medicine within the state of Ohio.  The duty to refrain from unduly influencing the administration of medicine was specifically applicable to the Plaintiff, as set forth in the above stated paragraphs.

160. Defendants, individually and collectively, had the duty to refrain from committing illegal acts, which was specifically applicable to the Plaintiff, as set forth in the above stated paragraphs.

161. Defendants breached the duties they owed to the Plaintiff when they committed the actions, omissions, as stated above.

162. Defendants were negligent to the Plaintiff in numerous other respects, which will be presented fully at the trial of this matter.

163. The Defendants conduct, actions, and/or omissions stated above demonstrate malice and/or aggravated or egregious fraud and constituted the conscious disregard of the rights and safety of the Plaintiff.

164. As a direct and proximate result of the Defendants actions and conduct alleged above, Plaintiff was injured and suffered damages as set forth above.

**COUNT FOUR**
CIVIL RECOVERY FOR CRIMINAL ACT
R.C. 2307.60
(AGAINST ALL DEFENDANTS)

165. Plaintiff incorporates by reference each and every allegation contained in the above listed paragraphs as if fully rewritten herein.

166. Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.  Damages include full damages, including the costs of maintaining the action and attorney's fees.  The statute also allows for punitive or exemplary damages.

167. Defendants are presently being prosecuted in the Northern District of Ohio in Case number 19-CR-559.  As stated above, the criminal conduct identified in the indictment (Exhibit A) is fully incorporated into this complaint and is relied upon the demonstrate the predicate facts to establish liability under this count.

168. Defendants Raheja and Avanir are presently being pursued in a False Claim Act civil claim in the Northern District of Ohio in Case number 15-CV-611 for violations of several criminal statutes.  As stated above, the criminal conduct identified in the False Claim Act complaint (Exhibit C) is fully incorporated into this complaint and is relied upon the demonstrate the predicate facts to establish liability under this count.

169. Defendants are guilty of some, if not all, of the criminal offenses set forth in Exhibits A - C.

170. Defendant Avanir is liable to the Plaintiff for the criminal conduct of their employees, agents, consultants, and servants through the doctrine of vicarious liability and/or *respondeat superior*.

171. Defendant Avanir knowingly authorized, participated in, and ratified the criminal actions of

the co-defendants and are liable to the Plaintiff for all damages set forth in the above listed paragraphs.

172. Specifically, the Defendants Raheja, Hayslette, and Mazzucco are guilty of violations of 42 U.S.C. § 1320a-7b(b)(1)(B) (Receipt of Kickbacks in Connection with a Federal Health Care Program); 42 U.S.C. § 1320a-7b(b)(2)(B) (Offering or Paying Kickbacks in Connection with Federal Health Care Program; 18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud); 18 U.S.C. § 1347 (Health Care Fraud); 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); and 18 U.S.C. § 1349 (Conspiracy to Commit Honest Services Mail Fraud and Wire Fraud)

173. Defendants Raheja, Hayslette, and Mazzucco are guilty of violations of O.R.C. § 2913.40 (Medicaid Fraud).

174. As a direct and proximate result of the criminal acts and unlawful conduct alleged above, Plaintiff suffered personal injuries, and has suffered economic, non-economic, and future damages as set forth in the above listed paragraphs.

175. As a direct and proximate result of the Defendants criminal acts and unlawful conduct alleged above, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which the Defendants are liable, including, but not limited to, pain and suffering, the loss of wages, loss of potential wages and benefits, and other damages as set forth in the paragraphs above.

176. As a direct and proximate result of the Defendants criminal acts, Plaintiff was caused to suffer personal injuries, including permanent and future injuries, as more thoroughly described in the above listed paragraphs.

**COUNT FIVE**
**OHIO CORRUPT PRACTICES ACT**
**R.C. 2923.34**
**(AGAINST ALL DEFENDANTS)**

177. Plaintiff incorporates by reference each and every allegation contained in the above listed paragraphs as if fully rewritten herein.

178. Defendants Avanir, Hayslette, and Mazzucco were engaged in an enterprise with Defendant Raheja for the purposes of committing criminal acts, as set forth in the above listed paragraphs.

179. Defendants Avanir, Hayslette, and Mazzucco were engaged in an enterprise with Defendant Raheja within the meaning of R.C. § 2923.31(C), as further alleged within this complaint.

180. The activities of the Defendants as alleged herein, and in the attached exhibits, violated the Ohio Corrupt Practices Act, R.C. §§ 2923.31, *et seq.*

181. Defendants conducted or participated in the affairs of the enterprise through a pattern of corrupt activity, in violation of R.C. § 2923.32(A)(1) – (3).

182. As stated above, the Defendants have committed two or more state and/or federal criminal offenses.

183. The pattern of corrupt activity complained of herein constituted two or more incidents of corrupt activity, that were related to the affairs of the enterprise, were not isolated, occurred for several months and years, and were not so closely related to each other and connected in time and place that they constitute a single event, as required by R.C. § 2923.31(E), as fully documented and alleged in the paragraphs listed within this complaint.

184. Defendants, individually and collectively, participated in the affairs of the enterprise,

acquired and maintained an interest of the enterprise, and controlled the enterprise.

185. The Defendants violations of R.C. §§ 2923.32 are the direct and proximate cause of injuries to the Plaintiff, as fully documented in the above listed paragraphs.

**COUNT SIX**
CIVIL CONSPIRACY
(AGAINST ALL DEFENDANTS)

186. Plaintiff incorporates by reference each and every allegation contained in the above listed paragraphs as if fully rewritten herein.

187. As set forth in the paragraphs above, Defendants committed criminal acts due to their illegal kickback scheme to write prescriptions to patients, including Plaintiff, for conditions they did not have.

188. As set forth in the paragraphs above, Defendants conspired to commit fraud through their illegal kickback scheme to increase the number of prescriptions to patients, including Plaintiff, for conditions they did not have.

189. Defendants conspired to increase the number of Nuedexta prescriptions by diagnosing patients for a condition not supported by their symptoms.

190. Defendants acted in concert when they violated the above listed criminal statutes, allowing for a civil recover as set forth above.

191. The object and purpose of the conspiracy was to increase the number of prescriptions of Nuedexta, regardless of the patient's symptoms, for the purposes of enriching the Defendants and to further prevent their detection.

192. Defendants took numerous steps in furtherance of the conspiracy, as thoroughly identified in the paragraphs listed above.

193. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff was injured in the manner fully documented in the above listed paragraphs

**WHEREFORE, as to all counts,** Plaintiff demands judgment both compensatory and punitive against all of the defendants both jointly and severally in amounts in excess of Twenty-Five Thousand Dollars ($25,000.00), plus attorney fees, further all Plaintiffs seek interest for such damages, and the costs of the action, together with any and all further legal and equitable relief that the Court finds to be just and proper, including statutory relief available for the allegations set forth in this complaint;

**Further**, as to Count One, Plaintiff requests all compensatory and punitive damages against Defendant Raheja in excess of Twenty-Five Thousand Dollars ($25,000.00), plus attorney fees and costs of this action, together with any and all further legal and equitable relief that the Court finds to be just and proper;

**Further**, as to Count Two, Plaintiff requests all compensatory and punitive damages against Defendant Raheja in excess of Twenty-Five Thousand Dollars ($25,000.00), plus attorney fees and costs of this action, together with any and all further legal and equitable relief that the Court finds to be just and proper;

**Further**, as to Count Three, Plaintiff requests all compensatory and punitive damages against Defendants, jointly and severally, in excess of Twenty-Five Thousand Dollars ($25,000.00), plus attorney fees and costs of this action, together with any and all further legal and equitable relief that the Court finds to be just and proper;

**Further**, as to Count Four, Plaintiff requests all compensatory, statutory, and punitive and/or exemplary damages against Defendants, jointly and severally, and all other or additional

damages available pursuant to R.C. 2307.60, in excess of Twenty-Five Thousand Dollars ($25,000.00), plus attorney fees and costs of this action, together with any and all further legal and equitable relief that the Court finds to be just and proper;

**Further**, as to Count Five, Plaintiff requests all compensatory, statutory and punitive damages against Defendants, jointly and severally, and all other or additional damages available pursuant to R.C. 2923.34, in excess of Twenty-Five Thousand Dollars ($25,000.00), plus treble and exemplary damages, plus attorney fees and costs of this action, together with any and all further legal and equitable relief that the Court finds to be just and proper

**Further**, as to Count Six, Plaintiff requests all compensatory and punitive damages against Defendants, jointly and severally, in excess of Twenty-Five Thousand Dollars ($25,000.00), plus attorney fees and costs of this action, together with any and all further legal and equitable relief that the Court finds to be just and proper.

Respectfully submitted,

_/s/Daniel J. Ryan_
Daniel J. Ryan (#0012134)
55 Public Square
Suite 2100
Cleveland, Ohio 44113
daniel.ryan@ryanllp.com
(216) 363-6082

_/s/Thomas P. Ryan_
Thomas P Ryan (#0082755)
55 Public Square
Suite 2100
Cleveland, Ohio 44113
thomas.ryan@ryanllp.com
(216) 363-6028

## JURY DEMAND

Pursuant to Rules Ohio Rules of Civil Procedure and further as provided by law, Plaintiffs demand a trial by jury composed of the maximum number of jurors as permitted by law.

/s/Daniel J. Ryan_____
Daniel J. Ryan
Attorney for Plaintiffs

FILED

SEP 18 2015

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | 1 : 19 CR 559 |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | Title 18, Sections 371, |
| DEEPAK RAHEJA, | ) | 1028A(a)(1), 1035, 1341, 1343, |
| GREGORY HAYSLETTE, | ) | 1346, 1347, 1349 and 2, United |
| FRANK MAZZUCCO, | ) | States Code; Title 42, Sections |
| BHUPINDER SAWHNY, | ) | 1320a-7b(b)(1), 1320a- |
| | ) | 7b(b)(1)(B), 1320a-7b(b)(2)(B) |
| Defendants. | ) | and 1320d-6(a)(3) and (b)(1), |
| | ) | United States Code |

GENERAL ALLEGATIONS

JUDGE LIOI

At all times relevant to this Indictment:

I.    **Defendants and Other Entities**

1.    DEEPAK RAHEJA was a medical doctor licensed by the State of Ohio Medical Board on or about July 14, 1993. RAHEJA specialized in psychiatry and neurology.

2.    On or about December 29, 1994, RAHEJA filed articles of incorporation with the State of Ohio for D. RAHEJA, MD., Inc. RAHEJA's primary practice location was 2307 West 14th Street, Cleveland, Ohio.

3.    From on or about June 15, 2015, through on or about September 26, 2016, GREGORY HAYSLETTE was a pharmaceutical sales representative employed by Avanir Pharmaceuticals, Inc. ("Avanir"). HAYSLETTE was a Neuroscience Area Manager in the Northern District of Ohio, Eastern Division, responsible for marketing the drug Nuedexta.

Complaint - EXHIBIT A

4.    From on or about November 22, 2010, through on or about July 27, 2014, FRANK MAZZUCCO was employed by Avanir as a Neuroscience Area Manager.  On or about July 28, 2014, MAZZUCCO was promoted to Avanir Regional Business Manager and assigned to an area that included RAHEJA, SAWHNY, and F.P.'s practices.  MAZZUCCO supervised HAYSLETTE until MAZZUCCO's separation from Avanir on or about September 2, 2016.

5.    BHUPINDER SAWHNY was a medical doctor licensed by the State of Ohio Medical Board on or about May 3, 1982.  SAWHNY specialized in neurosurgery.  SAWHNY's primary practice location was 6731 Ridge Road, Parma, Ohio.

6.    F.P. was a medical doctor licensed by the State of Ohio Medical Board on or about July 31, 1967.  F.P. specialized in oncology.  F.P.'s primary practice location was 6559 Wilson Mills Road, Suite #107, Mayfield, Ohio.

## II.    Nuedexta and Pseudobulbar Affect ("PBA")

7.    Avanir manufactured Nuedexta, which was approved by the Food and Drug Administration ("FDA") solely for the treatment of PBA.  PBA generally occurred secondary to a variety of neurologic conditions and was characterized by involuntary, sudden and frequent episodes of uncontrollable laughing and crying.  PBA episodes typically occurred out of proportion and incongruent to the underlying emotional state.  PBA was distinct from other types of emotional lability that may occur in patients with neurological disease or injury.

8.    Nuedexta was a combination of 20 mg dextromethorphan hydrobromide and 10 mg quinidine sulfate.  Dextromethorphan hydrobromide was an antitussive agent used in many over-the-counter cough syrups.  Quinidine sulfate was an antiarrhythmic agent and antimalarial schizonticide.  Nuedexta was available in a 60-unit bottle, which was a 30-day supply, and typically cost approximately $600-$800.  The recommended starting dose was one capsule each

day for the first seven days and two capsules per day thereafter. According to the prescribing information, the prescriber should periodically reassess the need for continued treatment because some patients experienced spontaneous improvement of PBA.

9.     According to the package insert, Nuedexta was contraindicated for certain patient populations, including patients with a history of heart rhythm disorders, patients taking certain heart medications, and patients taking certain medications for psychiatric disorders or depression. Nuedexta was not recommended, without appropriate caution, for use in patients under the age of 18 and patients who were or could become pregnant.

## III.    Medicare and Medicaid

10.    Congress enacted the Medicare Program on July 30, 1965, under Title XVIII of the Social Security Act. Medicare provided medical insurance benefits to any person age 65 or older and to certain disabled persons. Medicare was a health care benefit program within the meaning of Title 18, United States Code, Section 24(b); it was a public plan, affecting commerce, under which medical benefits, items and services were provided to individuals.

11.    Medicare Part B (Medical Insurance) helped cover doctors' services, outpatient care, and supplies, when they were ordered by a doctor and medically necessary.

12.    Medicare Part D (Prescription Drug Program) was administered by commercial health insurance plans chosen by the Medicare beneficiary. These health insurance plans, known as Part D Plan Sponsors, were private entities that made payments to dispensing pharmacies for prescriptions. A Part D Plan Sponsor could be a prescription drug plan, a Medicare Advantage organization that offered a Medicare Advantage prescription drug plan, a Program of All-Inclusive Care for the Elderly ("PACE") organization offering a PACE plan including qualified prescription drug coverage, or a cost plan offering qualified prescription drug coverage.

13.     Medicaid was a federal health care benefit program designated to provide medical services, equipment, supplies and prescription drugs to certain individuals and families with low income as outlined in the Social Security Act (Title 42, United States Code, Section 1396 *et seq.*).  Medicaid was a health care benefit program within the meaning of Title 18, United States Code, Section 24(b); it was a public plan, affecting commerce, under which medical benefits, items and services were provided to individuals.  The United States Department of Health and Human Services historically funded approximately sixty percent of Ohio's Medicaid program. The Ohio Department of Medicaid ("ODM") administered the Medicaid program in Ohio.

14.     Eligible Medicaid recipients obtained Medicaid coverage directly through ODM, also known as fee-for-service ("FFS") coverage, or through a Medicaid Managed Care Organization ("MCO"), which contracted with ODM to manage some Medicaid recipients' benefits.  Ohio providers claimed Medicaid reimbursement from ODM pursuant to written provider agreements.  ODM and MCOs received, processed, and paid those claims according to Medicaid rules, regulations, and procedures.

## IV.     Nuedexta Coverage under Medicare and Medicaid

15.     For a drug to qualify for Medicare Part D reimbursement, the Medicare Prescription Drug Benefit Manual required that it be provided only for "medically accepted indications."  A medically accepted indication included uses approved by the FDA or off-label uses supported by one or more of three compendia specified in Section 1927(g)(1)(B) of the Social Security Act.  None of the compendia listed any approved off-label uses for Nuedexta; therefore, Nuedexta only qualified for Medicare Part D reimbursement when provided for its FDA-approved use.

16.     Some Medicare Part D Plan Sponsors required a prior authorization for Nuedexta.

17.     For a drug to qualify for Ohio Medicaid reimbursement, the Ohio Medicaid Pharmacy program required that it be provided for an FDA-approved use.  Medicaid generally excluded coverage for off-label uses.  Nuedexta only qualified for Medicaid reimbursement when provided for its FDA-approved use absent compelling clinical evidence supporting off-label use provided by the physician.

18.     Ohio Medicaid FFS did not require a prior authorization for Nuedexta.  Ohio Medicaid MCO Caresource required a prior authorization for Nuedexta.  A Caresource prior authorization for Nuedexta required a diagnosis of PBA.  Beginning on or about July 31, 2015, a Caresource prior authorization also required a primary diagnosis of a neurological disorder or brain injury.

**V.      Promotion of Nuedexta**

19.     Avanir promoted Nuedexta through a speaker's bureau program.  Under the speaker's bureau program, Avanir representatives engaged doctors to speak about and promote Nuedexta to other medical professionals.  Typical speaking engagements involved a dinner presentation at a designated restaurant.  Avanir provided speakers with a slide deck containing the approved presentation materials.  The Avanir sales representative assigned to the speaking doctor was responsible for inviting attendees and was required to attend presentations given by the speaking doctor.

20.     Avanir contracted with outside companies, including Curry Rockefeller Group ("CRG") and HealthStar Communications, LLC ("HSC"), to facilitate its speaker's bureau program.  With respect to HSC, the Avanir sales representative electronically submitted closeout sheets following each speaking engagement, which documented the date, location, attendees and expenses associated with the program and certified the accuracy of the information provided.

Based on these submissions, HSC paid the speaking doctor the agreed honorarium and reimbursed any attendant expenses.

21.    On or about February 16, 2011, RAHEJA joined the Avanir speaker's bureau. From in or around October 2011 through in or around April 2016, RAHEJA gave approximately 211 speaking presentations at various restaurants and doctor's offices. For each of these purported presentations, Avanir paid RAHEJA approximately $1,500. During that same time, RAHEJA received approximately $331,550 from Avanir in honoraria for speaking engagements related to Nuedexta and was Avanir's third highest paid speaker. During that same time, RAHEJA wrote approximately 10,088 Nuedexta prescriptions, the highest in the country.

COUNT 1

(Conspiracy to Solicit, Receive, Offer and Pay Health Care Kickbacks, 18 U.S.C. § 371)

The Grand Jury charges:

22.    The factual allegations contained in Paragraphs 1-5 and 7-21 are incorporated by reference as if fully restated herein.

23.    From in or around February 2011, through in or around July 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, FRANK MAZZUCCO, and BHUPINDER SAWHNY, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit certain offenses against the United States, that is:

a.    To violate Title 42, United States Code, Section 1320a-7b(b)(1)(B) by knowingly and willfully soliciting and receiving any remuneration (including any kickback, bribe, or rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for the purchasing, ordering and arranging for and recommending the purchasing, ordering and

arranging of goods, services and items, that is, prescriptions for Nuedexta, for which payment may be made in whole and in part by a federal health care program as defined by Title 18, United States Code, Section 24(b); and

b.    To violate Title 42, United States Code, Section 1320a-7b(b)(2)(B) by knowingly and willfully offering and paying any remuneration (including any kickback, bribe, or rebate) directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from Avanir employees, to induce physicians and other health care professionals to purchase, order, and arrange for and recommend the purchase, order, and arranging of goods, services and items, that is, prescriptions for Nuedexta, for which payment may be made in whole and in part by a federal health care program as defined by Title 18, United States Code, Section 24(b).

## OBJECT OF THE CONSPIRACY

24.    The object of the conspiracy was for HAYSLETTE and MAZZUCCO to cause the unlawful payment of kickbacks to RAHEJA and SAWHNY and the receipt of kickbacks by RAHEJA and SAWHNY as an inducement and in exchange for increasing Nuedexta prescriptions.

## MANNER AND MEANS

25.    It was part of the conspiracy that, to incentivize physicians to write Nuedexta prescriptions and thereby increase compensation to themselves:

a. HAYSLETTE and MAZZUCCO arranged speaker's bureau programs, many with little to no educational value, for RAHEJA, SAWHNY and other medical professionals relating to Nuedexta.

b. HAYSLETTE and MAZZUCCO facilitated the payment of honoraria and other expenses to RAHEJA.

c. HAYSLETTE facilitated the submission of false and fictitious sign-in sheets from speaking engagements to justify the event and maximize payments and other benefits to RAHEJA and SAWHNY.

d. HAYSLETTE facilitated the promotion of non-FDA-approved uses and dosages of Nuedexta through the speaker's bureau program and the distribution of literature to physicians.

e. HAYSLETTE offered free firearms training, office equipment and other things of value to SAWHNY.

f. HAYSLETTE provided coffee, breakfast, lunch and other food and beverage to RAHEJA, SAWHNY and their office staff, usually with little to no substantive discussion about Nuedexta.

g. HAYSLETTE accessed protected patient health information without authorization.

h. HAYSLETTE facilitated the submission of false diagnoses of PBA on prior authorizations to Medicaid MCOs.

26. It was further part of the conspiracy that, in return for things of value:

a. RAHEJA and SAWHNY wrote more Nuedexta prescriptions.

   b.    RAHEJA and SAWHNY caused the submission of billings to Medicare
         and Medicaid for Nuedexta prescriptions for patients that did not have
         PBA.

   c.    RAHEJA and SAWHNY submitted and caused the submission of
         materially false and fictitious prior authorizations to Medicaid MCOs that
         reflected diagnoses of PBA for patients that did not actually have PBA.

   d.    RAHEJA falsely diagnosed patients with PBA.

   e.    RAHEJA recorded and caused the recording of false symptoms in patient
         records to support a diagnosis of PBA.

   f.    SAWHNY permitted unauthorized access to protected patient health
         information.

                                OVERT ACTS

27.    In furtherance of the conspiracy, and to effect the object thereof, RAHEJA,
HAYSLETTE, MAZZUCCO, and SAWHNY and others committed the overt acts described in
the following paragraphs in the Northern District of Ohio, Eastern Division, and elsewhere.

**I.    Speaker's Bureau Programs**

   A.    Arrangements

28.    On or about February 16, 2011, RAHEJA entered into a Consulting Agreement
with Avanir, in which he agreed to give speaking presentations regarding Nuedexta in exchange
for an approximate $1,500 honorarium per live speaking engagement.

29.    On or about November 1, 2012, RAHEJA entered into a Speaker Consulting
Agreement with Avanir, in which he agreed that his speaking presentations regarding Nuedexta
should comply with FDA guidelines and regulations concerning approved product use and

acknowledged that his speaking engagements should not incentivize favorable prescribing decisions.

           1.      Texts between HAYSLETTE and MAZZUCCO

30.      On or about the dates and times listed below, HAYSLETTE and MAZZUCCO sent the following text messages and emails, in which they discussed the importance of arranging and maintaining RAHEJA's participation in the speaker's bureau program, each text and email constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | August 10, 2015 10:11:35 AM | MAZZUCCO | HAYSLETTE | Good morning Gregg. Have you seen Dr. R. Yet today? He never replied to my text update on Friday. D. had mentioned that she never heard back from him a few times last week either. (All of this is fine, I just want to be sure that things are still good! You still have the impression that everything is rolling and that he is remains fired up, correct?) Please let me know the vibe that you are getting. Thanks for staying so close to this account, at all times of the day and night. Lifeblood account. |
| b | August 10, 2015 10:42:55 AM | HAYSLETTE | MAZZUCCO | Hey Frank. Good morning. No, will see him after lunch. Yeah, I wouldn't worry about it Frank. Had two programs last week, saw him twice in addition, one being a lunch on fri. He had an early day on fri bc he was heading to Vegas. Unless I'm missing something, I wouldn't read into it too much. He's committed and has told me he's going to keep it moving. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| c | October 5, 2015 14:07:53 PM | HAYSLETTE | MAZZUCCO | I totally agree...I have created a monster and it wants to eat. However, I was following the notion that "if R wants to do a prgm, do it." I did lock and load all programs previously per ur request, however, he has requested add' prgms within all ready scheduled prgms..im trying to accommodate him and keep things going. I will let him know gently that our current prgm momentum will have to be tempered going forward. Thx Frank |
| d | October 5, 2015 4:14:52 PM | MAZZUCCO | HAYSLETTE | In fairness to you, the monster had already been created. He is just bigger now. Let's talk live tomorrow, about managing this. I do believe that S. will give me more funds. The question will be, how do we use them most effectively? This will be important, because our budget for next year will be tighter (per D.). We do not want one program per week to become a disappointment. That is where managing him down the stretch will be critical. Let's catch up tomorrow afternoon, or before your program. I will be driving to Youngstown early evening. |
| e | October 5, 2015 4:46:26 PM | HAYSLETTE | MAZZUCCO | Haha. Yes, on HGH. I agree. There's a way to contain the beast, ration the beast if u will w/o impeding our forward progress. Looking forward to hearing what u have to say and coming up with a sound solution to manage things. Thx Frank. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| f | October 5, 2015 16:55:17 4 | MAZZUCCO | HAYSLETTE | Exactly. There is a way. We have always had to manage him, through the budgetary ebbs and flows, since launch. Breathe easily and rest assured. It can be done and it has been down, for nearly 5 years now. We will get it right. A monster Q4 bonus and a PCLUB campaign is in play for 2016. I will strategically help you get set up for 2016, once we have more details about launch and the product weighting. Until then, Q4 looks to be self explanatory...71-75 weekly paces you with the best of the best, nationally! |
| g | October 23, 2015 9:02:21 AM | MAZZUCCO | HAYSLETTE | I had a great convo with R this morning. He was praising you for your drive and effort! I commend you as well!!! I am finishing my business plan for S. How many times do you see R each week, on average, Sunday through Saturday? How many phone conversations do you have during the seven day week? How many text exchanges? Thanks! |
| h | October 23, 2015 9:07:45 AM | HAYSLETTE | MAZZUCCO | Awesome! Thx a lot Frank. 5-7 times (visits), 10 phone calls, 20+ texts. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| i | December 21, 2015 9:18:47 PM | HAYSLETTE | B.L. | Due to my speaker being near his 2015 cap, I'm not able to add him for any 2016 programs. I have loaded a number of programs for 2016 and saved them as "drafts." Please add Dr. Deepak Raheja to each of them as the speaker (NO TRAVEL ARRANGEMENTS, ETC ARE NECESSARY). Please incorporate all of the bloew points into each of these programs: 1. Small round table that seats six to seven people (no private room to avoid room charge). 2. No minimum guests. 3. No food and beverage minimum. 4. No pre-set menu (ability to order off the menu). 5. No A/V equipment. |
| j | January 7, 2016 4:30 PM | HAYSLETTE | MAZZUCCO | A fwd from R. He's hungry, believes in what we are doing and is committed to operation "Shock and Awe." Time to feed the beast Frank |
| k | January 16, 2016 12:31 AM | HAYSLETTE | MAZZUCCO | Just did. Looks legit. :) I will draft 4 programs and contact B./B. about adding Dr. R as the speaker. Thanks a lot for the back-support. Appreciate it! |

31.     On or about the dates and times listed below, HAYSLETTE and MAZZUCCO

sent the following text messages, in which they discussed their comparative ranking vis-à-vis

other Avanir employees and RAHEJA's comparative ranking vis-à-vis other physicians, each

text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | August 3, 2015 10:23:04 AM | MAZZUCCO | HAYSLETTE | Gregg, FYI...I sent the following text to Dr. R. Last Friday: "Good morning Dr. Raheja. We had a down week, with 39 Rx's. Gregg dropped down to #17 but I remained at #4, which is good. We are still at a solid average through the first few weeks of July. Gregg will bounce back up into the top 5 with a few thunderous weeks!!! Thank you for your support each day. I appreciate you very much and look forward to our continued work together, putting Cleveland back on top!!! Was it a good week this past week? Thanks and have a terrific weekend!" Probably need 54-56 from him this week, especially if his numbers for the past few weeks have been off track. Thanks Gregg and have a great week. Your top five accounts will carry you! |
| b | August 3, 2015 4:11:34 PM | MAZZUCCO | HAYSLETTE | Feel free to tell him the number. |
| c | August 7, 2015 10:10:48 AM | HAYSLETTE | MAZZUCCO | If I looked at the data correctly, R hit his mark for the week at 53 right? |
| d | August 7, 2015 10:42:19 AM | MAZZUCCO | HAYSLETTE | That is exactly correct! He hit it. |
| e | August 26, 2015 2:32:40 PM | MAZZUCCO | HAYSLETTE | How is DR doing this week? Has he mentioned numbers to you at all? I didn't look at our spreadsheet for this week. |
| f | August 26, 2015 2:32:53 PM | MAZZUCCO | HAYSLETTE | How many do we need? |
| g | August 26, 2015 3:32:21 PM | HAYSLETTE | MAZZUCCO | Great! Just that he's continuing to write has much as possible and he will make sure we hit our numbers. :) 53 should be the magic number |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| h | August 27, 2015 8:54:26 PM | HAYSLETTE | MAZZUCCO | I told R about the numbers. He said the last two weeks have been thunderous. He's confident and so am I:) we'll make it happen Frank! |
| i | September 11, 2015 8:35:31 AM | MAZZUCCO | HAYSLETTE | Surprised that R has fallen, 2 out of the past 3 weeks. We need him back in the mid 50's. However, to really make a move during the remainder of Septmeber, he is going to have to pretend like the next two weeks are a PCLUB run for you. He dropped 75-76 per week for S. last September, trying to give B. an extra push towards PCLUB (it fell short, but B. finished the year at #11 in the nation). It might be time to ask R to double book Monday for the last three weeks of September, to get you our of the 20's and into the top 10 for the quarter. |
| j | September 11, 2015 9:52:55 AM | MAZZUCCO | HAYSLETTE | A huge 3 week run down the stretch in September would do the trick. If he know that he has to go bananas over the next three weeks, you can pull off a big jump up in the rankings. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| k | September 11, 2015 9:55:07 AM | HAYSLETTE | MAZZUCCO | On a side note, I don't think it would hurt for u to call him and explain how the numbers work(how I get paid). I have talked to him a few times and tried to explain things and I'm not fully sure he gets it/understands. I've told him that it's all based on growth. But in addition to growth, it is imperative that pts. Keep refilling their rxs. If they don't, then baseline rxs slip and any new rxs he writes essentially become canceled(assuming his rate of refill decline mirrors his rate of new rxs) Is that about accurate? |
| l | September 11, 2015 10:19:18 AM | MAZZUCCO | HAYSLETTE | If you give him a quantifiable goal (exact number) for the remaining three weeks of September, based on our quarterly goal, it might be concrete for him. |
| m | September 16, 2015 10:42:38 AM | MAZZUCCO | HAYSLETTE | Is R ready to crank down the stretch this September?  We need him to make up some ground for some of the off weeks this quarter. He needs to pretend that PCLUB weighs on these final two weeks of Sept. When he does this, he usually cranks 65-75 weekly. |
| n | September 16, 2015 10:54:13 AM | HAYSLETTE | MAZZUCCO | Yes. I totally agree. I Just saw him. Big hole to plug though. I solicited his thoughts/staffs and will solicit urs too. A lot of patients aren't refilling their rxs. Or they're refilling only for a few months. A lof of his new work is totally in vain due to the bleeding. Thoughts on how to curb this? |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| o | September 16, 2015 11:26:25 AM | MAZZUCCO | HAYSLETTE | This has always been the case with his patients. If even a small percentage of them refilled, his numbers weekly would be well over 100 by now. I would ask S. The same thing happened with B. during his two years calling on R. However, at the very least, B. should be able to lend some insight on this phenomenon. |
| p | October 5, 2015 2:50:23 PM | MAZZUCCO | HAYSLETTE | Let me know what R thinks about my breakdown. |
| q | October 5, 2015 2:51:41 PM | HAYSLETTE | MAZZUCCO | Nice! I like ur math. The numbers are very attainable. Will do Frank. Thx |
| r | October 5, 2015 3:16:47 PM | HAYSLETTE | MAZZUCCO | R's super excited. Said it's an easy number for him to hit:) |
| s | November 2, 2015 5:53:54 PM | HAYSLETTE | MAZZUCCO | Great. Thx Frank. I believe I can do it too. I will get R and a few of the boys to rally around me. I will let them know what is at stake and what I need. |
| t | November 2, 2015 7:40:26 PM | MAZZUCCO | HAYSLETTE | Exactly.  So, when you combine the quarterly IC with the MDM competition, you could be looking at a $45-50K payout. Windfall opportunity. Rally the boys, indeed. |
| u | November 2, 2015 7:48:29 PM | HAYSLETTE | MAZZUCCO | Wow. That is out freaking standing. I'm with R and Sawhny now. Informed them of what's at stake and what I need...they're in. |
| v | November 2, 2015 8:11:03 PM | MAZZUCCO | HAYSLETTE | There you go, brother. It is in motion... |
| w | November 2, 2015 8:11:49 PM | HAYSLETTE | MAZZUCCO | :) going to make it happen!!! |
| x | November 2, 2015 8:16:49 PM | HAYSLETTE | MAZZUCCO | Maybe u could send a text to R/call him to check in and inform him of the contest to/what's at stake...further, grease the skids if u will. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| y | November 2, 2015 8:29:19 PM | MAZZUCCO | HAYSLETTE | Oh. Consider that done. I will absolutely make sure that he is aware! |
| z | November 16, 2015 11:13:09 AM | MAZZUCCO | HAYSLETTE | Need 70-80 from R weekly, down the stretch. No better time for A. and Z. to come to the party.  Your work with Sawhny is incredible. He is 100% vested in your well being. Well done. |
| aa | December 17, 2015 4:05:52 PM | MAZZUCCO | HAYSLETTE | Your scaled growth for the quarter now puts you on pace to be #1 in the MDM competition, by 7 over A.  This is just the "pace." However, we both know that only you can keep this pace up...  My friend, the plan that we hatched nearly 3 months ago, is unfolding...the $55,000-$60,000 is becoming more of a reality with each passing day. ($10k SPIFF + $20K Q4 IC + $30K MDM=$60K).  Now, BURY those guys and leave no doubt!!! |
| bb | January 8, 2016 1:36 PM | HAYSLETTE | MAZZUCCO | Talked to R. No shockers. He felt his numbers would be down both weeks be he worked half days the respective Thursdays and didn't work either Friday ... it coincides perfectly with what he was down. He was shocked at Sawhny's numbers. Was wondering if Avarnr missed any? He also wanted to stress the importance of continuing programs (in-office and venue based) to me and u. Definitely didn't see that one coming. :) Haha. I told him I agreed and u were working diligently to secure funds ... wasn't a matter of if just when. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| cc | January 9, 2016 12:32 AM | HAYSLETTE | MAZZUCCO | Hey Frank. I wanted to get ur thoughts on this. Although it's good R is gaining exposure with other reps in adjacent geographies, do u feel it will hurt me? Here's my thought process ... he does a program for Lisa next week and loses half of a day. That's potentially 10 to 20 lost rxs. Another example, a gal that was at my training calls him today and wants him to speak in Boston MA, for a Thursday lunch, dinner, and Friday breakfast. He'll lose two days of production and that will cost me/us roughly 40+ rxs(assuming 20 rxs a day). So while I think it's good for him, it's definitely bad for u/me. I think we should play our cards close to our vests about him being available/spreading the word on his behalf. While we cannot stop an unsolicited request(s), I think it's best we dissuade others in surrounding areas from using him. The other potential issue I see is that the more people who use him, the faster his cap will be depleted, potentially hurting me in future quarters. Thoughts? |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| dd | January 9, 2016 1:01 AM | MAZZUCCO | HAYSLETTE | I agree. It is something that we will have to strategically manage. "Local" trips on occasion would be ok, especially because he wants to do it. He asked me for opportunities in Columbus and Pittsburgh. What we must try to avoid are the opportunities that require him to board a plane. If we can give him the occasional Columbus/Youngstown/Pittsburgh program to keep him content, but make sure that he is in his office as often as possible, that would be the sweet spot. Maybe he can double book a few days during weeks that he will speaking in other cities. For example, if he has two programs in Pittsburgh on Tuesday, maybe he can double book Monday and/or Wednesday, to make up for the lost patient volume. Bottom line: he is most valuable to us when he is in his clinic. Let's talk live to discuss ways to make this an advantage for us. More programs will make him happier, but we must determine away to prevent loss for us during his time out of office. |
| ee | January 9, 2016 1:09 AM | HAYSLETTE | MAZZUCCO | Exactly. I think double booking/keeping him close to home are the best options. Sounds like a plan. I'll give you a jingle late Monday or we can talk live on Thursday if u arrive early? |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| ff | January 12, 2016 2:26 PM | HAYSLETTE | MAZZUCCO | Will do Frank! I believe he feels a sense of entitlement due to his last two months of performance. He's called me two days in the row, reminding me how important programs are, how imperative it is to continue the momentum, etc. What concerns me is what happened last year, first quarter with Bill when there was a disruption of funding Hopefully history will not repeat itself. I will do all I can to contain the situation. He's only looking for a few in-office programs. If there's any $ u come across before u hear from S., let me know and I will put out the fire by scheduling him three in-office prgms. We can tackle the other prgms later. |
| gg | January 18, 2016 6:41 PM | HAYSLETTE | MAZZUCCO | Wow, that's freaking awesome! Agree! I have my work cut out for me this qrt ... R is tired, Sawhny is gone for three weeks, poa is going to steal a few days, I may burn a day/two, etc. Nothing is insurmountable though. Proper planning and execution should be able to offset my circumstances. Thx a lot Frank! That sounds like a plan. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| hh | January 21, 2106 3:47 PM | MAZZUCCO | HAYSLETTE | I will watch and evaluate the numbers and your quarterly trajectory, weekly. Reassure R that with proper, strategic management of quarterly growth, there is no I reason for you not to earn NAM of the year in 2016. Once the baselines for Q1 are published (tonight), I will begin to run some numbers for the quarter. We already have an idea, based on my projections that I sent out on Monday, in our new tracker. Bottom line: it is imperative to get off to a very fast start!!! We can always scale back your efforts at the end of the quarter, if needed, with your Q2 baseline in mind. We will actively manage your growth throughout the quarter. Let's do this ... |
| ii | January 21, 2016 4:21 PM | HAYSLETTE | MAZZUCCO | Excellent. Thk u for the breakdown and careful analysis Frank. I agree. I'll talk with R tonight, review things and execute. |
| jj | January 29, 2016 2:17 AM | HAYSLETTE | MAZZUCCO | Hey. Sorry to bother u ... the management of R never ends:) when u get a second tonight/tom, will u text me L.'s and A.'s 1st qrt ranking pls. Thk u |
| kk | January 29, 2016 2:18 AM | MAZZUCCO | HAYSLETTE | Sure will. And, you are correct. .. it is never ending. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| ll | January 29, 2016 1:15 PM | HAYSLETTE | MAZZUCCO | Thx. I totally agree! There are three things going on ... First, he was gone for four days. Second, he has rolled out a new emr system which has hurt his productivity. And third, he's obsessed with these numbers, final rankings, how Avanir does things, etc which too is affecting his rxing. I'm fielding a number of calls/texts per day trying to deal with this situation and smooth things over. While I'm holding down the fort and doing the best job I can, I believe what needs to happen is U, D. or M. needs to give him a call and explain things. Explain how Avanir pays their reps. Explain how the rankings work each qrt, etc. I realize this may have been done in the past, but I firmly believe it needs to be revisited. Sure, hold off the final rankings, who won the trip, etc, like we talked about, but make the call and discuss things. He likes hearing from "U guys" and I know it will go a long way in getting him fired up to rx more. |
| mm | February 1, 2016 9:57 PM | MAZZUCCO | HAYSLETTE | Just sent the ranking report. You and I are at the bottom. We need R to get over last year to prevent the same thing from happening again this year. This 01 will bury us. |
| nn | February 2, 2016 6:11 PM | MAZZUCCO | HAYSLETTE | What did R say about the rankings? Is he locked and loaded? Time to make February and March monstrous! 2016 PCLUB. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| oo | February 2, 2016 6:16 PM | HAYSLETTE | MAZZUCCO | He's pissed and confused to the methodology .... that's why I left u a long-winded vm. He wants some answers(hopefully that will be coming soon):) I agree! |
| pp | February 2, 2016 6:26 PM | HAYSLETTE | MAZZUCCO | I talked to him at lengths and have him contained. He wants to handle it with a phone call/handshake, and not annoy anyone ... that's good news. He just wants to be in the loop and up to speed. I firmly believe if MM, DP, U all hop on a call, he'll appreciate it and we will bury the hatchet on numbers, expectations, methodology, etc. It will be time spent and a nice ROI. |
| qq | February 3, 2016 9:37 PM | HAYSLETTE | MAZZUCCO | Will do. Like I said, sorry to beat a dead horse, but he was ready to jump. Currently, he's crawled back into the building and I've sedated him:) thx frank |
| rr | February 5, 2016 4:03 AM | MAZZUCCO | HAYSLETTE | I agreed. We have time and it has been done before. This was a pivotal week. Getting him back on track, in touch with MM. I will follow that up next week, with some specific examples in the rankings. We will crush this still. It is just alarming to see the start. Nothing that won't be overcome! Gregg, good work this week. If he is truly back and ready to roll, then we have about 2 months to make up for the slow start. Definitely doable!!! Thank you. |
| ss | February 5, 2016 5:48 PM | HAYSLETTE | MAZZUCCO | Wow, 6 to 17 is huge!!! No excuses. It may not be a bad idea for u to bring that with u |

|    | Date/Time | Sender | Recipient | Content |
|----|-----------|--------|-----------|---------|
|    |           |        |           | on Tuesday. It will reiterate that U, ME, Avanir are going to bat and giving him what he wants. We r all delivering!!! |
| tt | February 5, 2016 6:15 PM | HAYSLETTE | MAZZUCCO | That's 3 times what he received last year. Good to know. Bring that fact sheet with u on Tuesday. U'll look like a hero and he can see it in black and white what was done in 2015 and what U/ME have delivered in 2016 |
| uu | February 5, 2016 7:26 PM | HAYSLETTE | MAZZUCCO | I agree. We are back in business as of today. Rand I had a great talk. I delivered the meat and potatoes of the talk u and I had, that can be corroborated by u this evening. Here's some Intel and something to incorporate into ur call. He said he's tired/saturated but will rx. We both know that while some of it may be true, the latter isn't. I told him we don't need him to rx 100 a week. I think it would behoove u to ·': , Empathize with his concerns(as u know how to do;)) while reiterating what I said",55-65 a week is what we need from him." Certainly, doable and a level where R will not kill himself. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| vv | February 8, 2016 3:11 PM | MAZZUCCO | HAYSLETTE | Absolutely, Gregg. We are going to finish #1 this year. Each clinic day for R is critical though, just to get back on track for 01 . Even the very best laid plans will be fruitless, if 01 gets away. Once we get back on track with a thunderous Feb and March, a more consistent, progressively steady, quarterly growth plan will guide us to our desired outcome of #1 for the year. That will start in April. .. in the meantime, due to our current 01 deficit, the TRx's for the remainder of the quarter have to be Q4- esque. Then ... steady, strategic growth, beginning April 4. No need to belabor this point. I know that you get it. With execution, we will be right where we need to be. Go get it, Gregg. Mission TFM (Thunderous February & March) is operational. Lol! |
| ww | February 8, 2016 5:49 PM | HAYSLETTE | MAZZUCCO | I agree. Yes, it is. Too bad he's gone half of day Weds, all of Thurs and half of Friday for the Boston trip--thats going to sting!!! He also picked up an Otsuka lunch prgm or two that will kill two half days next week ... its bitter sweet. Bitter that he will be out of his office for these programs, and that will kill his production. Sweet that he will be doing a lot of programs. Going forward , and if possible, we have to minimize his availability or we're in trouble. On it. Operation TFM is in full effect!!! :) |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| xx | February 12, 2016 6:50 PM | HAYSLETTE | MAZZUCCO | I would do it today. I would call him too. Here's why. He came off a great trip to MA but hit a bump when he discovered we had a robust week and yet only moved up five spots. I sent him a text and talked to him live(in his office now) about the rationale(basically we're in the hole, down approx 60 rxs since Jan 1. We need to do 84 per week to hit our 10% growth goal, but have to make up those add' rxs from now until the end of March). I believe he understands but it wouldn't hurt for u to call him, tell him the car thing and explain the same thing I told him. |
| yy | February 12, 2016 6:51 PM | HAYSLETTE | MAZZUCCO | Also, they want him back out on March 3rd/4th. This is going to kill us! He said he would double book, but losing days here and there and all ready being behind the eight ball is going to sink us. |
| zz | February 15, 2016 5:20 PM | MAZZUCCO | HAYSLETTE | How is R today? Is he fired up and ready to go berserk for us in February and March? |
| aaa | February 15, 2016 7:29 PM | HAYSLETTE | MAZZUCCO | He's fired up and committed: He said he will rx 20 per day from now until the end of the month. |
| bbb | February 15, 2016 7:30 PM | HAYSLETTE | MAZZUCCO | He's hungry so I'm accommodating an add' prgm for weds and I will sprinkle in a few others. It is a calculated risk, but one worth taking ... bet big ... win big!!! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| ccc | February 15, 2016 7:33 PM | HAYSLETTE | MAZZUCCO | Me too. Even if we have fallout from him, we should be able to right the ship and get things on track. He said he will track his RXs each day! Great news! He's in and all in |

32.     On or about the dates and times listed below, HAYSLETTE and MAZZUCCO

sent the following text messages, in which they discussed securing funding for RAHEJA's

speaking engagements, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | August 7, 2015 9:11:18 AM | HAYSLETTE | MAZZUCCO | Wrt programs/allocation of funds, it will still be business as usual with R correct? |
| b | August 7, 2015 9:28:08 AM | MAZZUCCO | HAYSLETTE | Correct. However, it might be a good idea to submit one program per week through September, simply to get them on the books with funds secured. You can leave them in "Draft" form on Avanirevents.com. |
| c | August 7, 2015 12:42:40 PM | MAZZUCCO | HAYSLETTE | Will do. Also, we have the option to enter programs as "Drafts" on Avanir.com. This isn't great vehicle to enter programs (secure funds) without initiating The HealthSTAR process.   When time permits, please enter programs in as Drafts for R. through Septmeber...even into October.   Thanks Gregg! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| d | August 11, 2015 11:19:38 AM | MAZZUCCO | HAYSLETTE | I have received further confirmation that Drafts do not count towards budget as well. We will now proceed with the formal submission of those programs. Just inform Dr. R. that he might receive a large dose of program emails from HealthSTAR. You can explain our strategy of securing the funds as well. I will be calling him after my lunch with D. K. in Alliance. I will mention the speaker programs to him as well. |
| e | August 18, 2015 2:52:32 PM | HAYSLETTE | MAZZUCCO | Thx Frank. I sincerely appreciate it! I have complete confidence in OUR plan. R is completely vested and gave me his word it will be a super great career/run for me/us. |
| f | August 19, 2015 6:54:16 PM | MAZZUCCO | HAYSLETTE | Gregg, I would enter November and December programs for R. |
| g | October 5, 2015 3:17:51 PM | HAYSLETTE | MAZZUCCO | On a side note, he wants to do a prgm next week with Z....just tried to input it and I'm short by a few hundred dollars. Any chance u can secure me more funds? Thx |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| h | December 21, 2015 5:51:18 PM | MAZZUCCO | HAYSLETTE | I would say loading them through May is good!!! Let's see if our attempt to "force the hands" of those who make our budgets works! Proactively loading these programs is a risk that I (and I am certain you) are willing to take. Best case is that we receive 2015 funding for these programs. Worst case is that they wipe them clean and ask us to judiciously re-enter the programs, within the 2016 budget. Again, this proactive measure of pressing on is the right call. Maybe by doing so, we receive funds that never would have been granted. Time will tell. Now, we wait. Let's see what (if anything) is said. |
| i | December 24, 2015 3:14 PM | MAZZUCCO | HAYSLETTE | It does not look as though we are going to be able to use any of the 2015 funds for 2016. Even more alarming, in AvanirEvents, I see my Regional b11dget for 2016 set at $50K. I am going to send S. a text, to see what we can do. If the budget is set at $50K for our entire region, you will have to cancel at least half of the programs submitted. This is part of the reason why I just wanted to schedule programs for January, to test the waters. I will keep you posted. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| j | December 24, 2015 3:23 PM | HAYSLETTE | MAZZUCCO | I saw that. I was actually going to text u be I ran out of funds. Thx Frank. I definitely appreciate that! I would hate to derail our freight train. I think it's imperative for ur #s and mine too that we keep things moving in a northerly direction. |
| k | January 1, 2016 10:38 PM | HAYSLETTE | MAZZUCCO | That would be great. Thanks a lot Frank. On a side note, any updates with respect to 2016 program funding? I would love to keep the machine well oiled but I need more oil;) |
| l | January 1, 2016 10:46 PM | MAZZUCCO | HAYSLETTE | No word from S. I made it very clear to him though, that funding for us needs to be his TOP priority. |
| m | January 1, 2016 10:50 PM | HAYSLETTE | MAZZUCCO | Cool. Thk u. Hopefully u can squeeze some more out of him. |
| n | January 1, 2016 11:15 PM | MAZZUCCO | HAYSLETTE | He will give us the majority of his funds. More importantly, he needs to lobby for more funds than the other two directors are set to receive. He knows that the consequences are dire. Time for S. to get it done. |

| o | Date/Time | Sender | Recipient | Content |
|---|-----------|--------|-----------|---------|
| o | January 12, 2016 1:59 PM | MAZZUCCO | HAYSLETTE | Keep holding him off and remind him how I was able to get the funds flowing last year. He needs to constantly be reminded that you and I made it happen. Do not let him forget that I proactively secured funds all year, making 2015 the most high volume year of programs in Cleveland and the surrounding areas, since launch. Also j remind him that I have behind the scenes helped to drive the Otsuka programming. Because I do not see him each week, please always look for opportunities to remind him how hard I work for him, behind the scenes. His knowing this will help you, I guarantee. If he is aware and confident that things are in motion at a higher level, he responds well. He has a short memory and thus needs a constant reminder. Especially regarding all of the things that I do for him. I say all of this from experience last year. S. expects to have a budget update by next week. Also, D. and S. are flying to Cleveland next Thursday to meet with him. I am working on setting a Greenlight meeting up for him, with K. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| p | January 15, 2016 8:38 PM | MAZZUCCO | HAYSLETTE | Thanks Gregg. I appreciate that initiative. Also, I asked S. to look into whether he is able to "re-allocate the funny money" in HealthSTAR to our Region from another, until the 2016 funds are releases. He said that he would "look into it." I of course will stay all over this. |
| q | January 16, 2016 12:27 AM | MAZZUCCO | HAYSLETTE | Gregg, there might be "funny money" HealthSTAR funds available. When time permits, it is worth checking out. Shaun told me that he started to look into the prospects of moving the "fake funds" around. If they are there, fire away on those 4-5 in-office programs that we had discussed last night! If funds are not there, know J that I will continue to address this issue. Have an awesome weekend!! ! |

2.      Texts between HAYSLETTE and RAHEJA

33.      On or about the dates and times listed below, HAYSLETTE and RAHEJA sent the following text messages, in which they discussed the importance of arranging and maintaining RAHEJA's participation in the speaker's bureau program, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | August 19, 2015 7:37:17 PM | HAYSLETTE | RAHEJA | Hey doc. Just entered speaker programs from Nov through Dec. to guarantee funding. We r locked loaded!!! We can tweak the dates/times/venues if necessary. Hope u r having a great night! Talk soon!!! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| b | January 7, 2016 11:01:43 AM | HAYSLETTE | RAHEJA | 01.14(Ken Stewarts). 01.21 (rosewood), 01.26(Trivs), |
| c | January 7, 2016 11:03:26 AM | HAYSLETTE | RAHEJA | 02.03 (Red Beachwood), 02.09 (Delmonicos), 02.15 (downtown 140), 02.22 (Hyde Park Westlake), 02.29(Ken Stewarts) |
| d | January 7, 2016 11:05:10 AM | HAYSLETTE | RAHEJA | 03.08(Hyde Park Beachwood), 03.14(Rosewood), 03.22(Delmonicos), 03.28 (Giovannis) |
| e | January 7, 2016 11:09:38 AM | RAHEJA | HAYSLETTE | Sounds great !!! |
| f | January 7, 2016 11:12:15 AM | HAYSLETTE | RAHEJA | :) More to come for April and May. In addition, I will be sprinkling some in-office programs for p., z., etc throughout the next few months. |
| g | January 7, 2016 11:26:02 AM | RAHEJA | HAYSLETTE | Yes need the office programs ramped up !! Thx |
| h | January 15, 2016 7:33:56 PM | HAYSLETTE | RAHEJA | Frank came through and got us funding. I'm going to load us some programs. I will put them in draft form until I speak and confirm the dates with the respective docs. I hope ur travels were safe! Enjoy ur evening. Talk soon. |
| i | January 15, 2016 9:09:58 PM | RAHEJA | HAYSLETTE | That sounds great !!! Evening is perfect !!! Appreciate you my friend !!! |
| j | January 25, 2016 11:28:49 AM | HAYSLETTE | RAHEJA | Just finished loading us 7 more prgms. We now have prgms through the end of May!!! |
| k | January 25, 2016 11:31:58 AM | RAHEJA | HAYSLETTE | Unbelievable sounds great !!! |
| l | February 4, 2016 11:12:19 PM | HAYSLETTE | RAHEJA | Hey doc. Tried to call u back. I hope u had a great night. Frank is coming to town on Tuesday and will be joining us for dinner. We'll need to make sure we have two guests. I'll text D. Maybe u can ask J.? |

34.    On or about the dates and times listed below, HAYSLETTE and RAHEJA sent the following text messages, in which they discussed HAYSLETTE's comparative ranking vis-à-vis other Avanir employees and RAHEJA's comparative ranking vis-à-vis other physicians, each text constituting a separate overt act:

|   | Date/Time | Sender | Recipient | Content |
|---|-----------|--------|-----------|---------|
| a | August 28, 2015 10:21:38 AM | HAYSLETTE | RAHEJA | Hey doc. Good morning. Had a great time last night. Thank you very much:) I wanted to provide u a breakdown for the week of 8.14. U had 44. Dr. J. had 2. Dr. Z. had 2. And Dr. A. had 1. Trx(total scripts for the week was 49. I slipped from #21 to #25. Frank is ranked and holding steady at # 2. Thank you very much for your continued support and help! I'm confident the "airplane will take off the ground" very soon!!! |
| b | August 28,2015 10:53:55 AM | RAHEJA | HAYSLETTE | Sounds great !!! We will keep it rocking !!! Hv a busy day already got a few off the ground for you !!! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| c | October 5, 2015 2:22:55 PM | RAHEJA | HAYSLETTE | Fwd: Gregg is ranked #19 in the nation, currently. He is averaging 54.25 Rx's per week, in his territory. Gregg WOULD be ranked #3 in the nation today, if he were averaging 70.25 Rx's per week, in his territory. The difference between his current ranking of #19 and being ranked #3 is exactly 16 additional weekly Rx's! Not too far off. If Gregg yields between 70-75 weekly Rx's for the remainder of the year, he will likely finish Q4 in the Top 3 for the quarter, making a run for #1, for the quarter. Please let me know if you would like additional information regarding Gregg's numbers. THIS IS AMAZING INFORMATION |
| d | October 5, 2015 5:16:46 PM | RAHEJA | HAYSLETTE | Fwd: Not many additional weekly Rx's separate Gregg from the top. Sounds like Drs. Sawhny, T., P. and Z. are picking it up. |
| e | October 5, 2015 6:13:59 PM | HAYSLETTE | RAHEJA | Nice!!! I'm 100% confident we will wrap up qrt 3 strongly and finish at the top for qrt 4. Thx a lot doc for ur continued support and passion!!! I sincerely appreciate u! |
| f | October 29, 2015 8:44:15 PM | HAYSLETTE | RAHEJA | 61 total rxs. U had 52, 3 j., 1 t., 1 sawhny, 1 p., 1, 2 from docs in baberton. |
| g | October 29, 2015 8:59:22 PM | RAHEJA | HAYSLETTE | We will be solid stay tuned ☺ |
| h | November 6, 2015 1:23:49 PM | HAYSLETTE | RAHEJA | Based on my calculations we need 80+ each week. If u write 60+ and we pick up 20+ from add' docs, we'll be number 1 and win the contest. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| i | November 19, 2015 10:30:17 PM | HAYSLETTE | RAHEJA | As u know, 79 for the week...here's the breakdown doc (65 for u, 6 for Sawhny, 2 for p., 1 for J., 1 for p., 1 for T., 1 for z., 2 for no names) |
| j | November 19, 2015 10:32:32 PM | RAHEJA | HAYSLETTE | Awesome Sawhney is moving up !!! We are very solid !!! |
| k | November 30, 2015 10:34:31 PM | HAYSLETTE | RAHEJA | I agree!! Time to put some more fuel on the fire doc ☺ Let's show L. J. and  Avanir nothing happens without Dr. Raheja and Cleveland! |
| l | November 30, 2015 10:41:54 PM | RAHEJA | HAYSLETTE | You got my word !!! |
| m | December 18, 2015 12:04:43 AM | HAYSLETTE | RAHEJA | Thanks a lot doc!!! At the end of the day, U make Cleveland...always have and always will. It's good to have u in my corner...not only as a friend but a prescriber. U rock!!! I appreciate u. Thk u. |
| n | December 18, 2015 12:26:25 AM | RAHEJA | HAYSLETTE | Stay tuned !!! Save the best for last !!! I truly appreciate you my friend !!! We are ON !!!! |
| o | December 18, 2015 12:27:25 AM | HAYSLETTE | RAHEJA | Haha. I can't wait to see what u have in store!!!:D love it. Thx again for everything!!!! |
| p | December 18, 2015 12:28:07 AM | RAHEJA | HAYSLETTE | It will be a thunderous close stay tuned !!! |
| q | December 18, 2015 12:29:17 AM | HAYSLETTE | RAHEJA | I have no doubts. I've seen what u can do. I know ur full capability. U r awesome!!! Great night tonight. So looking forward to next week. |
| r | January 1, 2016 3:00:16 PM | HAYSLETTE | RAHEJA | You destroyed it doc...back to back weeks of not only personal highs but company highs too. Congrats!!! Thank you!!!! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| s | January 1, 2016 3:11:40 PM | RAHEJA | HAYSLETTE | History has been created to say the least !!! You will have the best time in Italy receiving the recognition and the accolade !!! The best part is those two guys have no clue yet !!! Nothing happens without Ohio !!! Super great career move for you by closing as number one in as little as less than six months !!! Perfect way to start 2016 !! Solud to champagne !! |
| t | January 1, 2016 3:17:50 PM | HAYSLETTE | RAHEJA | It has and I have u to Thank. Haha, I totally agree. Larry and Arsenio are all ready celebrating not knowing the train is barreling down the tracks. Correction, nothing gets done without Dr. Raheja!!! I couldn't be any happier. Thank you again for everything!!! |
| u | January 15, 2016 11:07:14 AM | HAYSLETTE | RAHEJA | Fwd: A. had 29. L. 16.  Smoked. |
| v | January 15, 2016 11:08:38 AM | HAYSLETTE | RAHEJA | Yeah, we officially ran over L. and A. with our Train! Chu Chu:) thx a lot doc. |
| w | January 15, 2016 11:09:36 AM | RAHEJA | HAYSLETTE | So this should put you right on the top |
| x | January 15, 2016 11:09:53 AM | RAHEJA | HAYSLETTE | For the year |
| y | January 21, 2016 11:06:10 PM | HAYSLETTE | RAHEJA | On a side note, 66 for the week. U had 49. Not sure of the breakdown. Thk u very much for all of the support. Appreciate u!!!!Based on some early calculations, we need to run in the low 80s each week to finish strong. We can talk shop when u return. Take care. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| z | February 4, 2016 12:10:14 PM | HAYSLETTE | RAHEJA | That's awesome doc. I sincerely appreciate u!!! Thk u very much for supporting me and fighting for me. It means a lot. Without U, none of this would be possible. In just a short few months, U have taken me from Zero to Hero!!! U R The Best!!! U have always delivered on everything U've told me. Thanks u!!! |
| aa | February 4, 2016 7:19:56 PM | HAYSLETTE | RAHEJA | 80 is weekly goal to finish in the top 10-15. We are currently behind approximately 61 rxs through 1.22.16. A few robust weeks should put us back on target. |
| bb | February 12, 2016 9:35:32 AM | HAYSLETTE | RAHEJA | Morning doc. Numbers came in. We moved from 134 to 129. We posted 94 for the week. Big week!! I don't have the doctor breakdown, but owe it to u!!! Thank u!!!! We would have moved up more, but we're still digging out of a hole(goal is 84 week. We are avg. 69.25 rxs a week). That puts us roughly 15 behind each week or a total of 60 rxs for the first four weeks of January. Nothing we cannot make up in February and March!!! :) thanks for everything!!! Travel safely. See u this afternoon!!! |

35.     On or about the dates and times listed below, HAYSLETTE and RAHEJA sent

the following text messages, in which they discussed recruiting other physicians to write

Nuedexta prescriptions, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | September 14, 2015 10:48:49 AM | HAYSLETTE | RAHEJA | Good morning. I hope ur weekend was nice. I'm off to Columbus for two days. Followed up with T....he's on board with Nuedexta and our prgm on the 30th. We have 2.5 weeks left before quarter-end. If we make a thunderous run, we should be able to hit top 10. Thk u very much for all of ur help and support!!! Talk soon! |
| b | November 30, 2015 10:43:31 PM | RAHEJA | HAYSLETTE | Let Dr S also use the stamp like crazy tomorrow ☺ |
| c | November 30, 2015 10:45:54 PM | HAYSLETTE | RAHEJA | Thx doc. I know I do!!! Definitely. I will make sure he starts stamping like a madman!!! |
| d | February 4, 2016 12:05:31 PM | RAHEJA | HAYSLETTE | Fwd: I will get their thinking fired up !!! Once they understand the neurophysiology of the whole process they will write !!! I guess I am on a global mission to get the word out !!! Once again I truly appreciate your agreeing to do the right thing for Gregg and this adds more enthusiasm and positive to my mind !!! Nothing would happen without him out here !!! Thank you again !!! Say my hi to D., Frank and B. !!! |
| e | February 5, 2016 5:51:15 PM | RAHEJA | HAYSLETTE | You will enjoy meeting M. and the crowd !!! Let Dr Sawhney know he is number 2 in popularity !!! |
| f | February 5, 2016 5:56:35 PM | HAYSLETTE | RAHEJA | I'm looking forward to it. He seems like a great guy based on what u've told me and how he's kept his commitment to U. Dr. Sawhny has always been number 2 in popularity to U!!! I'll pass the msg along though. :D |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| g | February 5, 2016 5:59:19 PM | RAHEJA | HAYSLETTE | He is a good guy I agree !!! I am messing with him but we will get him to ramp it up and get more people on board he has a lot of contacts !!! |
| h | February 5, 2016 6:47:35 PM | HAYSLETTE | RAHEJA | Sounds like a good plan...I agree:) |

36.     On or about the dates and times listed below, HAYSLETTE and RAHEJA sent the following text messages, in which they discussed the importance of their relationship to one another, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | May 26, 2015 12:05:50 PM | RAHEJA | HAYSLETTE | Fwd: I am working on expediting Gregg's hiring. Spoke with HR this morning about it and pitched my argument.  I believe that I will be able to make this happen, bringing him on around mid-June. I will keep you posted! |
| b | June 1, 2015 5:17:06 PM | RAHEJA | HAYSLETTE | Fwd: Gregg's interview went tremendously well, as I had anticipated. I am moving full speed ahead on making his start date happen in June vs. July, per our conversation a few Fridays ago. All of my creative conversations with HR have gone well and are in track!  Good day today? Thank you, sir. Talk soon. |
| c | November 19, 2015 10:32:39 PM | HAYSLETTE | RAHEJA | Thanks a lot for ur support. U r the ONE I need to make this a reality! I have no doubt YOU will make it happen. The train is coming and no one has any idea.;)  Have a good rest of ur night and I'll see u Tom AM. |
| d | November 19, 2015 10:34:04 PM | RAHEJA | HAYSLETTE | You got it we will rock it !!! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| e | December 31, 2015 5:25:01 PM | HAYSLETTE | RAHEJA | Thank you very much Dr. R for everything! As I reflect on 2015, it's amazing to think where I was and where I am. Just think, six months ago I was walking into a restaurant with my kids when u called. I'm glad u called and glad I answered:) Little did I know at that time, my life was going to change dramatically. I have U to thank for everything!!! Here are just a few of the many things that have changed in my life...I'm making more $. We have become great friends. I am able to do more for my family with the extra $$. I have a better work/life balance...Everything u have told me has come to fruition. Thank you for changing my life and my family's lives too. I appreciate U and everything u do!!! Thank you from the bottom of my heart for an awesome 2015...looking forward to 2016!!! ☺ |
| f | February 12, 2016 7:02:00 PM | HAYSLETTE | RAHEJA | Thank u very much for everything!!! U have delivered on everything U've told me!!! Amazing!!! The salary increase will make a big difference. The new car will make my travel easier and more pleasurable. And being up on stage recognized as #1 will truly be speechless. Thank u for EVERYTHING U have done. Without Ur support and friendship, none of this would have come to fruition. U R THE BEST Dr. R!!!! |

3.    Texts among HAYSLETTE, RAHEJA and MAZZUCCO

37.    On or about the dates and times listed below, MAZZUCCO sent the following

text messages to RAHEJA and HAYSLETTE, in which they discussed RAHEJA's participation

in the speaker's bureau program, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 18, 2015 2:33 PM | MAZZUCCO | RAHEJA and HAYSLETTE | Good morning Dr. Raheja! As of the 12/4 sales report, you posted the single greatest week of sales in Avanir History!!!!! 89 in a single week. I am completely blown away by this number. Your leadership and effort is unparalleled, nationally. Gregg continues to share with me how you are shifting the paradigm of PBA diagnosis and treatment in Cleveland, through the dinner lectures. Simply remarkable. I am grateful for the work that you do and the leadership and influence that you impart. I wish you and your family many blessings this holiday season and into the new year. We have some exciting initiatives planned for 2016 that I will share with you in January after the holidays! Thank you. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| b | January 12, 2016 6:10 PM | MAZZUCCO | RAHEJA and HAYSLETTE | Good afternoon Dr. Raheja and Gregg. I have a few updates: 1. K.P. (president of MVP Medical Solutions and my partner in the Greenlight pilot program) will be presenting Greenlight this Thursday evening. He will present at Ken Stewart's, prior to the PBN/Nuedexta program. This could be a significant opportunity. K. will share all of the details and answer every question that you have, Dr. Raheja. 2. 2016 budgets should be allocated by next week. Just like last year, I continue to exercise leverage in my attempt to secure a generous budget. I was able to do so in 2015 and expect nothing less in 2016. Details however, will likely be available next week. I look forward to spending time with both of you this Thursday evening! |
| c | January 13, 2016 8:25 PM | MAZZUCCO | RAHEJA and HAYSLETTE | You a very welcome. You and Dr. Raheja have and continue to be my top priority. Raheja 2016 will be no different than 2015, in that regard! I work on initiatives and gaining leverage for you daily. |

4.     Texts between RAHEJA and MAZZUCCO

38.     On or about the dates and times listed below, MAZZUCCO sent the following text messages to RAHEJA, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | January 2, 2016 1:54 AM | MAZZUCCO | RAHEJA | Good evening Dr. Raheja! Thank you very much for the thoughtful message this afternoon. My wife K. and I wish you and your family a Happy New Year as well. I am still in shock over your prescribing the last few weeks. Posting 107, as you did in the week ending 12/18, obliterates any single week in the history of Avanir. I have been working on a few interesting projects behind the scenes, that will likely benefit us all in 2016. I look forward to getting our communication back on track and collaborating on many fruitful initiatives in 2016. I look forward to seeing you soon, in Cleveland. |
| b | January 11, 2016 2:28 AM | MAZZUCCO | RAHEJA | Good evening Dr. Raheja. Thank you for the message. Gregg and I are incredibly excited to see the final Q4 number. Gregg had another impressive week of 79, which, considering that it was the week of Christmas, is solid. I have an 8am call with the President of MVP Solutions (my partner in the Greenlight launch). As we discussed, I will coordinate a meeting for me, you, K. (my contact) and Gregg. K. will answer all of your questions regarding Greenlight and present the product to you at that time. I would like to set it up for this Thursday, following the dinner program. I will follow up with you tomorrow! Thank you and enjoy your evening!!! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| c | February 8, 2016 1:23 PM | MAZZUCCO | RAHEJA | Good morning Dr. Raheja! Catching up with you on Friday afternoon was fantastic! We have an unstoppable team in place. If we have a strong finish to 01, we will be back on track for 2016 PCLUB contention!!! Let's crush L., A., O., H. and all of the other territories in 2016! Cleveland WILL be #1 !!! I am confident in that!!! We have 20 programs scheduled for 01, compared to 6 last year in 01. The plan is in place ... now we just need a thunderous performance in February and March to get back into the PCLUB game!!! I will explain ranking methodology tomorrow afternoon. It is ALL about quarter rank, for all four quarters of the calendar year. I look forward to seeing you tomorrow afternoon, sir. Enjoy your day! |

5.    Texts between HAYSLETTE and SAWHNY

39.    On or about the dates and times listed below, HAYSLETTE and SAWHNY sent

the following text messages, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | November 12, 2015 7:56:30 PM | HAYSLETTE | SAWHNY | Numbers just came out. I'm still at 11 but down 50 rxs to L. J. and currently out of the 30k contest |
| b | November 12, 2015 9:37:17 PM | SAWHNY | HAYSLETTE | G flying out the window. So now I have to make amends and reverse that trend. I am with you all the way , do not despair. Love ya. |
| c | November 12, 2015 9:37:17 PM | SAWHNY | HAYSLETTE | Sounds good.Lets plan something for the following weekend. Too bad about the numbers . Let us strategize, no one goes past the Capricornian goat as it c |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| d | November 12, 2015 9:37:19 PM | SAWHNY | HAYSLETTE | limbs to the top! Especially when the chattering and independent Gemini is with him. I should not gloat over my clairvoyant abilities predicting the $30 |
| e | November 13, 2015 12:50:21 AM | HAYSLETTE | SAWHNY | Just finished up...late night but had to pay my dues with all of the top "brass." sounds good for next weekend. Lets try and get u out to the range. Haha, I agree. No one gets past a Gemini either. Here's an idea...if u write a 90 day supply in lieu of a 30 day supply, that will count as 3 rxs vs 1. So in theory, u could see fewer pts and yet generate a larger number of rxs. I'm going to roll this plan out with some of my other docs tomorrow. Thanks a lot for all of your support! I sincerely appreciate your friendship, support and help too!!! Love ya too. Have a great day tomorrow. Talk soon. |
| f | November 14, 2015 3:20:27 PM | SAWHNY | HAYSLETTE | sday. Yes, even I was thinking of the 90 days Rx but you never mentioned it. I thought Geminis were smarter than that!! But don't worry, sticking aroun |
| g | November 19, 2015 6:48:20 PM | HAYSLETTE | SAWHNY | Fwd: You had a huge week of 79! L. J. set an All-Time Avanir record of 118. I our five year history, that is the best single week ever. Even so, you are in this thing. L. can't keep this up...plus, you have some 90-day bombs coming. |
| h | November 19, 2015 6:49:36 PM | HAYSLETTE | SAWHNY | This is a fwd from my boss. I moved from 11 to 9 but still have some work to do...home stretch. 5 weeks left. We need to catch and bury L. J. Time to call on the Gurus' for help;) |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| i | November 19, 2015 7:59:22 PM | SAWHNY | HAYSLETTE | The beard is sparse yet sweetheart. The Gurus are really particular about full beards and head covers !! However if you show deference to a good Sikh (mo |
| j | November 19, 2015 7:59:24 PM | SAWHNY | HAYSLETTE | i), and make the promised 8 trips to Vermilion, I may be able to turn the tide in your favor!! I can spell out the other rigid demands also if the price |
| k | November 19, 2015 7:59:22 PM | SAWHNY | HAYSLETTE | is right!! Anxious to hear back from you!! |
| l | November 24, 2015 3:30:07 PM | HAYSLETTE | SAWHNY | Good day. Thk u. Don't forget to use the stamper today and Tom too. :D Have a great Thanksgiving. Talk soon |
| m | December 3, 2015 11:31:49 PM | HAYSLETTE | SAWHNY | Nice day. Thx doc. Just got the numbers. We cut the lead by more than half. We are down by approx 50 rxs. Time to call in reinforcements and make a final push for the last few weeks of December. Thx a lot for all of ur support. Enjoy the rest of ur night...definitely get a hold of u if I'm in town this weekend. Love ya |
| n | December 3, 2015 11:51:23 PM | SAWHNY | HAYSLETTE | Great news sweets. Now that the plump prize is in sight, I was thinking of playing the Merchant of Venice and try to extract a pound of flesh !! What are |
| o | December 3, 2015 11:51:24 PM | SAWHNY | HAYSLETTE | you willing to give ?!! As you know, he who laughs last laughs best !! Ha ha ha!! |
| p | December 4, 2015 9:37:34 AM | HAYSLETTE | SAWHNY | Haha. I'm willing to offer u a one hour private pistol and rifle shooting lesson. Normally, due to my NRA and expert shooting status, I would charge $1000, but I will offer it to u absolutely free of charge. I will also offer up free ammunition too. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| q | December 4, 2015 9:56:48 AM | SAWHNY | HAYSLETTE | This seems to be going the way of those 10 dinners at Chez !! Thanks for the ammunition offer, I accept. But is the scatterbrained NRA giving just abou |
| r | December 4, 2015 9:56:48 AM | SAWHNY | HAYSLETTE | t anybody who walks in, the "expert shooter" title? I am not surprised !! I guess I am amply qualified since I went ONCE to the shooting range !! |
| s | December 4, 2015 10:00:07 AM | HAYSLETTE | SAWHNY | Ha. Sounds like a plan. No, u r qualified bc I trained u;) |
| t | December 17, 2015 6:04:41 PM | SAWHNY | HAYSLETTE | Arm to no avail. Just reached home, N. And I will leave in 15 minutes. See you soon. Love ya. |
| u | December 17, 2015 7:01:16 PM | HAYSLETTE | SAWHNY | Haha. Shocker! I knew it. Looks like u owe me some more rxs. Sounds good. We're here. See u soon. Love ya |
| v | December 23, 2015 9:54:20 AM | HAYSLETTE | SAWHNY | Hi. Don't miss Nuedexta:D need u and the 11th Guru for the final days. |
| w | December 23, 2015 10:02:47 AM | SAWHNY | HAYSLETTE | Don't make it sound so fatalistic ! Not the end of the world if you did or did not make it to the top. Christ must have taught you to give not take !! Or |
| x | December 23, 2015 10:02:47 AM | SAWHNY | HAYSLETTE | was it Buddha originally ?!! |
| y | December 23, 2015 10:04:26 AM | HAYSLETTE | SAWHNY | Haha, yeah I know, but the view at the top is a lot better. Christ...always has been...always will. Check ur sawhnydocs email |
| z | December 23, 2015 10:05:28 AM | HAYSLETTE | SAWHNY | It will explain things a little more clearly |
| aa | December 23, 2015 2:51:06 PM | SAWHNY | HAYSLETTE | Did we get approval for D. B. for Nuedexta BWC ? |
| bb | December 23, 2015 2:57:24 PM | HAYSLETTE | SAWHNY | No. Tried two different times. No luck |

B.     Honoraria to RAHEJA

40.    On or about the dates listed below, MAZZUCCO paid and caused CRG and HSC

to pay RAHEJA by check, in the amounts listed below, honoraria for purported speaking

engagements, each check constituting a separate overt act:

|   | Date | Approx. Amount | Description |
|---|---|---|---|
| a | August 11, 2014 | $1,500.00 | Check # 46169 from CRG to RAHEJA |
| b | August 11, 2014 | $1,500.00 | Check # 46171 from CRG to RAHEJA |
| c | August 11, 2014 | $1,500.00 | Check # 46173 from CRG to RAHEJA |
| d | August 11, 2014 | $1,500.00 | Check # 46175 from CRG to RAHEJA |
| e | August 11, 2014 | $52.24 | Check # 46176 from CRG to RAHEJA |
| f | August 11, 2014 | $51.81 | Check # 46172 from CRG to RAHEJA |
| g | August 11, 2014 | $49.68 | Check # 46170 from CRG to RAHEJA |
| h | August 11, 2014 | $49.66 | Check # 46174 from CRG to RAHEJA |
| i | October 22, 2014 | $1,500.00 | Check # 46960 from CRG to RAHEJA |
| j | October 22, 2014 | $1,500.00 | Check # 46962 from CRG to RAHEJA |
| k | October 22, 2014 | $1,500.00 | Check # 46964 from CRG to RAHEJA |
| l | October 22, 2014 | $52.07 | Check # 46963 from CRG to RAHEJA |
| m | October 22, 2014 | $51.94 | Check # 46961 from CRG to RAHEJA |
| n | March 18, 2015 | $51.66 | Check # 040866 from HSC to RAHEJA |
| o | March 18, 2015 | $1,500.00 | Check # 040865 from HSC to RAHEJA |
| p | March 23, 2015 | $53.70 | Check # 041206 from HSC to RAHEJA |
| q | March 23, 2015 | $1,500.00 | Check # 041217 from HSC to RAHEJA |
| r | April 29, 2015 | $1,500.00 | Check # 042798 from HSC to RAHEJA |
| s | April 29, 2015 | $53.85 | Check # 042418 from HSC to RAHEJA |
| t | May 4, 2015 | $49.40 | Check # 042934 from HSC to RAHEJA |
| u | May 4, 2015 | $1,500.00 | Check # 042945 from HSC to RAHEJA |
| v | May 14, 2015 | $1,500.00 | Check # 043404 from HSC to RAHEJA |
| w | May 14, 2015 | $1,500.00 | Check # 043425 from HSC to RAHEJA |
| x | May 18, 2015 | $50.40 | Check # 043644 from HSC to RAHEJA |
| y | May 18, 2015 | $51.40 | Check # 043649 from HSC to RAHEJA |
| z | May 18, 2015 | $1,500.00 | Check # 043667 from HSC to RAHEJA |
| aa | June 16, 2015 | $53.70 | Check # 045419 from HSC to RAHEJA |
| bb | June 16, 2015 | $1,400.00 | Check # 045433 from HSC to RAHEJA |
| cc | June 22, 2015 | $50.40 | Check # 045770 from HSC to RAHEJA |
| dd | June 22, 2015 | $1,400.00 | Check # 045777 from HSC to RAHEJA |
| ee | June 22, 2015 | $1,400.00 | Check # 045776 from HSC to RAHEJA |
| ff | June 22, 2015 | $1,400.00 | Check # 045775 from HSC to RAHEJA |

| | Date | Approx. Amount | Description |
|---|---|---|---|
| gg | June 29, 2015 | $1,400.00 | Check # 046273 from HSC to RAHEJA |
| hh | June 29, 2015 | $1,400.00 | Check # 046264 from HSC to RAHEJA |
| ii | July 13, 2015 | $52.40 | Check # 046695 from HSC to RAHEJA |
| jj | July 13, 2015 | $50.68 | Check # 046694 from HSC to RAHEJA |
| kk | July 21, 2015 | $1,400.00 | Check # 047797 from HSC to RAHEJA |
| ll | July 21, 2015 | $52.40 | Check # 047796 from HSC to RAHEJA |

41.     On or about the dates listed below, HAYSLETTE and MAZZUCCO paid and caused HSC to pay RAHEJA, by check, in the amounts listed below, honoraria for purported speaking engagements, each check constituting a separate overt act:

| | Date | Approx. Amount | Description |
|---|---|---|---|
| a | July 29, 2015 | $53.40 | Check # 048551 from HSC to RAHEJA |
| b | July 29, 2015 | $1,400.00 | Check # 048577 from HSC to RAHEJA |
| c | August 10, 2015 | $1,400.00 | Check # 049475 from HSC to RAHEJA |
| d | August 10, 2015 | $52.40 | Check # 049454 from HSC to RAHEJA |
| e | August 10, 2015 | $52.70 | Check # 049453 from HSC to RAHEJA |
| f | August 10, 2015 | $1,400.00 | Check # 049477 from HSC to RAHEJA |
| g | August 10, 2015 | $52.40 | Check # 049455 from HSC to RAHEJA |
| h | August 10, 2015 | $1,400.00 | Check # 049476 from HSC to RAHEJA |
| i | August 13, 2015 | $50.40 | Check # 049723 from HSC to RAHEJA |
| j | August 13, 2015 | $1,400.00 | Check # 049728 from HSC to RAHEJA |
| k | August 17, 2015 | $1,400.00 | Check # 049984 from HSC to RAHEJA |
| l | August 17, 2015 | $53.70 | Check # 049982 from HSC to RAHEJA |
| m | August 25, 2015 | $1,400.00 | Check # 050604 from HSC to RAHEJA |
| n | August 25, 2015 | $54.70 | Check # 050600 from HSC to RAHEJA |
| o | August 25, 2015 | $1,400.00 | Check # 050514 from HSC to RAHEJA |
| p | August 25, 2015 | $238.94 | Check # 050486 from HSC to RAHEJA |
| q | August 25, 2015 | $1,400.00 | Check # 050519 from HSC to RAHEJA |
| r | August 25, 2015 | $252.09 | Check # 050490 from HSC to RAHEJA |
| s | August 31, 2015 | $51.40 | Check # 050734 from HSC to RAHEJA |
| t | August 31, 2015 | $1,400.00 | Check # 050741 from HSC to RAHEJA |
| u | September 14, 2015 | $1,400.00 | Check # 051526 from HSC to RAHEJA |
| v | September 14, 2015 | $52.40 | Check # 051519 from HSC to RAHEJA |
| w | September 28, 2015 | $53.70 | Check # 052798 from HSC to RAHEJA |
| x | September 28, 2015 | $54.70 | Check # 052804 from HSC to RAHEJA |
| y | September 28, 2015 | $53.70 | Check # 052801 from HSC to RAHEJA |

| | Date | Approx. Amount | Description |
|---|---|---|---|
| z | September 28, 2015 | $52.70 | Check # 052800 from HSC to RAHEJA |
| aa | September 28, 2015 | $53.70 | Check # 052802 from HSC to RAHEJA |
| bb | September 28, 2015 | $51.40 | Check # 052803 from HSC to RAHEJA |
| cc | September 28, 2015 | $52.40 | Check # 052799 from HSC to RAHEJA |
| dd | September 28, 2015 | $52.70 | Check # 052849 from HSC to RAHEJA |
| ee | September 28, 2015 | $51.40 | Check # 052848 from HSC to RAHEJA |
| ff | September 28, 2015 | $1,900.00 | Check # 052806 from HSC to RAHEJA |
| gg | September 28, 2015 | $1,900.00 | Check # 052807 from HSC to RAHEJA |
| hh | September 28, 2015 | $1,900.00 | Check # 052814 from HSC to RAHEJA |
| ii | September 28, 2015 | $1,900.00 | Check # 052812 from HSC to RAHEJA |
| jj | September 28, 2015 | $1,900.00 | Check # 052811 from HSC to RAHEJA |
| kk | September 28, 2015 | $1,900.00 | Check # 052809 from HSC to RAHEJA |
| ll | September 28, 2015 | $1,900.00 | Check # 052815 from HSC to RAHEJA |
| mm | September 28, 2015 | $1,900.00 | Check # 052813 from HSC to RAHEJA |
| nn | September 28, 2015 | $1,900.00 | Check # 052810 from HSC to RAHEJA |
| oo | September 28, 2015 | $1,900.00 | Check # 052808 from HSC to RAHEJA |
| pp | October 19, 2015 | $1,400.00 | Check # 054221 from HSC to RAHEJA |
| qq | October 19, 2015 | $1,400.00 | Check # 054651 from HSC to RAHEJA |
| rr | October 19, 2015 | $1,400.00 | Check # 054284 from HSC to RAHEJA |
| ss | October 23, 2015 | $1,400.00 | Check # 055036 from HSC to RAHEJA |
| tt | October 23, 2015 | $52.40 | Check # 055024 from HSC to RAHEJA |
| uu | October 26, 2015 | $56.00 | Check # 055216 from HSC to RAHEJA |
| vv | October 26, 2015 | $1,400.00 | Check # 055224 from HSC to RAHEJA |
| ww | November 2, 2015 | $53.40 | Check # 055765 from HSC to RAHEJA |
| xx | November 2, 2015 | $1,400.00 | Check # 055776 from HSC to RAHEJA |
| yy | November 2, 2015 | $52.40 | Check # 055343 from HSC to RAHEJA |
| zz | November 2, 2015 | $51.40 | Check # 055345 from HSC to RAHEJA |
| aaa | November 2, 2015 | $54.70 | Check # 055344 from HSC to RAHEJA |
| bbb | November 3, 2015 | $59.70 | Check # 056029 from HSC to RAHEJA |
| ccc | November 3, 2015 | $49.40 | Check # 056182 from HSC to RAHEJA |
| ddd | November 3, 2015 | $1,600.00 | Check # 056041 from HSC to RAHEJA |
| eee | November 3, 2015 | $1,900.00 | Check # 056042 from HSC to RAHEJA |
| fff | November 9, 2015 | $42.10 | Check # 056722 from HSC to RAHEJA |
| ggg | November 9, 2015 | $1,600.00 | Check # 056732 from HSC to RAHEJA |
| hhh | November 9, 2015 | $66.20 | Check # 056723 from HSC to RAHEJA |
| iii | November 9, 2015 | $1,900.00 | Check # 056733 from HSC to RAHEJA |
| jjj | November 9, 2015 | $1,900.00 | Check # 056527 from HSC to RAHEJA |
| kkk | November 9, 2015 | $52.40 | Check # 056521 from HSC to RAHEJA |
| lll | November 9, 2015 | $1,600.00 | Check # 056233 from HSC to RAHEJA |

|  | Date | Approx. Amount | Description |
|---|---|---|---|
| mmm | November 9, 2015 | $43.25 | Check # 056225 from HSC to RAHEJA |
| nnn | November 18, 2015 | $53.40 | Check # 057294 from HSC to RAHEJA |
| ooo | November 18, 2015 | $1,400.00 | Check # 057302 from HSC to RAHEJA |
| ppp | November 24, 2015 | $55.40 | Check # 058662 from HSC to RAHEJA |
| qqq | November 24, 2015 | $2,600.00 | Check # 058668 from HSC to RAHEJA |
| rrr | November 24, 2015 | $216.25 | Check # 058661 from HSC to RAHEJA |
| sss | November 24, 2015 | $52.40 | Check # 058376 from HSC to RAHEJA |
| ttt | November 24, 2015 | $1,400.00 | Check # 058391 from HSC to RAHEJA |
| uuu | November 24, 2015 | $1,900.00 | Check # 058669 from HSC to RAHEJA |
| vvv | November 30, 2015 | $2,600.00 | Check # 059217 from HSC to RAHEJA |
| www | November 30, 2015 | $253.70 | Check # 059206 from HSC to RAHEJA |
| xxx | December 8, 2015 | $1,400.00 | Check # 059555 from HSC to RAHEJA |
| yyy | December 8, 2015 | $53.40 | Check # 059527 from HSC to RAHEJA |
| zzz | December 14, 2015 | $1,400.00 | Check # 060686 from HSC to RAHEJA |
| aaaa | December 14, 2015 | $1,600.00 | Check # 060467 from HSC to RAHEJA |
| bbbb | December 14, 2015 | $53.40 | Check # 060432 from HSC to RAHEJA |
| cccc | December 14, 2015 | $53.70 | Check # 060431 from HSC to RAHEJA |
| dddd | December 14, 2015 | $1,400.00 | Check # 059952 from HSC to RAHEJA |
| eeee | December 14, 2015 | $240.64 | Check # 059943 from HSC to RAHEJA |
| ffff | December 21, 2015 | $1,900.00 | Check # 061019 from HSC to RAHEJA |
| gggg | December 21, 2015 | $63.60 | Check # 061017 from HSC to RAHEJA |
| hhhh | December 30, 2015 | $1,400.00 | Check # 062008 from HSC to RAHEJA |
| iiii | December 30, 2015 | $1,400.00 | Check # 062116 from HSC to RAHEJA |
| jjjj | December 30, 2015 | $1,900.00 | Check # 062010 from HSC to RAHEJA |
| kkkk | January 11, 2016 | $53.85 | Check # 062500 from HSC to RAHEJA |
| llll | January 11, 2016 | $1,900.00 | Check # 062540 from HSC to RAHEJA |
| mmmm | January 11, 2016 | $1,400.00 | Check # 062787 from HSC to RAHEJA |
| nnnn | January 20, 2016 | $200.00 | Check # 063936 from HSC to RAHEJA |
| oooo | January 20, 2016 | $100.00 | Check # 063359 from HSC to RAHEJA |
| pppp | January 20, 2016 | $232.40 | Check # 063275 from HSC to RAHEJA |
| qqqq | January 20, 2016 | $55.70 | Check # 063276 from HSC to RAHEJA |
| rrrr | January 20, 2016 | $46.70 | Check # 063274 from HSC to RAHEJA |
| ssss | January 20, 2016 | $500.00 | Check # 063355 from HSC to RAHEJA |
| tttt | January 20, 2016 | $500.00 | Check # 063353 from HSC to RAHEJA |
| uuuu | January 20, 2016 | $500.00 | Check # 063354 from HSC to RAHEJA |
| vvvv | January 20, 2016 | $500.00 | Check # 063356 from HSC to RAHEJA |
| wwww | January 20, 2016 | $500.00 | Check # 063357 from HSC to RAHEJA |
| xxxx | January 20, 2016 | $500.00 | Check # 063358 from HSC to RAHEJA |
| yyyy | January 20, 2016 | $500.00 | Check # 063360 from HSC to RAHEJA |

| | Date | Approx. Amount | Description |
|---|---|---|---|
| zzzz | January 20, 2016 | $500.00 | Check # 063352 from HSC to RAHEJA |
| aaaaa | January 20, 2016 | $500.00 | Check # 063372 from HSC to RAHEJA |
| bbbbb | January 20, 2016 | $500.00 | Check # 063370 from HSC to RAHEJA |
| ccccc | January 20, 2016 | $500.00 | Check # 063369 from HSC to RAHEJA |
| ddddd | January 20, 2016 | $500.00 | Check # 063368 from HSC to RAHEJA |
| eeeee | January 20, 2016 | $500.00 | Check # 063367 from HSC to RAHEJA |
| fffff | January 20, 2016 | $500.00 | Check # 063366 from HSC to RAHEJA |
| ggggg | January 20, 2016 | $500.00 | Check # 063363 from HSC to RAHEJA |
| hhhhh | January 20, 2016 | $500.00 | Check # 063365 from HSC to RAHEJA |
| iiiii | January 20, 2016 | $500.00 | Check # 063364 from HSC to RAHEJA |
| jjjjj | January 20, 2016 | $500.00 | Check # 063362 from HSC to RAHEJA |
| kkkkk | January 20, 2016 | $500.00 | Check # 063361 from HSC to RAHEJA |
| lllll | January 20, 2016 | $500.00 | Check # 063371 from HSC to RAHEJA |
| mmmmm | January 20, 2016 | $200.00 | Check # 063887 from HSC to RAHEJA |
| nnnnn | January 20, 2016 | $1,900.00 | Check # 063589 from HSC to RAHEJA |
| ooooo | January 20, 2016 | $1,900.00 | Check # 063944 from HSC to RAHEJA |
| ppppp | January 20, 2016 | $1,400.00 | Check # 063738 from HSC to RAHEJA |
| qqqqq | January 20, 2016 | $1,600.00 | Check # 063943 from HSC to RAHEJA |
| rrrrr | January 20, 2016 | $200.00 | Check # 063937 from HSC to RAHEJA |
| sssss | January 27, 2016 | $54.04 | Check # 064154 from HSC to RAHEJA |
| ttttt | January 27, 2016 | $1,900.00 | Check # 064218 from HSC to RAHEJA |
| uuuuu | January 27, 2016 | $53.04 | Check # 064153 from HSC to RAHEJA |
| vvvvv | February 1, 2016 | $381.86 | Check # 064257 from HSC to RAHEJA |
| wwwww | February 8, 2016 | $1,900.00 | Check # 064489 from HSC to RAHEJA |
| xxxxx | February 16, 2016 | $2,600.00 | Check # 065116 from HSC to RAHEJA |
| yyyyy | February 16, 2016 | $1,900.00 | Check # 065117 from HSC to RAHEJA |
| zzzzz | February 16, 2016 | $1,600.00 | Check # 065115 from HSC to RAHEJA |
| aaaaaa | February 16, 2016 | $41.88 | Check # 065111 from HSC to RAHEJA |
| bbbbbb | February 18, 2016 | $800.00 | Check # 065166 from HSC to RAHEJA |
| cccccc | February 18, 2016 | $1,600.00 | Check # 065165 from HSC to RAHEJA |
| dddddd | February 18, 2016 | $1,900.00 | Check # 065167 from HSC to RAHEJA |
| eeeeee | February 18, 2016 | $1,600.00 | Check # 065301 from HSC to RAHEJA |
| ffffff | February 29, 2016 | $1,900.00 | Check # 065928 from HSC to RAHEJA |
| gggggg | February 29, 2016 | $1,900.00 | Check # 065935 from HSC to RAHEJA |
| hhhhhh | February 29, 2016 | $1,900.00 | Check # 065918 from HSC to RAHEJA |
| iiiiii | February 29, 2016 | $211.82 | Check # 065537 from HSC to RAHEJA |
| jjjjjj | February 29, 2016 | $48.80 | Check # 065652 from HSC to RAHEJA |
| kkkkkk | February 29, 2016 | $48.80 | Check # 065653 from HSC to RAHEJA |
| llllll | March 7, 2016 | $1,900.00 | Check # 066434 from HSC to RAHEJA |

| | Date | Approx. Amount | Description |
|---|---|---|---|
| mmmmmm | March 7, 2016 | $47.88 | Check # 066311 from HSC to RAHEJA |
| nnnnnn | March 11, 2016 | $1,900.00 | Check # 0010205 from HSC to RAHEJA |
| oooooo | March 11, 2016 | $2,600.00 | Check # 0010204 from HSC to RAHEJA |
| pppppp | March 15, 2016 | $1,600.00 | Check # 0010345 from HSC to RAHEJA |
| qqqqqq | March 15, 2016 | $1,900.00 | Check # 0010346 from HSC to RAHEJA |
| rrrrrr | March 21, 2016 | $1,737.34 | Check # 0010644 from HSC to RAHEJA |
| ssssss | March 21, 2016 | $5.00 | Check # 0010645 from HSC to RAHEJA |
| tttttt | March 21, 2016 | $5.00 | Check # 0010646 from HSC to RAHEJA |
| uuuuuu | March 29, 2016 | $800.00 | Check # 0011277 from HSC to RAHEJA |
| vvvvvv | March 31, 2016 | $200.00 | Check # 0011424 from HSC to RAHEJA |
| wwwwww | March 31, 2016 | $200.00 | Check # 0011415 from HSC to RAHEJA |
| xxxxxx | March 31, 2016 | $200.00 | Check # 0011416 from HSC to RAHEJA |
| yyyyyy | March 31, 2016 | $200.00 | Check # 0011434 from HSC to RAHEJA |
| zzzzzz | April 4, 2016 | $500.00 | Check # 0011706 from HSC to RAHEJA |

C.      Speaker Program Attendees

42.      On or about the dates listed below, HAYSLETTE and MAZZUCCO provided and caused the provision of dinners at the following restaurants to SAWHNY during purported speaker's bureau programs regarding Nuedexta at which RAHEJA was the speaker, each dinner constituting a separate overt act:

| | Date | Venue | Value of Meal |
|---|---|---|---|
| a | July 21, 2015 | Rosewood Grill | $112.59 |
| b | July 29, 2015 | Trivs | $94.08 |
| c | August 4, 2015 | XO Prime Steakhouse | $100.13 |
| d | August 11, 2015 | Red the Steakhouse | $115.35 |
| e | August 18, 2015 | Rosewood Grill | $77.88 |
| f | August 20, 2015 | Ken Stewart's | $122.74 |
| g | September 1, 2015 | Ken Stewart's | $116.70 |
| h | September 2, 2015 | Giovanni's | $124.54 |
| i | September 8, 2015 | Ken Stewart's | $124.89 |
| j | September 16, 2015 | Hyde Park | $124.50 |
| k | September 29, 2015 | Red the Steakhouse | $123.63 |
| l | October 6, 2015 | Hyde Park | $119.30 |
| m | October 8, 2015 | Ken Stewart's | $123.42 |

|     | Date | Venue | Value of Meal |
| --- | --- | --- | --- |
| n | October 13, 2015 | Delmonico's | $106.13 |
| o | October 15, 2015 | Chez Francois | $117.87 |
| p | October 20, 2015 | Red the Steakhouse | $124.57 |
| q | October 27, 2015 | Delmonico's | $112.49 |
| r | November 2, 2015 | Red the Steakhouse | $122.93 |
| s | November 5, 2015 | Chez Francois | $119.08 |
| t | November 10, 2015 | Delmonico's | $122.56 |
| u | November 17, 2015 | Giovanni's | $123.64 |
| v | November 23, 2015 | Red the Steakhouse | $117.59 |
| w | December 1, 2015 | Ken Stewart's | $124.84 |
| x | December 8, 2015 | Hyde Park | $120.59 |
| y | December 15, 2015 | Trivs | $124.10 |
| z | December 17, 2015 | Chez Francois | $120.11 |
| aa | December 21, 2015 | Ken Stewart's | $124.84 |
| bb | January 6, 2016 | Hyde Park | $123.24 |
| cc | January 21, 2016 | Rosewood Grill | $93.82 |
| dd | January 25, 2016 | Trivs | $117.84 |

D.    Speaker Program Sign-In Sheets

43.    On or about the dates listed below, HAYSLETTE submitted and facilitated the submission of forged signatures on attendee sign-in sheets for purported speaker's bureau programs regarding Nuedexta at which RAHEJA was the speaker, each submission constituting a separate overt act:

|     | Date | Venue | Forged Identity |
| --- | --- | --- | --- |
| a | July 21, 2015 | Rosewood Grill | T.H. |
| b | August 18, 2015 | Rosewood Grill | L.A. |
| c | August 20, 2015 | Ken Stewart's | E.H. |
| d | August 27, 2015 | Ken Stewart's | M.G. |
| e | September 2, 2015 | Giovanni's | E.H./M.G. |
| f | September 8, 2015 | Ken Stewart's | A.G. |
| g | September 9, 2015 | Georgetown (Three Birds) | E.H. |
| h | September 16, 2015 | Hyde Park | E.H./A.G. |
| i | September 23, 2015 | Ken Stewart's | T.H. |
| j | October 8, 2015 | Ken Stewart's | M.G. |

| | Date | Venue | Forged Identity |
|---|---|---|---|
| k | October 27, 2015 | Delmonico's | E.H./M.M. |
| l | November 17, 2015 | Giovanni's | J.G. |
| m | November 19, 2015 | Hyde Park | M.G. |
| n | December 1, 2015 | Ken Stewart's | E.H. |
| o | December 2, 2015 | Hyde Park | M.G. |
| p | December 8, 2015 | Hyde Park | T.H./A.G. |
| q | December 10, 2015 | Downtown 140 | S.A. |
| r | December 15, 2015 | Trivs | L.A. |
| s | December 17, 2015 | Chez Francois | S.L. |
| t | December 21, 2015 | Ken Stewart's | E.R. |
| u | January 6, 2016 | Hyde Park | M.Y. |
| v | January 21, 2016 | Rosewood Grill | M.Y. |

44.     On or about the dates listed below, HAYSLETTE submitted and facilitated the submission of attendee sign-in sheets for purported speaker's bureau programs for Nuedexta at which RAHEJA was the speaker with signatures of people who did not in fact attend the dinner, each submission constituting a separate overt act:

| | Date | Venue | Identity Used as Attendee |
|---|---|---|---|
| a | July 22, 2015 | Ken Stewart's | L.A./S.L. |
| b | July 29, 2015 | Trivs | M.G./E.W. |
| c | August 4, 2015 | XO Prime | T.H/M.M. |
| d | August 12, 2015 | Lockkeepers | J.G. |
| e | August 20, 2015 | Ken Stewart's | S.L. |
| f | August 27, 2015 | Ken Stewart's | L.A. |
| g | September 1, 2015 | Ken Stewart's | S.L./E.W. |
| h | September 2, 2015 | Giovanni's | E.R. |
| i | September 3, 2015 | Rosewood Grill | J.G./E.W. |
| j | September 9, 2015 | Georgetown (Three Birds) | L.A./S.L. |
| k | September 16, 2015 | Hyde Park | L.A./S.L. |
| l | September 23, 2015 | Hyde Park | J.G./E.W. |
| m | September 29, 2015 | Red Steakhouse | A.G./T.H. |
| n | October 6, 2015 | Hyde Park | A.G./T.H. |
| o | October 8, 2015 | Ken Stewart's | E.W. |
| p | October 13, 2015 | Delmonico's | E.R. |
| q | October 15, 2015 | Chez Francois | L.A./S.L./E.W. |

|   | Date | Venue | Identity Used as Attendee |
|---|------|-------|---------------------------|
| r | October 20, 2015 | Red Steakhouse | L.A./J.G. |
| s | November 2, 2015 | Red Steakhouse | J.G. |
| t | November 5, 2015 | Chez Francois | L.A./S.L. |
| u | November 10, 2015 | Delmonico's | S.L. |
| v | November 17, 2015 | Giovanni's | M.Y. |
| w | November 19, 2015 | Hyde Park | M.G. |
| x | November 23, 2015 | Red Steakhouse | L.A./M.G./J.G. |
| y | December 1, 2015 | Ken Stewart's | M.Y. |
| z | December 8, 2015 | Hyde Park | M.Y. |
| aa | December 10, 2015 | Downtown 140 | M.Y. |
| bb | December 17, 2015 | Chez Francois | M.Y. |
| cc | December 21, 2015 | Ken Stewart's | E.R. |
| dd | December 22, 2015 | Red Steakhouse | M.Y. |
| ee | January 6, 2016 | Hyde Park | L.A./S.L./E.R. |
| ff | January 25, 2016 | Dr. Z's Office | M.G. |
| gg | February 9, 2016 | Delmonico's | M.G. |
| hh | February 15, 2016 | Noble House | M.Y. |

## II. Other Inducements

### A. Food and Beverage

45. On or about the dates and times listed below, HAYSLETTE and RAHEJA sent the following text messages, in which they discussed the provision of food and beverage to RAHEJA and his office staff, each text constituting a separate overt act:

|   | Date/Time | Sender | Recipient | Content |
|---|-----------|--------|-----------|---------|
| a | December 21, 2015 2:51:40 PM | RAHEJA | HAYSLETTE | Thx for the lunch Hope you got enough signatures !!! Thx |
| b | December 21, 2015 2:52:27 PM | HAYSLETTE | RAHEJA | U r welcome doc. Anytime sir:D I'm good. It's 25 pp and I added a no-show (t.) all good. |

46. On or about the dates listed below, HAYSLETTE and MAZZUCCO provided and caused the provision of dinners to RAHEJA at speaker's bureau programs at which RAHEJA was the speaker, as well as food and beverage to RAHEJA and his office staff, each provision constituting a separate overt act:

|  | Payment Date | Value |
|---|---|---|
| a | July 29, 2015 | $94.08 |
| b | July 31, 2015 | $2.80 |
| c | August 4, 2015 | $100.13 |
| d | August 5, 2015 | $108.76 |
| e | August 6, 2015 | $4.39 |
| f | August 7, 2015 | $14.85 |
| g | August 10, 2015 | $2.47 |
| h | August 11, 2015 | $115.35 |
| i | August 12, 2015 | $124.78 |
| j | August 13, 2015 | $4.09 |
| k | August 17, 2015 | $3.23 |
| l | August 18, 2015 | $77.87 |
| m | August 20, 2015 | $122.74 |
| n | August 21, 2015 | $4.45 |
| o | August 24, 2015 | $3.25 |
| p | August 27, 2015 | $124.20 |
| q | August 27, 2015 | $3.17 |
| r | August 28, 2015 | $2.34 |
| s | August 31, 2015 | $5.60 |
| t | September 1, 2015 | $116.70 |
| u | September 2, 2015 | $124.54 |
| v | September 3, 2015 | $119.56 |
| w | September 4, 2015 | $7.07 |
| x | September 8, 2015 | $124.89 |
| y | September 9, 2015 | $4.26 |
| z | September 9, 2015 | $79.67 |
| aa | September 11, 2015 | $5.65 |
| bb | September 16, 2015 | $124.50 |
| cc | September 16, 2015 | $4.87 |
| dd | September 17, 2015 | $107.72 |
| ee | September 21, 2015 | $4.87 |
| ff | September 22, 2015 | $116.90 |
| gg | September 23, 2015 | $119.70 |
| hh | September 24, 2015 | $26.68 |
| ii | September 25, 2015 | $4.50 |
| jj | September 28, 2015 | $7.35 |
| kk | September 29, 2015 | $123.63 |
| ll | September 30, 2015 | $82.00 |

|  | Payment Date | Value |
|---|---|---|
| mm | October 2, 2015 | $4.35 |
| nn | October 5, 2015 | $4.35 |
| oo | October 6, 2015 | $119.30 |
| pp | October 7, 2015 | $4.46 |
| qq | October 8, 2015 | $123.42 |
| rr | October 9, 2015 | $4.63 |
| ss | October 12, 2015 | $4.90 |
| tt | October 13, 2015 | $106.13 |
| uu | October 14, 2015 | $18.29 |
| vv | October 14, 2015 | $7.35 |
| ww | October 14, 2015 | $1.83 |
| xx | October 15, 2015 | $117.87 |
| yy | October 16, 2015 | $4.90 |
| zz | October 19, 2015 | $4.47 |
| aaa | October 20, 2015 | $124.57 |
| bbb | October 21, 2015 | $4.32 |
| ccc | October 26, 2015 | $4.42 |
| ddd | October 27, 2015 | $112.49 |
| eee | October 28, 2015 | $1.71 |
| fff | October 28, 2015 | $2.97 |
| ggg | October 30, 2015 | $3.68 |
| hhh | November 2, 2015 | $122.93 |
| iii | November 2, 2015 | $4.24 |
| jjj | November 4, 2015 | $4.15 |
| kkk | November 5, 2015 | $119.08 |
| lll | November 6, 2015 | $11.66 |
| mmm | November 9, 2015 | $4.21 |
| nnn | November 10, 2015 | $122.56 |
| ooo | November 11, 2015 | $3.27 |
| ppp | November 12, 2015 | $125.01 |
| qqq | November 13, 2015 | $4.14 |
| rrr | November 16, 2015 | $3.69 |
| sss | November 17, 2015 | $123.64 |
| ttt | November 18, 2015 | $4.17 |
| uuu | November 19, 2015 | $6.37 |
| vvv | November 19, 2015 | $117.88 |
| www | November 20, 2015 | $4.03 |
| xxx | November 23, 2015 | $117.59 |

|        | Payment Date      | Value    |
|--------|-------------------|----------|
| yyy    | November 23, 2015 | $3.92    |
| zzz    | November 30, 2015 | $4.57    |
| aaaa   | December 1, 2015  | $124.84  |
| bbbb   | December 2, 2015  | $3.52    |
| cccc   | December 2, 2015  | $118.56  |
| dddd   | December 4, 2015  | $6.99    |
| eeee   | December 7, 2015  | $6.85    |
| ffff   | December 8, 2015  | $120.59  |
| gggg   | December 9, 2015  | $1.83    |
| hhhh   | December 9, 2015  | $6.75    |
| iiii   | December 10, 2015 | $117.53  |
| jjjj   | December 11, 2015 | $7.04    |
| kkkk   | December 14, 2015 | $4.88    |
| llll   | December 15, 2015 | $124.10  |
| mmmm   | December 16, 2015 | $5.09    |
| nnnn   | December 17, 2015 | $120.11  |
| oooo   | December 18, 2015 | $5.28    |
| pppp   | December 21, 2015 | $124.84  |
| qqqq   | December 21, 2015 | $17.16   |
| rrrr   | December 22, 2015 | $120.70  |
| ssss   | January 6, 2016   | $123.24  |
| tttt   | January 7, 2016   | $5.81    |
| uuuu   | January 8, 2016   | $5.97    |
| vvvv   | January 11, 2016  | $6.38    |
| wwww   | January 12, 2016  | $107.53  |
| xxxx   | January 13, 2016  | $5.21    |
| yyyy   | January 14, 2016  | $84.41   |
| zzzz   | January 15, 2016  | $4.96    |
| aaaaa  | January 18, 2016  | $6.90    |
| bbbbb  | January 20, 2016  | $66.80   |
| ccccc  | January 20, 2016  | $5.65    |
| ddddd  | January 21, 2016  | $93.82   |
| eeeee  | January 25, 2016  | $7.20    |
| fffff  | January 25, 2016  | $117.84  |
| ggggg  | January 26, 2016  | $13.93   |
| hhhhh  | January 28, 2016  | $5.34    |
| iiiii  | January 29, 2016  | $10.03   |
| jjjjj  | February 1, 2016  | $6.55    |

| | Payment Date | Value |
|---|---|---|
| kkkkk | February 3, 2016 | $6.31 |
| lllll | February 3, 2016 | $93.29 |
| mmmmm | February 4, 2016 | $15.81 |
| nnnnn | February 5, 2016 | $5.05 |
| ooooo | February 8, 2016 | $4.06 |
| ppppp | February 8, 2016 | $122.68 |
| qqqqq | February 9, 2016 | $109.34 |
| rrrrr | February 9, 2016 | $3.64 |
| sssss | February 10, 2016 | $3.01 |
| ttttt | February 11, 2016 | $117.25 |
| uuuuu | February 11, 2016 | $1.09 |
| vvvvv | February 11, 2016 | $11.85 |
| wwwww | February 12, 2016 | $5.18 |
| xxxxx | February 12, 2016 | $9.85 |
| yyyyy | February 15, 2016 | $3.54 |
| zzzzz | February 15, 2016 | $111.41 |
| aaaaaa | February 16, 2016 | $5.27 |
| bbbbbb | February 17, 2016 | $115.49 |
| cccccc | February 17, 2016 | $3.97 |
| dddddd | February 18, 2016 | $4.75 |
| eeeeee | March 11, 2016 | $145.62 |

47. On or about the dates and times listed below, HAYSLETTE, SAWHNY and a staff member at SAWHNY's office ("M.Y.") sent the following text messages, in which they discussed the provision of food and beverage to SAWHNY and his office staff, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 15, 2015 9:28:15 AM | HAYSLETTE | SAWHNY | Do not despair, coffees and sandwiches will be coming soon…wrapping up a conference call and then I'll be in. |
| b | December 1, 2015 8:13:28 AM | HAYSLETTE | M.Y. | Cool.  Text me ur Starbucks order pls |
| c | December 1, 2015 8:14:39 AM | M.Y. | HAYSLETTE | 2 coffees Mocha Frappuccino Large caramel coffee cream and sugar  And some breakfast sandwiches |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| d | December 1, 2015 8:16:24 AM | M.Y. | HAYSLETTE | Can you do me a favor and find out for me if he's going to be here? Lol he didn't call the office once yesterday |
| e | December 1, 2015 8:20:04 AM | HAYSLETTE | M.Y. | Thx. Cool. |
| f | December 3, 2015 8:49:08 AM | HAYSLETTE | M.Y. | Morning. What time today? Same order? |
| g | December 3, 2015 8:49:53 AM | M.Y. | HAYSLETTE | 10. Can we get Panera today?! I want some bagels yo! |
| h | December 3, 2015 8:50:44 AM | HAYSLETTE | M.Y. | Sure. Text me what type of bagels and drinks too pls |
| i | December 3, 2015 9:19:20 AM | M.Y. | HAYSLETTE | Everything bagels Blueberry bagels Asiago bagels Plain bagels Reg cream cheese Blueberry cream cheese Coffee And M. her frozen mocha drink lol Thank you! |
| j | December 29, 2015 8:26:44 AM | M.Y. | HAYSLETTE | Save my life this morning and get some Dunkin Donuts please! |
| k | December 29, 2015 8:30:46 AM | HAYSLETTE | M.Y. | I will but I'm going to be late. Kids are with me and I need them to get them all situated/on the road first. |
| l | December 29, 2015 9:14:40 AM | M.Y. | HAYSLETTE | Okay :) hope you had a good time with them! Large caramel coffee with cream and sugar Large iced caramel mocha latte with whipped cream Large coffee for doc And assorted munchkins lol |

48. On or about the dates listed below, HAYSLETTE and MAZZUCCO provided and caused the provision of food and beverage to SAWHNY and his office staff, each provision constituting a separate overt act:

| | Payment Date | Value |
|---|---|---|
| a | July 29, 2015 | $94.08 |
| b | August 18, 2015 | $77.87 |
| c | September 3, 2015 | $8.01 |
| d | September 23, 2015 | $6.47 |
| e | September 24, 2015 | $7.08 |
| f | September 29, 2015 | $6.80 |
| g | October 1, 2015 | $10.17 |

| | Payment Date | Value |
|---|---|---|
| h | October 8, 2015 | $9.84 |
| i | October 13, 2015 | $10.03 |
| j | October 15, 2015 | $10.23 |
| k | October 20, 2015 | $10.03 |
| l | October 22, 2015 | $10.24 |
| m | October 27, 2015 | $10.04 |
| n | October 29, 2015 | $10.05 |
| o | October 30, 2015 | $3.59 |
| p | November 3, 2015 | $9.30 |
| q | November 5, 2015 | $11.99 |
| r | November 6, 2015 | $6.21 |
| s | November 10, 2015 | $6.64 |
| t | November 12, 2015 | $7.67 |
| u | November 17, 2015 | $19.22 |
| v | November 19, 2015 | $6.65 |
| w | November 24, 2015 | $8.20 |
| x | December 1, 2015 | $8.13 |
| y | December 3, 2015 | $6.15 |
| z | December 8, 2015 | $4.53 |
| aa | December 8, 2015 | $13.20 |
| bb | December 10, 2015 | $6.50 |
| cc | December 15, 2015 | $6.43 |
| dd | December 17, 2015 | $6.50 |
| ee | December 22, 2015 | $6.59 |
| ff | January 5, 2016 | $11.70 |
| gg | January 6, 2016 | $4.64 |
| hh | January 7, 2016 | $8.73 |
| ii | January 12, 2016 | $16.48 |
| jj | January 14, 2016 | $6.62 |
| kk | January 18, 2016 | $7.33 |
| ll | January 19, 2016 | $20.38 |
| mm | January 20, 2016 | $2.75 |
| nn | January 21, 2016 | $7.79 |
| oo | January 26, 2016 | $7.66 |
| pp | January 27, 2016 | $6.04 |
| qq | March 8, 2016 | $4.50 |
| rr | March 15, 2016 | $4.55 |
| ss | March 17, 2016 | $6.93 |

|  | Payment Date | Value |
|---|---|---|
| tt | March 22, 2016 | $5.56 |
| uu | March 24, 2016 | $8.06 |
| vv | March 29, 2016 | $11.82 |
| ww | April 12, 2016 | $8.01 |
| xx | April 19, 2016 | $8.13 |
| yy | April 21, 2016 | $8.52 |
| zz | April 26, 2016 | $9.10 |
| aaa | April 28, 2016 | $11.37 |
| bbb | May 3, 2016 | $8.52 |
| ccc | May 5, 2016 | $3.28 |
| ddd | May 17, 2016 | $4.70 |
| eee | May 24, 2016 | $8.68 |
| fff | May 26, 2016 | $5.70 |
| ggg | May 31, 2016 | $7.56 |
| hhh | June 2, 2016 | $23.48 |
| iii | June 7, 2016 | $7.31 |
| jjj | June 9, 2016 | $9.50 |
| kkk | June 14, 2016 | $10.01 |
| lll | June 16, 2016 | $10.17 |
| mmm | June 21, 2016 | $10.58 |
| nnn | June 28, 2016 | $7.70 |
| ooo | July 5, 2016 | $11.29 |
| ppp | July 7, 2016 | $10.13 |
| qqq | July 12, 2016 | $10.53 |
| rrr | July 14, 2016 | $8.15 |
| sss | July 19, 2016 | $10.84 |
| ttt | July 21, 2016 | $4.06 |
| uuu | July 26, 2016 | $18.80 |
| vvv | August 2, 2016 | $8.70 |
| www | August 4, 2016 | $4.36 |
| xxx | August 9, 2016 | $10.90 |
| yyy | August 11, 2016 | $10.54 |
| zzz | August 16, 2016 | $8.25 |
| aaaa | August 23, 2016 | $19.87 |

B.    Office Equipment

49.    On or about the dates and times listed below, HAYSLETTE, SAWHNY and M.Y.

sent the following text messages, in which they discussed the provision of office equipment for

SAWHNY's office, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | January 14, 2016 5:26:22 PM | HAYSLETTE | SAWHNY | Machine purchased. It was 107.00. It can handle 20,000 pages per month and has all of ur requested options. I'll drop it off tom. Afternoon |
| b | January 14, 2016 5:41:08 PM | SAWHNY | HAYSLETTE | You are too sweet. Rapidly becoming indispensable and inseparable. Just stay this way. ILY |
| c | January 15, 2016 2:28:51 PM | HAYSLETTE | SAWHNY | Missed u. Good news bad news . . . fax is all set . . . but I bill by the hour and I was here about 2 hrs setting it up :) . I left the receipt on ur desk . . . u can square up with me on Tuesday. Have a great weekend. |
| d | January 15, 2016 3:52:09 PM | SAWHNY | HAYSLETTE | Thanks for the good looking Fax machine. I thought it was gratis from Avonir!! Since you charge by the hour, I thought you would take 6 hrs to set it |
| e | January 15, 2016 3:52:09 PM | SAWHNY | HAYSLETTE | up, do I have to pay for OTJ training too? Thanks Gregg for doing this for me. A great weekend to you too. |
| f | January 15, 2016 4:16:17 PM | HAYSLETTE | SAWHNY | U r w. Yeah, I should have taken longer but I decided not to milk it and cut u some slack. I figure 50 Nuedexta RXS should cover my labor. No for the OTJ training unless u want me to bill u for ur weekly history, religion and politics training :) haha. |
| g | January 15, 2016 4:16:43 PM | HAYSLETTE | M.Y. | How's the machine work? |
| h | January 15, 2016 5:24:44 PM | M.Y. | HAYSLETTE | It works great thank you again! |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| i | January 21, 2016 9:36:32 AM | SAWHNY | HAYSLETTE | We are out of Ink!!! Can you pick up a cartridge, please? |
| j | January 21, 2016 9:45:24 AM | HAYSLETTE | SAWHNY | Sorry. On a conference call. Sure. I need the model number pls. |
| k | January 21, 2016 9:46:11 AM | HAYSLETTE | M.Y. | Send me the model # pls. Also send me a name/address of a close place to pick it up. |
| l | January 21, 2016 9:54:27 AM | M.Y. | HAYSLETTE | Printer model: Epson WF-3640 Ink: 252-I black |
| m | January 25, 2016 3:44:38 PM | SAWHNY | HAYSLETTE | That crappy Epson printer has tiny cartridges which run out of ink in 2 days. Can this be exchanged for a better longer lasting printer? |
| n | January 25, 2016 4:03:14 PM | HAYSLETTE | SAWHNY | Sure. I don't think it's the printer doc. It's relative to the volume . . . the girls must be printing, faxing, copying, etc a lot of late. Also, think of it this way . . . maybe u bought a new ink cartridge once a month for ur old fax machine at a cost of $100 per month. U r now spending $20+per week on new ink cartridges . . . so it's a wash. U or I can swap it out. If us wish to switch machines, I would recommend spending a few more hundred and upgrading from a moderate/high volume office machine to a high volume industrial one. |
| o | January 25, 2016 4:07:59 PM | SAWHNY | HAYSLETTE | Give me an idea of what's available. You may have to do the swap since you purchased it. We need something soon. Let me know the options/price, thanks |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| p | January 25, 2016 7:42:27 PM | HAYSLETTE | SAWHNY | Sorry I missed ur call. Have been on the phone with S. and A. since I left. Great time tonight. Enjoy the rest of ur night. Let me know about the machines . . . I can stop by staples Tom am if u want? However, I would prefer to take the fax machine back and then purchase another one. That way u are not stuck with two in case they give me some static. |
| q | January 25, 2016 10:11:36 PM | SAWHNY | HAYSLETTE | Will need more black cartridges, if you can help after my departure it will be nice. Great fun tonight of course. Like the food, but today it was a litt |
| r | January 25, 2016 10:11:38 PM | SAWHNY | HAYSLETTE | le below par (just a prelude to t dhe forthcoming trip advisor write up!!). |
| s | January 25, 2016 10:14:47 PM | HAYSLETTE | SAWHNY | Sure. Just let me know. I can buy a few more cartridges to bide time during ur departure or I can buy a new machine? Ur call. Really? I thought it was all outstanding . . .good food . . .good service. |
| t | January 26, 2016 8:38:33 AM | M.Y. | HAYSLETTE | We already went through one of those ink cartridges and the other one is printing all f---ed up |
| u | January 26, 2016 8:44:20 AM | HAYSLETTE | M.Y. | Haha. Always, ur my kid's age :) Im going to buy a new one bc Sawhny was b----ing about the ink . . . told him it was relative to the size of the cartridge. U may spend 20 a week on the smaller ink ones, but u'll spend the same total on a larger cartridge at the end of the month |
| v | January 26, 2016 8:48:39 AM | HAYSLETTE | M.Y. | Lol . . . haha. See us soon. Should I grab ink for the interim? Plan on replacing it after he leaves unless it's mission critical before hand |
| w | January 26, 2016 8:49:47 AM | M.Y. | HAYSLETTE | We can't print. I hooked up the old printer for the time being but it's kinda life or death. |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| x | January 26, 2016 8:51:56 AM | HAYSLETTE | M.Y. | Wow. I'll mess with it when I get there. U two dorks f---ed it up ;) |
| y | January 26, 2016 5:26:11 PM | HAYSLETTE | SAWHNY | Hey. Going to go with 8710dw for 299.99+ tax. Do u want me to grab an extra toner too? Figured may was well while I'm here. |
| z | January 27, 2016 7:46:56 AM | HAYSLETTE | M.Y. | Morning. Can u meet me with a wheelchair later this morning? Need help carrying the new fax machine and drinks. |

C.     Firearms Training

50.     On or about the dates and times listed below, HAYSLETTE and SAWHNY sent the following text messages, in which they discussed the provision of free firearms training, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 4, 2015 9:37:34 AM | HAYSLETTE | SAWHNY | Haha. I'm willing to offer u a one hour private pistol and rifle shooting lesson. Normally, due to my NRA and expert shooting status, I would charge $1000, but I will offer it to u absolutely free of charge. I will also offer up free ammunition too. |
| b | December 4, 2015 9:56:48 AM | SAWHNY | HAYSLETTE | This seems to be going the way of those 10 dinners at Chez !! Thanks for the ammunition offer, I accept. |

## III.     Non-FDA-Approved Uses of Nuedexta

51.     On or about the dates and times listed below, HAYSLETTE, RAHEJA, MAZZUCCO and SAWHNY sent the following text messages, in which they discussed prescribing Nuedexta at a dose and quantity that did not conform to FDA-approved labeling, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | September 25, 2015 11:46:01 AM | RAHEJA | HAYSLETTE | Just called J to pick up her script I will try and change it to a 90 day script |
| b | November 13, 2015 7:41:26 AM | HAYSLETTE | RAHEJA | I talked to D. and Frank after the program. We are getting beat bc the company has a push for their reps to get 90 day Rxs. So even though other rep's docs are seeing/starting fewer pts on Nuedexta than U/other docs in our territory, they are generating (3) rx's vs. Our (1) each time. |
| c | November 18, 2015 2:53:51 PM | RAHEJA | HAYSLETTE | We might have killed the enemies victory mould Lots of commercial 90's and many more !!!! |
| d | November 18, 2015 2:55:51 PM | RAHEJA | HAYSLETTE | Fyi Synonym of mould is a "hollow container" |
| e | November 18, 2015 2:58:58 PM | HAYSLETTE | RAHEJA | Awesome! I love it!!! Thk u so much for all of ur support!! |
| f | November 19, 2015 8:29:34 AM | RAHEJA | HAYSLETTE | Good morning Hit the ground running 2 commercial 90 went through !!! Left msg with Dr T confirming today call his office too when you can and his cell # is XXX XXX 2504 Thx |
| g | November 19, 2015 11:46:10 AM | RAHEJA | HAYSLETTE | Sent total 18 /90's more comm hv busy afternoon still will get a few more   M wont make it  Do confirm with Dr T  I can be there by 5.30 Thx |
| h | November 19, 2015 12:06:30 PM | HAYSLETTE | RAHEJA | Outstanding! Thk u very much doc. I sincerely appreciate you!!! Sounds great. I will see u then. |
| i | November 18, 2015 8:21:50 AM | HAYSLETTE | MAZZUCCO | If the 90 day rxs hit that Raheja, Sawhny, T, etc have been writing, watch out. My production will triple! No news is good news and I'm not receiving any static/interference from doctors, pts. Or their staff |
| j | November 19, 2015 12:07:01 PM | HAYSLETTE | MAZZUCCO | Fwd: Sent total 18 /90's more comm hv busy afternoon still will get a few more   Thx |
| k | November 19, 2015 12:09:24 PM | HAYSLETTE | MAZZUCCO | Watch out!!! Msg from R. Here comes the ordnance |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| l | November 19, 2015 1:27:12 PM | MAZZUCCO | HAYSLETTE | Dude. 18 90-day Rx's? |
| m | November 19, 2015 1:27:23 PM | MAZZUCCO | HAYSLETTE | Today? |
| n | November 19, 2015 1:33:12 PM | HAYSLETTE | MAZZUCCO | Yes |
| o | November 19, 2015 2:01:52 PM | MAZZUCCO | HAYSLETTE | Gregg. That is amazing. You are going for the KO. Please give me his final 90-day Rx count for the day, once he is finished with this glorious day. |
| p | November 19, 2015 2:02:14 PM | MAZZUCCO | HAYSLETTE | Is he writing these 90-day Rx's for every patient who does not have CareSource? |
| q | November 19, 2015 2:05:38 PM | HAYSLETTE | MAZZUCCO | Yes. All new starts and refills too. |
| r | November 19, 2015 2:07:28 PM | HAYSLETTE | MAZZUCCO | Will do |
| s | November 19, 2015 5:49:13 PM | HAYSLETTE | MAZZUCCO | Going into a dinner. R and I want to know the #s. Pls shoot me over weekly rank, rx totals and R's #s when u have a second. Thk u |
| t | November 19, 2015 9:32:38 PM | HAYSLETTE | MAZZUCCO | Thx again for all the data. R is on-fire and promised me that we'll win! |
| u | November 19, 2015 9:34:38 PM | HAYSLETTE | MAZZUCCO | I agree. Ii just rallied with Sawhny and T. They're all on board and willing to do what it takes. Watch out |
| v | November 19, 2015 9:42:30 PM | HAYSLETTE | MAZZUCCO | R is double booking and working holidays too. 25 90s today or 75rxs |
| w | November 20, 2015 2:44:59 PM | MAZZUCCO | HAYSLETTE | How has "Operation 90DRx" gone so far today? Also, would location would you recommend in Cuyahoga Falls, for our reviews? Thank you. |
| x | November 20, 2015 3:07:19 PM | HAYSLETTE | MAZZUCCO | Outstanding. Over 20 90 rxs written btwn raheja, t, sawhny and p....not sure on the capture rate due to quantity limits though |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| y | November 13, 2015 12:50:20 AM | HAYSLETTE | SAWHNY | Just finished up...late night but had to pay my dues with all of the top "brass." sounds good for next weekend. Lets try and get u out to the range. Haha, I agree. No one gets past a Gemini either. Here's an idea...if u write a 90 day supply in lieu of a 30 day supply, that will count as 3 rxs vs 1. So in theory, u could see fewer pts and yet generate a larger number of rxs. I'm going to roll this plan out with some of my other docs tomorrow. Thanks a lot for all of your support! I sincerely appreciate your friendship, support and help too!!! Love ya too. Have a great day tomorrow. Talk soon. |
| z | November 14, 2015 3:20:27 PM | SAWHNY | HAYSLETTE | sday. Yes, even I was thinking of the 90 days Rx but you never mentioned it. I thought Geminis were smarter than that!! But don't worry, sticking aroun |

52.    On or about the dates listed below, RAHEJA completed and caused to be completed prior authorizations for the following patients, which requested a Nuedexta prescription of 90 pills per 30 days, each request constituting a separate overt act:

| | Date | Patient |
|---|---|---|
| a | January 16, 2015 | A.M. |
| b | November 27, 2015 | R.P. |
| c | February 16, 2016 | A.M |
| d | May 29, 2016 | S.L. |
| e | May 31, 2016 | D.L. |

53.    On or about the dates and times listed below, HAYSLETTE and RAHEJA sent the following text messages, in which they discussed RAHEJA providing an article about Nuedexta and pain to another physician, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | October 12, 2015 10:33:07 AM | RAHEJA | HAYSLETTE | I faxed the pain article to Dr J. this morning |
| b | October 12, 2015 10:36:59 AM | HAYSLETTE | RAHEJA | Awesome! Thx a lot doc. |

## IV.     Access to Protected Health Information

### A.     Prior Authorizations

54.     On or about the dates and times listed below, HAYSLETTE, SAWHNY and M.Y.

sent the following text messages, in which they discussed HAYSLETTE's participation in the

prior authorization approval process, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 23, 2015 2:51:06 PM | SAWHNY | HAYSLETTE | Did we get approval for D. B. for Nuedexta BWC ? |
| b | December 23, 2015 2:57:24 PM | HAYSLETTE | SAWHNY | No. Tried two different times. No luck |
| c | December 30, 2015 10:49:02 AM | M.Y. | HAYSLETTE | What dx should I use for bwc patients for prior auth for neudexta |
| d | December 30, 2015 10:49:33 AM | HAYSLETTE | M.Y. | "Good luck" |
| e | December 30, 2015 10:49:35 AM | HAYSLETTE | M.Y. | Lol |
| f | December 30, 2015 10:50:27 AM | HAYSLETTE | M.Y. | I have tried two and neither went through. U can use "Pseudobulbar Affect." F48.2-ICD10. |
| g | December 30, 2015 10:51:08 AM | HAYSLETTE | M.Y. | Also write", Nuedexta is the only FDA approved drug to treat PBA(Pseudobulbar Affect)." |
| h | December 30, 2015 10:51:58 AM | M.Y. | HAYSLETTE | We can't use that if it's not in their allowed dx codes that's why it doesn't get approved |
| i | December 30, 2015 10:53:34 AM | HAYSLETTE | M.Y. | I'm not sure. I know for D. and C. we wrote a really fancy letter about how it helps with pain, etc. However, both letters were written in vain as they denied with no avail |
| j | December 30, 2015 10:53:51 AM | HAYSLETTE | M.Y. | as BWC denied them both |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| k | January 7, 2016 11:28:25 AM | HAYSLETTE | M.Y. | Cool. Did k.s. from anthem call or l.'s caresource approval come through? |
| l | January 7, 2016 11:29:02 AM | M.Y. | HAYSLETTE | No and no |
| m | January 7, 2016 11:30:57 AM | HAYSLETTE | M.Y. | Bs and Bs. Thanks. |
| n | January 14, 2016 10:27:39 AM | HAYSLETTE | M.Y. | Hi. Can u text me c. s.'s birthday. Thx |
| o | January 15, 2016 9:11:12 AM | HAYSLETTE | M.Y. | Did u get approval on K.? |
| p | January 15, 2016 9:11:49 AM | M.Y. | HAYSLETTE | No |
| q | January 20, 2016 3:14:21 PM | HAYSLETTE | M.Y. | Hey. Any news from caresource on K.? I wrote them a rebuttal yesterday bf 5 pm. |
| r | January 20, 2016 3:14:59 PM | M.Y. | HAYSLETTE | Yes got the approval about an hour ago |
| s | February 2, 2016 11:22:29 AM | HAYSLETTE | M.Y. | Hi. How r u? Don't forget to holler if u/u guys need anything or if I have any PAs to knock out. |
| t | February 5, 2016 11:13:42 AM | HAYSLETTE | M.Y. | Hi. How's it going with M.? Hopefully better. Any PAS or anything u need help with? |

B.      Screening

55.      On or about the dates and times listed below, HAYSLETTE, RAHEJA and

MAZZUCCO sent the following text messages, in which they discussed HAYSLETTE screening

patients at SAWHNY and other physicians' offices for PBA, each text constituting a separate

overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | September 24, 2015 9:19:39 PM | HAYSLETTE | RAHEJA | Hey doc. I hope u had a good day. I spent all day with Sawhny and it was a great day. We found another seven pts. To start. Here's a recap for the week of 9.11. I don't understand what happened? It was the worst week in a long time for the territory. Total scripts were only 42 for the week. U had 33 of them. Z. for 1, t. for 1, J. for 1, p. for 2, p. for 1, and 3 from non-targets. There's still time to turn things around if the last few weeks have been good. |
| b | October 8, 2015 12:56:05 PM | MAZZUCCO | HAYSLETTE | Would you please text me Dr. M.'s mobile number? I didn't enter into my phone, when I met him with D. last spring. Considering the prospects of making him a speaker. Also tomorrow on the call, please refer to your time at Sahwny's office as "screening days" vs. preceptorships. Seems like a trivial matter of semantics, but the interpretation of precepts varies (some of which is no longer permissible in pharma) Thanks for making this minor tweak. Your portion of the call tomorrow stands to be one of the most impactful components. |
| c | October 12, 2015 10:26:19 AM | RAHEJA | HAYSLETTE | Fwd: Hi C. Hope all is well  We are all confirmed for Delmonicos for tomorrow at 6 just confirmed with G. !!! Gregg will also be calling you and doing screening for nuedexta ( CNS - LS ) at the office spoke with G. last Thursday sorry couldn't make it to you on Wednesday  Looking forward to seeing you tomorrow evening  Hv a beautiful morning  DR |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| d | January 6, 2016 08:25:09 AM | HAYSLETTE | MAZZUCCO | Awesome! Sounds good Frank. Unfortunately, I won't be able to beta test until late evening as I did not bring the laptop due to a heavy morning, a screening afternoon with Sawhny, followed by a program. I will test around 10 pm or so and text u my results in the morning if that's OK? |
| e | January 11, 2016 3:43:57 PM | HAYSLETTE | MAZZUCCO | Sounds good Frank. I'm screening for Sawhny so it's up in the air. He usually ends approx 4-430. Assuming 4 or 430 sticks, I can be there by 515. |

## V.    False Statements

A.    Medically Unnecessary Prescriptions of Nuedexta

56.    On or about the dates listed below, RAHEJA wrote the following medically

unnecessary prescriptions of Nuedexta, each writing constituting a separate overt act:

| | Patient | Prescription Date | Number of Pills |
|---|---|---|---|
| a | A.M. | January 17, 2015 | 90 |
| b | A.M. | February 12, 2015 | 90 |
| c | A.M. | March 12, 2015 | 90 |
| d | A.M. | November 20, 2015 | 60 |
| e | A.M. | December 18, 2015 | 10 |
| f | A.M. | December 18, 2015 | 60 |
| g | A.M. | January 14, 2016 | 60 |
| h | S.L. | January 28, 2013 | 60 |
| i | S.L. | February 26, 2013 | 60 |
| j | S.L. | March 26, 2013 | 60 |
| k | S.L. | April 29, 2013 | 60 |
| l | S.L. | May 28, 2013 | 60 |
| m | S.L. | November 1, 2013 | 60 |
| n | S.L. | June 10, 2014 | 90 |
| o | S.G. | September 2, 2015 | 90 |
| p | S.G. | December 22, 2015 | 90 |
| q | R.P. | July 10, 2015 | 60 |
| r | R.P. | August 17, 2015 | 60 |

|  | Patient | Prescription Date | Number of Pills |
|---|---|---|---|
| s | R.P. | October 28, 2015 | 60 |
| t | R.P. | November 25, 2015 | 60 |
| u | R.P. | December 21, 2015 | 60 |
| v | R.P. | January 19, 2016 | 60 |
| w | R.P. | February 16, 2016 | 60 |
| x | R.P. | March 14, 2016 | 60 |
| y | D.L. | January 9, 2015 | 90 |
| z | D.L. | February 12, 2015 | 90 |
| aa | D.L. | March 7, 2015 | 90 |
| bb | D.L. | April 2, 2015 | 90 |
| cc | D.L. | April 25, 2015 | 90 |
| dd | D.L. | May 9, 2015 | 90 |
| ee | D.L. | June 23, 2015 | 90 |
| ff | D.L. | July 21, 2015 | 90 |
| gg | D.L. | August 18, 2015 | 90 |
| hh | D.L. | September 16, 2015 | 90 |
| ii | D.L. | October 16, 2015 | 90 |
| jj | D.L. | November 17, 2015 | 90 |
| kk | D.L. | December 18, 2015 | 30 |
| ll | D.L. | December 26, 2015 | 90 |
| mm | D.L. | January 19, 2016 | 90 |
| nn | D.L. | February 15, 2016 | 90 |
| oo | C.Z. | May 31, 2013 | 60 |
| pp | C.Z. | July 11, 2013 | 60 |
| qq | C.Z. | August 9, 2013 | 60 |
| rr | C.Z. | September 11, 2013 | 60 |
| ss | C.Z. | November 5, 2013 | 60 |
| tt | C.Z. | December 5, 2013 | 60 |
| uu | C.Z. | January 3, 2014 | 60 |
| vv | C.Z. | February 25, 2014 | 60 |
| ww | C.Z. | April 26, 2014 | 60 |
| xx | C.Z. | July 2, 2014 | 60 |
| yy | B.D. | December 14, 2015 | 60 |
| zz | K.B. | December 15, 2015 | 60 |

B.    False Statements in Patient Medical Files

57.    On or about the dates listed below, RAHEJA documented and caused to be

documented the following false statements, each statement constituting a separate overt act:

| | Date | Patient | False Statement |
|---|---|---|---|
| a | December 19, 2015 | A.M. | A.M. "states that she gets emotional often and sometimes cries for no reason." |
| b | January 16, 2015 | A.M. | A.M. "has ongoing symptoms of emotional incontinence" |
| c | January 16, 2015 | A.M. | Diagnosis of PBA |
| d | February 13, 2015 | A.M. | A.M. "complains of crying often and is unable to control this emotion" |
| e | February 13, 2015 | A.M. | Diagnosis of PBA |
| f | March 13, 2015 | A.M. | A.M. "complains of crying" |
| g | March 13, 2015 | A.M. | Diagnosis of PBA |
| h | April 10, 2015 | A.M. | A.M. "has ongoing symptoms of emotional incontinence" |
| i | April 10, 2015 | A.M. | Diagnosis of PBA |
| j | June 5, 2015 | A.M. | A.M. "has ongoing symptoms of emotional incontinence" |
| k | June 5, 2015 | A.M. | Diagnosis of PBA |
| l | September 25, 2015 | A.M. | Diagnosis of PBA |
| m | October 23, 2015 | A.M. | "Patient has been advised to start Nuedexta for her symptoms of emotional incontinence" |
| n | November 20, 2015 | A.M. | A.M. "has ongoing symptoms of emotional incontinence" |
| o | November 20, 2015 | A.M. | Diagnosis of PBA |
| p | December 18, 2015 | A.M. | A.M. "has ongoing symptoms of emotional incontinence" |
| q | December 18, 2015 | A.M. | Diagnosis of PBA |
| r | February 9, 2016 | A.M. | A.M. "has ongoing symptoms of emotional incontinence" |
| s | February 9, 2016 | A.M. | Diagnosis of PBA |
| t | October 10, 2012 | S.L. | Diagnosis of PBA |
| u | November 7, 2012 | S.L. | Diagnosis of PBA |
| v | January 28, 2013 | S.L. | Diagnosis of PBA |
| w | March 4, 2013 | S.L. | Diagnosis of PBA |
| x | April 1, 2013 | S.L. | Diagnosis of PBA |
| y | April 29, 2013 | S.L. | Diagnosis of PBA |
| z | May 28, 2013 | S.L. | Diagnosis of PBA |
| aa | June 25, 2013 | S.L. | Diagnosis of PBA |
| bb | August 20, 2013 | S.L. | Diagnosis of PBA |
| cc | September 17, 2013 | S.L. | Diagnosis of PBA |

| | Date | Patient | False Statement |
|---|---|---|---|
| dd | October 15, 2013 | S.L. | Diagnosis of PBA |
| ee | November 12, 2013 | S.L. | Diagnosis of PBA |
| ff | January 3, 2014 | S.L. | Diagnosis of PBA |
| gg | April 9, 2014 | S.L. | Diagnosis of PBA |
| hh | May 7, 2014 | S.L. | Diagnosis of PBA |
| ii | June 4, 2014 | S.L. | Diagnosis of PBA |
| jj | July 3, 2014 | S.L. | Diagnosis of PBA |
| kk | July 31, 2014 | S.L. | Diagnosis of PBA |
| ll | August 28, 2014 | S.L. | Diagnosis of PBA |
| mm | September 25, 2014 | S.L. | Diagnosis of PBA |
| nn | September 16, 2015 | S.L. | Diagnosis of PBA |
| oo | September 16, 2015 | S.L. | "Patient complains of crying episodes and states that she is unable to control her emotions." |
| pp | November 4, 2014 | S.G. | Diagnosis of PBA |
| qq | June 10, 2015 | S.G. | Diagnosis of PBA |
| rr | June 10, 2015 | S.G. | "Patient complains of crying episodes and states she finds herself getting emotional for no reason." |
| ss | September 2, 2015 | S.G. | Diagnosis of PBA |
| tt | September 30, 2015 | S.G. | Diagnosis of PBA |
| uu | September 30, 2015 | S.G. | "Patient has ongoing symptoms of emotional incontinence." |
| vv | June 11, 2015 | R.P. | Diagnosis of PBA |
| ww | June 11, 2015 | R.P. | "Patient complains of crying episodes and states she can not control this emotion." |
| xx | July 9, 2015 | R.P. | Diagnosis of PBA |
| yy | July 9, 2015 | R.P. | "Patient states she cries often and finds herself getting emotional for no reason." |
| zz | August 6, 2015 | R.P. | Diagnosis of PBA |
| aaa | August 6, 2015 | R.P. | "Patient has ongoing symptoms of emotional incontinence." |
| bbb | September 2, 2015 | R.P. | Diagnosis of PBA |
| ccc | September 30, 2015 | R.P. | Diagnosis of PBA |
| ddd | September 30, 2015 | R.P. | "Patient has ongoing symptoms of emotional incontinence." |
| eee | November 25, 2015 | R.P. | Diagnosis of PBA |
| fff | November 25, 2015 | R.P. | "Patient has ongoing symptoms of emotional incontinence." |
| ggg | December 22, 2015 | R.P. | Diagnosis of PBA |
| hhh | December 22, 2015 | R.P. | "Patient complains of ongoing symptoms of emotional incontinence." |
| iii | January 19, 2016 | R.P. | Diagnosis of PBA |
| jjj | January 19, 2016 | R.P. | "Patient has ongoing symptoms of emotional incontinence." |
| kkk | February 16, 2016 | R.P. | Diagnosis of PBA |

|      | Date              | Patient | False Statement |
|------|-------------------|---------|-----------------|
| lll  | February 16, 2016 | R.P.    | "Patient complains of ongoing symptoms of anxiety and emotional incontinence." |
| mmm  | December 12, 2013 | D.L.    | "Patient has ongoing symptoms of emotional incontinence" |
| nnn  | December 12, 2013 | D.L.    | Diagnosis of PBA |
| ooo  | January 9, 2015   | D.L.    | "Patient states he cries at inappropriate times and is unable to control this emotion" |
| ppp  | January 9, 2015   | D.L.    | Diagnosis of PBA |
| qqq  | February 10, 2015 | D.L.    | "Patient has ongoing symptoms of depression and emotional incontinence" |
| rrr  | February 10, 2015 | D.L.    | Diagnosis of PBA |
| sss  | April 7, 2015     | D.L.    | "Patient has ongoing symptoms of emotional incontinence" |
| ttt  | April 7, 2015     | D.L.    | Diagnosis of PBA |
| uuu  | May 5, 2015       | D.L.    | "Patient has ongoing symptoms of emotional incontinence" |
| vvv  | May 5, 2015       | D.L.    | Diagnosis of PBA |
| www  | June 22, 2015     | D.L.    | "Patient states he cries often and us unable to control his emotions" |
| xxx  | June 22, 2015     | D.L.    | Diagnosis of PBA |
| yyy  | July 20, 2015     | D.L.    | "Patient complains of crying episodes and is unable to control his emotions" |
| zzz  | July 20, 2015     | D.L.    | Diagnosis of PBA |
| aaaa | February 5, 2016  | D.L.    | "Patient has ongoing symptoms of emotional incontinence and Nuedexta helps" |
| bbbb | February 5, 2016  | D.L.    | Diagnosis of PBA |
| cccc | May 31, 2013      | C.Z.    | Diagnosis of PBA |
| dddd | August 1, 2013    | C.Z.    | Diagnosis of PBA |
| eeee | November 21, 2013 | C.Z.    | Diagnosis of PBA |
| ffff | March 19, 2014    | C.Z.    | Diagnosis of PBA |
| gggg | December 8, 2015  | T.D.    | Diagnosis of PBA |
| hhhh | December 14, 2015 | B.D.    | Diagnosis of PBA |
| iiii | December 14, 2015 | B.D.    | B.D. "stated he gets agitated and emotional often and sometimes cries for no reason." |
| jjjj | December 15, 2015 | K.B.    | Diagnosis of PBA |
| kkkk | December 15, 2015 | K.B.    | K.B. "complains of getting emotional often and states she sometimes cries for no reason." |

C.    False Statements in Prior Authorizations

58.    On or about the dates listed below, RAHEJA completed and caused to be completed prior authorizations containing the following false statements, each statement constituting a separate overt act:

| | Date | Patient | False Statement |
|---|---|---|---|
| a | May 31, 2013 | C.Z. | Diagnosis of PBA |
| b | May 31, 2013 | C.Z. | "Pt responds well to this medication, This is the only clinically proven medication used to treat PBA." |
| c | June 25, 2014 | C.Z. | Diagnosis of PBA |
| d | June 25, 2014 | C.Z. | "this is the only medication that is clinically proven to treat PBA. she has been on this medication for one year and it works well to control her symptoms of PBA." |
| e | January 16, 2015 | A.M. | Diagnosis of PBA |
| f | January 16, 2015 | A.M. | "Patient is suffering from excessive laughing and crying due to PBA. Nuedexta is the only medication clinically proven to treat this condition." |
| g | February 11, 2015 | D.L. | Diagnosis of PBA |
| h | February 11, 2015 | D.L. | "Patient is suffering from excessive laughing and crying due to PBA. Nuedexta is the only medication clinically proven to treat this condition." |
| i | June 15, 2015 | S.G. | Diagnosis of PBA |
| j | June 15, 2015 | S.G. | "Patient is experiencing severe episodes of laughing and crying due to PBA. Nuedexta is the only FDA approved medication clinically proven to effectively treat these symptoms." |
| k | July 9, 2015 | R.P. | Diagnosis of PBA |
| l | July 9, 2015 | R.P. | "Patient needs a medication to help control her symptoms of PBA. She has outbursts of laughing and crying for no apparent reason. Medically necessary. Nuedexta is the only medication FDA approved to treat PBA." |
| m | November 27, 2015 | R.P. | Diagnosis of PBA |
| n | November 27, 2015 | R.P. | "Patient has been using this medication at BID dosing since July. She needs therapy for longer hours throughout the day. Patient also has anxiety." |
| o | December 16, 2015 | K.B. | Diagnosis of PBA |
| p | December 16, 2015 | K.B. | "Patient was recently diagnosed. Medically necessary to treat PBA. Nuedexta is the only FDA approved drug to treat PBA." |
| q | February 9, 2016 | A.M. | Diagnosis of PBA |

| | Date | Patient | False Statement |
|---|---|---|---|
| r | February 9, 2016 | A.M. | "Patient has been on this medication since September and it works well for her with no side effects. Medically necessary to treat her PBA." |
| s | February 16, 2016 | A.M. | Diagnosis of PBA |
| t | February 16, 2016 | A.M. | "Patient has been on this medication since September and it works well for her with no side effects. Patient needs a higher dose as the BID dosing is wearing off towards the end of the day. Medically necessary to treat her PBA. Patient has a Traumatic Brain Injury." |

59.     On or about the dates listed below, SAWHNY completed and caused to be completed prior authorizations containing the following false statements, each statement constituting a separate overt act:

| | Date | Patient | False Statement |
|---|---|---|---|
| a | October 26, 2015 | L.L. | Diagnosis of PBA |
| b | December 17, 2015 | S.S. | Diagnosis of PBA |
| c | December 17, 2015 | S.S. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has Pseudobulbar Affect secondary to TBI (Head Trauma, Brain Injury)." |
| d | January 6, 2016 | L.L. | Diagnosis of PBA |
| e | January 6, 2016 | L.L. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has Pseudobulbar Affect secondary to TBI (Head Trauma, Brain Injury)." |
| f | January 14, 2016 | T.K. | Diagnosis of PBA |
| g | January 14, 2016 | T.K. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has Pseudobulbar Affect secondary to TBI (Head Trauma, Brain Injury)." |
| h | January 27, 2016 | L.T. | Diagnosis of PBA |
| i | January 27, 2016 | L.T. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has PBA (Pseudobulbar Affect) secondary to TBI." |

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-11
(Receipt of Kickbacks in Connection with a Federal Health Care Program,
42 U.S.C. § 1320a-7b(b)(1)(B))

The Grand Jury further charges:

60.     The factual allegations contained in Paragraphs 1-4, 7-24, 25a-d, 25f, 26a-e, 27-38, 40-41, 43-46, 51a-x, 52-53 and 55-58 are incorporated by reference as if fully restated herein.

61.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DEEPAK RAHEJA did knowingly and willfully solicit and receive remuneration, that is, kickbacks, directly and indirectly, overtly and covertly, in the form of checks and things of value, from another to induce him to purchase, order and arrange for and recommend the purchasing, ordering and arranging of goods, services and items, that is, prescriptions for Nuedexta, for which payment may be made in whole and in part by a federal health care program as defined by Title 18, United States Code, Section 24(b), as set forth below, each kickback constituting a separate count:

| Count | Date | Approx. Amount | Description |
|---|---|---|---|
| 2 | July 29, 2015 | $1,400.00 | Check # 048577 from HSC to RAHEJA |
| 3 | September 28, 2015 | $1,900.00 | Check # 052809 from HSC to RAHEJA |
| 4 | September 28, 2015 | $1,900.00 | Check # 052815 from HSC to RAHEJA |
| 5 | September 28, 2015 | $1,900.00 | Check # 052813 from HSC to RAHEJA |
| 6 | September 28, 2015 | $1,900.00 | Check # 052810 from HSC to RAHEJA |
| 7 | September 28, 2015 | $1,900.00 | Check # 052808 from HSC to RAHEJA |
| 8 | March 11, 2016 | $2,600.00 | Check # 0010204 from HSC to RAHEJA |
| 9 | March 15, 2016 | $1,600.00 | Check # 0010345 from HSC to RAHEJA |
| 10 | March 15, 2016 | $1,900.00 | Check # 0010346 from HSC to RAHEJA |
| 11 | March 21, 2016 | $1,737.34 | Check # 0010644 from HSC to RAHEJA |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## COUNTS 12-21
(Receipt of Kickbacks in Connection with a Federal Health Care Program,
42 U.S.C. § 1320a-7b(b)(1)(B))

The Grand Jury further charges:

62. The factual allegations set forth in Paragraphs 3-5, 7-24, 25a, 25c-h, 26a-c, 26f, 27, 35, 39, 42, 47-50, 51y-z, 54-55 and 59 are incorporated by reference as if fully restated herein.

63. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant BHUPINDER SAWHNY did knowingly and willfully solicit and receive remuneration, that is, kickbacks, directly and indirectly, overtly and covertly, in the form of dinners and things of value, from another to induce him to purchase, order and arrange for and recommend the purchasing, ordering and arranging of goods, services and items, that is, prescriptions for Nuedexta, for which payment may be made in whole and in part by a federal health care program as defined by Title 18, United States Code, Section 24(b), as set forth below, each kickback constituting a separate count:

| Count | Date | Venue | Value of Meal |
|-------|------|-------|---------------|
| 12 | July 29, 2015 | Trivs | $94.08 |
| 13 | September 2, 2015 | Giovanni's | $124.54 |
| 14 | September 16, 2015 | Hyde Park | $124.50 |
| 15 | October 27, 2015 | Delmonico's | $112.49 |
| 16 | December 8, 2015 | Hyde Park | $120.59 |
| 17 | December 17, 2015 | Chez Francois | $120.11 |
| 18 | December 21, 2015 | Ken Stewart's | $124.84 |
| 19 | January 6, 2016 | Hyde Park | $123.24 |
| 20 | January 21, 2016 | Rosewood Grill | $93.82 |
| 21 | January 25, 2016 | Trivs | $117.84 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

COUNTS 22-31
(Offering or Paying Kickbacks in Connection with Federal Health Care Program,
42 U.S.C. § 1320a-7b(b)(2)(B))

The Grand Jury further charges:

64.     The factual allegations contained in Paragraphs 1-4, 7-24, 25a-d, 25f, 26a-e, 27-38, 40-41, 43-46, 51a-x, 52-53 and 55-58 are incorporated by reference as if fully restated herein.

65.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants GREGORY HAYSLETTE and FRANK MAZZUCCO did knowingly and willfully offer to pay and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of checks and things of value to another, that is, Deepak Raheja, to induce him to purchase, order and arrange for and recommend the purchasing, ordering and arranging of goods, services and items, that is, prescriptions for Nuedexta, for which payment may be made in whole and in part by a federal health care program as defined by Title 18, United States Code, Section 24(b), as set forth below, each kickback constituting a separate count:

| Count | Date | Approx. Amount | Description |
|-------|------|----------------|-------------|
| 22 | July 29, 2015 | $1,400.00 | Check # 048577 from HSC to RAHEJA |
| 23 | September 28, 2015 | $1,900.00 | Check # 052809 from HSC to RAHEJA |
| 24 | September 28, 2015 | $1,900.00 | Check # 052815 from HSC to RAHEJA |
| 25 | September 28, 2015 | $1,900.00 | Check # 052813 from HSC to RAHEJA |
| 26 | September 28, 2015 | $1,900.00 | Check # 052810 from HSC to RAHEJA |
| 27 | September 28, 2015 | $1,900.00 | Check # 052808 from HSC to RAHEJA |
| 28 | March 11, 2016 | $2,600.00 | Check # 0010204 from HSC to RAHEJA |
| 29 | March 15, 2016 | $1,600.00 | Check # 0010345 from HSC to RAHEJA |
| 30 | March 15, 2016 | $1,900.00 | Check # 0010346 from HSC to RAHEJA |
| 31 | March 21, 2016 | $1,737.34 | Check # 0010644 from HSC to RAHEJA |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

## COUNTS 32-41
(Offering or Paying Kickbacks in Connection with Federal Health Care Program,
42 U.S.C. § 1320a-7b(b)(2)(B))

The Grand Jury further charges:

66.     The factual allegations set forth in Paragraphs 3-5, 7-24, 25a, 25c-h, 26a-c, 26f,

27, 35, 39, 42, 47-50, 51y-z, 54-55 and 59 are incorporated by reference as if fully restated

herein.

67.     On or about the dates listed below, in the Northern District of Ohio, Eastern

Division, and elsewhere, Defendants GREGORY HAYSLETTE and FRANK MAZZUCCO did

knowingly and willfully offer to pay and pay remuneration, that is, kickbacks and bribes, directly

and indirectly, overtly and covertly, in the form of dinners to another, that is, Bhupinder Sawhny,

to induce him to purchase, order and arrange for and recommend the purchasing, ordering and

arranging of goods, services and items, that is, prescriptions for Nuedexta, for which payment

may be made in whole and in part by a federal health care program as defined by Title 18, United

States Code, Section 24(b), as set forth below, each kickback constituting a separate count:

| Count | Date | Venue | Value of SAWHNY's Meal |
|-------|------|-------|------------------------|
| 32 | July 29, 2015 | Trivs | $94.08 |
| 33 | September 2, 2015 | Giovanni's | $124.54 |
| 34 | September 16, 2015 | Hyde Park | $124.50 |
| 35 | October 27, 2015 | Delmonico's | $112.49 |
| 36 | December 8, 2015 | Hyde Park | $120.59 |
| 37 | December 17, 2015 | Chez Francois | $120.11 |
| 38 | December 21, 2015 | Ken Stewart's | $124.84 |
| 39 | January 6, 2016 | Hyde Park | $123.24 |
| 40 | January 21, 2016 | Rosewood Grill | $93.82 |
| 41 | January 25, 2016 | Trivs | $117.84 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

## COUNT 42
(Conspiracy to Commit Health Care Fraud, 18 U.S.C. § 1349)

The Grand Jury further charges:

68.     The factual allegations contained in Paragraphs 1-59 are incorporated by reference as if fully restated herein.

69.     From in or around February 2011, through in or around July 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, FRANK MAZZUCCO, BHUPINDER SAWHNY, and F.P. (known to the Grand Jury but not charged herein), and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, a health care benefit program, namely, Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347 (Health Care Fraud).

### OBJECTS OF THE CONSPIRACY

70.     The objects of the conspiracy were to (a) defraud Medicare and Medicaid; (b) enrich the conspirators and others; and (c) prevent detection of their conspiracy.

### MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

71.     RAHEJA, HAYSLETTE, MAZZUCCO and SAWHNY carried out the conspiracy through the manner and means alleged in Paragraphs 25-26 above.

72.     RAHEJA, SAWHNY and F.P. caused the submission of false and fraudulent charges for Nuedexta prescriptions to Medicare and Medicaid.

73.     F.P. caused the submission of billings to Medicare and Medicaid for Nuedexta prescriptions for patients that did not have PBA.

74.     F.P. submitted and caused the submission of materially false and fictitious prior authorizations to Medicaid MCOs that reflected diagnoses of PBA for patients that did not actually have PBA.

75.     F.P. permitted unauthorized access to protected patient health information.

<u>ACTS IN FURTHERANCE OF THE CONSPIRACY</u>

76.     The overt acts set forth in Paragraphs 27-59 are incorporated by reference as if fully restated herein.

77.     On or about the dates listed below, RAHEJA caused the submission of charges for Nuedexta prescriptions to the federal health care program, as defined by Title 18, United States Code, Section 24(b) and specified below, each submission constituting a separate act in furtherance:

|   | Claim Date | Amount Claimed | Benefit Program | Beneficiary |
|---|---|---|---|---|
| a | January 17, 2015 | $1,185.84 | CareSource | A.M. |
| b | February 12, 2015 | $1,185.84 | CareSource | A.M. |
| c | March 12, 2015 | $1,185.84 | CareSource | A.M. |
| d | November 20, 2015 | $813.60 | CareSource | A.M. |
| e | December 18, 2015 | $135.60 | CareSource | A.M. |
| f | December 18, 2015 | $813.60 | CareSource | A.M. |
| g | January 14, 2016 | $813.60 | CareSource | A.M. |
| h | January 28, 2013 | $562.94 | Medicare | S.L. |
| i | February 26, 2013 | $514.25 | Medicare | S.L. |
| j | March 26, 2013 | $514.25 | Medicare | S.L. |
| k | April 29, 2013 | $544.66 | Medicare | S.L. |
| l | May 28, 2013 | $607.05 | Medicare | S.L. |
| m | November 1, 2013 | $607.05 | Medicare | S.L. |

| n | June 10, 2014 | $826.61 | Medicare | S.L. |
|---|---|---|---|---|
| o | September 2, 2015 | $1,185.84 | CareSource | S.G. |
| p | December 22, 2015 | $1,220.40 | CareSource | S.G |
| q | July 10, 2015 | $790.56 | CareSource | R.P. |
| r | August 17, 2015 | $790.56 | CareSource | R.P. |
| s | October 28, 2015 | $813.60 | CareSource | R.P. |
| t | November 25, 2015 | $813.60 | CareSource | R.P. |
| u | December 21, 2015 | $813.60 | CareSource | R.P. |
| v | January 19, 2016 | $813.60 | CareSource | R.P. |
| w | February 16, 2016 | $813.60 | CareSource | R.P. |
| x | March 14, 2016 | $813.60 | CareSource | R.P. |
| y | January 9, 2015 | $881.78 | Medicare | D.L. |
| z | February 12, 2015 | $921.98 | Medicare | D.L. |
| aa | March 7, 2015 | $1026.39 | Medicare | D.L. |
| bb | April 2, 2015 | $986.54 | Medicare | D.L. |
| cc | April 25, 2015 | $976.78 | Medicare | D.L. |
| dd | May 19, 2015 | $976.78 | Medicare | D.L. |
| ee | June 23, 2015 | $976.78 | Medicare | D.L. |
| ff | July 21, 2015 | $976.78 | Medicare | D.L. |
| gg | August 18, 2015 | $976.78 | Medicare | D.L. |
| hh | September 16, 2015 | $976.78 | Medicare | D.L. |
| ii | October 16, 2015 | $1,005.22 | Medicare | D.L. |
| jj | November 17, 2015 | $1,005.22 | Medicare | D.L. |
| kk | December 18, 2015 | $299.07 | Medicare | D.L. |
| ll | December 26, 2015 | $893.81 | Medicare | D.L. |
| mm | January 19, 2016 | $649.82 | Medicare | D.L. |
| nn | February 15, 2016 | $943.88 | Medicare | D.L. |
| oo | May 31, 2013 | $717.84 | CareSource | C.Z. |
| pp | July 11, 2013 | $717.84 | CareSource | C.Z. |
| qq | August 9, 2013 | $717.84 | CareSource | C.Z. |
| rr | September 11, 2013 | $717.84 | CareSource | C.Z. |
| ss | November 5, 2013 | $717.84 | CareSource | C.Z. |
| tt | December 5, 2013 | $774.00 | CareSource | C.Z. |
| uu | January 3, 2014 | $774.00 | CareSource | C.Z. |
| vv | February 25, 2014 | $774.00 | CareSource | C.Z. |
| ww | April 26, 2014 | $774.00 | CareSource | C.Z. |
| xx | July 2, 2014 | $774.00 | CareSource | C.Z. |
| yy | December 28, 2015 | $815.40 | Medicaid | B.D. |
| zz | December 31, 2015 | $813.99 | Medicaid | K.B. |

78.     On or about the dates listed below, SAWHNY caused the submission of charges

for Nuedexta prescriptions to the federal health care program, as defined by Title 18, United

States Code, Section 24(b) and specified below, each submission constituting a separate act in

furtherance:

|  | Claim Date | Amount Claimed | Benefit Program | Beneficiary |
|---|---|---|---|---|
| a | November 17, 2015 | $687.49 | Medicare and CareSource | H.G. |
| b | January 27, 2016 | $1,952.64 | Medicare and CareSource | H.G. |
| c | December 18, 2015 | $1,916.03 | Medicare and CareSource | K.B. |
| d | January 19, 2016 | $683.42 | CareSource | J.B. |
| e | June 6, 2016 | $720.03 | CareSource | M.H. |
| f | July 12, 2016 | $720.03 | CareSource | M.H. |
| g | August 15, 2016 | $713.62 | CareSource | M.H. |
| h | September 21, 2016 | $713.62 | CareSource | M.H. |
| i | October 25, 2016 | $713.62 | CareSource | M.H. |
| j | January 20, 2016 | $685.46 | CareSource | T.K. |
| k | February 15, 2016 | $685.46 | CareSource | T.K. |
| l | May 17, 2016 | $720.03 | CareSource | L.L. |
| m | June 27, 2016 | $720.03 | CareSource | L.L. |
| n | August 10, 2016 | $713.62 | CareSource | L.L. |
| o | September 28, 2016 | $713.62 | CareSource | L.L. |
| p | November 1, 2016 | $713.62 | CareSource | L.L. |
| q | May 6, 2016 | $717.04 | CareSource | T.M. |
| r | June 6, 2016 | $717.04 | CareSource | T.M. |
| s | July 14, 2016 | $717.04 | CareSource | T.M. |
| t | August 9, 2016 | $713.62 | CareSource | T.M. |
| u | September 9, 2016 | $713.62 | CareSource | T.M. |
| v | October 26, 2016 | $713.62 | CareSource | T.M. |
| w | December 22, 2015 | $685.46 | CareSource | S.S. |
| x | October 1, 2015 | $792.36 | Medicaid | C.M. |
| y | October 30, 2015 | $815.40 | Medicaid | C.M. |
| z | November 26, 2015 | $815.40 | Medicaid | C.M. |

79. On or about the dates listed below, F.P. caused the submission of charges for

Nuedexta prescriptions to the federal health care program, as defined by Title 18, United States

Code, Section 24(b) and specified below, each submission constituting a separate act in

furtherance:

| | Claim Date | Amount Claimed | Benefit Program | Beneficiary |
|---|---|---|---|---|
| a | June 7, 2016 | $722.17 | Medicare and CareSource | J.B. |
| b | November 22, 2015 | $687.49 | Medicare and CareSource | R.D. |
| c | February 16, 2016 | $687.49 | Medicare and CareSource | P.J. |
| d | March 21, 2016 | $687.49 | Medicare and CareSource | P.J. |
| e | November 23, 2015 | $606.93 | Medicare and CareSource | G.N. |
| f | January 14, 2016 | $684.24 | Medicare and CareSource | B.P. |
| g | February 8, 2016 | $684.24 | Medicare and CareSource | B.P. |
| h | March 10, 2016 | $684.24 | Medicare and CareSource | B.P. |
| i | April 27, 2016 | $718.75 | Medicare and CareSource | B.P. |
| j | May 26, 2016 | $718.75 | Medicare and CareSource | B.P. |
| k | June 16, 2016 | $718.75 | Medicare and CareSource | B.P. |
| l | October 19, 2015 | $687.49 | Medicare and CareSource | M.S. |
| m | December 7, 2015 | $687.49 | Medicare and CareSource | B.T. |
| n | March 5, 2016 | $684.24 | Medicare and CareSource | D.W. |
| o | December 14, 2015 | $685.46 | CareSource | T.B. |
| p | January 13, 2016 | $685.46 | CareSource | T.B. |
| q | February 16, 2016 | $685.46 | CareSource | T.B. |
| r | March 13, 2016 | $685.46 | CareSource | T.B. |
| s | May 7, 2016 | $720.03 | CareSource | T.B. |
| t | June 7, 2016 | $720.03 | CareSource | T.B. |
| u | February 16, 2016 | $685.46 | CareSource | K.B. |
| v | March 13, 2016 | $685.46 | CareSource | K.B. |
| w | January 20, 2016 | $689.93 | CareSource | R.C. |
| x | February 19, 2016 | $689.93 | CareSource | R.C. |
| y | December 26, 2015 | $691.56 | CareSource | L.D. |
| z | July 26, 2016 | $717.04 | CareSource | C.D. |
| aa | November 24, 2015 | $691.56 | CareSource | R.L. |
| bb | December 23, 2015 | $685.46 | CareSource | R.L. |
| cc | March 21, 2016 | $689.93 | CareSource | R.L. |

| | | | | |
|---|---|---|---|---|
| dd | December 14, 2015 | $685.46 | CareSource | T.L. |
| ee | July 6, 2016 | $717.90 | CareSource | J.M. |
| ff | August 22, 2016 | $713.62 | CareSource | J.M. |
| gg | October 18, 2016 | $713.62 | CareSource | J.M. |
| hh | December 11, 2015 | $685.46 | CareSource | M.Mc. |
| ii | November 23, 2015 | $691.56 | CareSource | A.M. |
| jj | January 14, 2016 | $689.93 | CareSource | M.Mi. |
| kk | March 5, 2016 | $683.42 | CareSource | A.P. |
| ll | February 29, 2016 | $689.93 | CareSource | J.P. |
| mm | January 6, 2016 | $691.56 | CareSource | D.S. |
| nn | January 28, 2016 | $685.46 | CareSource | R.S. |
| oo | March 17, 2016 | $685.46 | CareSource | R.S. |
| pp | May 27, 2016 | $720.03 | CareSource | R.S. |
| qq | July 11, 2016 | $720.03 | CareSource | R.S. |
| rr | February 29, 2016 | $683.42 | CareSource | T.W. |
| ss | May 11, 2016 | $717.90 | CareSource | T.W. |
| tt | June 12, 2016 | $717.90 | CareSource | T.W. |
| uu | February 3, 2016 | $683.42 | CareSource | L.W. |
| vv | March 18, 2016 | $683.42 | CareSource | L.W. |
| ww | April 17, 2016 | $717.90 | CareSource | L.W. |
| xx | May 17, 2016 | $717.90 | CareSource | L.W. |
| yy | June 19, 2016 | $717.90 | CareSource | L.W. |
| zz | July 16, 2016 | $717.90 | CareSource | L.W. |
| aaa | November 21, 2015 | $610.88 | CareSource | T.W. |
| bbb | December 18, 2015 | $80.68 | CareSource | T.W. |
| ccc | May 12, 2016 | $717.04 | CareSource | T.W. |
| ddd | June 8, 2016 | $717.04 | CareSource | T.W. |
| eee | April 11, 2016 | $685.46 | CareSource | L.W. |
| fff | May 11, 2016 | $720.03 | CareSource | L.W. |
| ggg | December 2, 2015 | $815.40 | Medicaid | A.V. |
| hhh | May 5, 2016 | $861.64 | Medicaid | R.S. |

80.    On or about the dates listed below, F.P. completed and caused to be completed prior authorizations containing the following false statements, each statement constituting a separate act in furtherance:

| | Date | Patient | False Statement |
|---|---|---|---|
| a | January 13, 2016 | M.M. | Diagnosis of PBA |
| b | January 13, 2016 | M.M. | "Pt has Pseudobulbar Affect secondary to head trauma (TBI). Nuedexta is the only FDA approved medication for Pseudobulbar Affect (PBA)." |
| c | January 20, 2016 | R.S. | Diagnosis of PBA |

| | Date | Patient | False Statement |
|---|---|---|---|
| d | January 20, 2016 | R.S. | "Pt has Pseudobulbar Affect secondary to head trauma (TBI). Nuedexta is the only FDA approved medication for Pseudobulbar Affect (PBA)." |
| e | February 15, 2016 | K.B. | Diagnosis of PBA |
| f | February 15, 2016 | K.B. | "Pt has Pseudobulbar Affect secondary to head trauma (TBI). Nuedexta is the only FDA approved medication for Pseudobulbar Affect (PBA)." |

All in violation of Title 18, United States Code, Section 1349.

COUNTS 43-52
(Health Care Fraud, 18 U.S.C. § 1347)

The Grand Jury further charges:

81.     The factual allegations contained in Paragraphs 1-4, 7-24, 25a-d, 25f, 26a-e, 27-

38, 40-41, 43-46, 51a-x, 52-53 and 55-58 are incorporated by reference as if fully restated herein.

82.     From in or around February 2011, through in or around July 2016, Defendants

DEEPAK RAHEJA and GREGORY HAYSLETTE did devise and intend to devise a scheme

and artifice to defraud and to obtain money from federal health care benefit programs by means

of false and fraudulent pretenses, representations and promises.

83.     From in or around February 2011, through in or around July 2016, in the Northern

District of Ohio, Eastern Division, and elsewhere, Defendants RAHEJA and HAYSLETTE

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud

health care benefit programs affecting commerce, as defined in Title 18, United States Code,

Section 24(b), that is Medicare and Medicaid, and to obtain by means of false and fraudulent

pretenses, representations described herein, money and property owned by, and under the

custody and control of Medicare and Medicaid, in connection with the delivery of and payment

for health care benefits, items, and services, that is, Nuedexta prescriptions, in violation of

Title 18, United States Code, Section 1347.

84.     On or about the dates listed below, in the Northern District of Ohio, Eastern

Division, and elsewhere, Defendants RAHEJA and HAYSLETTE did execute and attempt to

execute the scheme described above by submitting and causing the submission of the claims for

reimbursement set forth below, each submission constituting a separate count:

| Count | Claim Date | Amount Claimed | Benefit Program | Beneficiary |
|-------|------------|----------------|-----------------|-------------|
| 43 | January 17, 2015 | $1,185.84 | CareSource | A.M. |
| 44 | January 14, 2016 | $813.60 | CareSource | A.M. |
| 45 | September 2, 2015 | $1,185.84 | CareSource | S.G. |
| 46 | December 22, 2015 | $1,220.40 | CareSource | S.G |
| 47 | July 10, 2015 | $790.56 | CareSource | R.P. |
| 48 | March 14, 2016 | $813.60 | CareSource | R.P. |
| 49 | January 9, 2015 | $881.78 | Medicare | D.L. |
| 50 | February 15, 2016 | $943.88 | Medicare | D.L. |
| 51 | December 28, 2015 | $815.40 | Medicaid | B.D. |
| 52 | December 31, 2015 | $813.99 | Medicaid | K.B. |

All in violation of Title 18, United States Code, Section 1347.

## COUNTS 53-55
(Health Care Fraud, 18 U.S.C. § 1347)

The Grand Jury further charges:

85.     The factual allegations contained in Paragraphs 1-2, 10-11 and 13-14 are

incorporated by reference as if fully restated herein.

86.     From in or around February 2011, through in or around July 2016, Defendant

DEEPAK RAHEJA did devise and intend to devise a scheme and artifice to defraud and to

obtain money from federal health care benefit programs by means of false and fraudulent

pretenses, representations and promises.

87.     From in or around February 2011, through in or around July 2016, in the Northern

District of Ohio, Eastern Division, and elsewhere, Defendant RAHEJA knowingly and willfully

executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs

affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare

and Medicaid, and to obtain by means of false and fraudulent pretenses, representations

described herein, money and property owned by, and under the custody and control of Medicare

and Medicaid, in connection with the delivery of and payment for health care benefits, items, and

services, that is, Needle Electromyography tests, in violation of Title 18, United States Code,

Section 1347.

88.     On or about the dates listed below, in the Northern District of Ohio, Eastern

Division, and elsewhere, Defendant RAHEJA did execute and attempt to execute the scheme

described above by submitting and causing the submission of the claims for reimbursement set

forth below, each submission constituting a separate count:

| Count | Claim Date | Amount Claimed | Benefit Program | Beneficiary |
|-------|-----------|----------------|-----------------|-------------|
| 53 | November 24, 2015 | $200.00 | Medicaid | B.D |
| 54 | December 9, 2015 | $400.00 | Medicaid | T.D. |
| 55 | December 16, 2015 | $400.00 | Medicaid | K.B. |

All in violation of Title 18, United States Code, Section 1347.

COUNTS 56-58
(Health Care Fraud, 18 U.S.C. § 1347)

The Grand Jury further charges:

89.     The factual allegations set forth in Paragraphs 3, 5, 7-24, 25a, 25c-h, 26a-c, 26f,

27, 35, 39, 42, 47-50, 51y-z, 54-55 and 59 are incorporated by reference as if fully restated

herein.

90.     From in or around July 2015, through in or around July 2016, Defendants

GREGORY HAYSLETTE and BHUPINDER SAWHNY did devise and intend to devise a

scheme and artifice to defraud and to obtain money from federal health care benefit programs by

means of false and fraudulent pretenses, representations and promises.

91.     From in or around July 2015, through in or around July 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants HAYSLETTE and SAWHNY knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare and Medicaid, and to obtain by means of false and fraudulent pretenses, representations described herein, money and property owned by, and under the custody and control of Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, that is, Nuedexta prescriptions, in violation of Title 18, United States Code, Section 1347.

92.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants HAYSLETTE and SAWHNY did execute and attempt to execute the scheme described above by submitting and causing the submission of the claims for reimbursement set forth below, each submission constituting a separate count:

| Count | Claim Date | Amount Claimed | Benefit Program | Beneficiary |
|-------|------------|----------------|-----------------|-------------|
| 56 | January 20, 2016 | $685.46 | CareSource | T.K. |
| 57 | November 1, 2016 | $713.62 | CareSource | L.L. |
| 58 | December 22, 2015 | $685.46 | CareSource | S.S. |

All in violation of Title 18, United States Code, Section 1347.

<u>COUNTS 59-74</u>
(False Statement Relating to Health Care Matters, 18 U.S.C. § 1035)

The Grand Jury further charges:

93.     The factual allegations contained in Paragraphs 1-3 and 5-18 are incorporated by reference as if fully restated herein.

94.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, and

BHUPINDER SAWHNY, in a matter involving a health care benefit program, did knowingly and willfully make and cause to be made a materially false, fictitious and fraudulent statement and representation, and make and use any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items and services; to wit, the defendant(s) listed below made and submitted false statements for the following patients in connection with claims for reimbursement on the dates indicated, each statement constituting a separate count:

| Count | Date | Patient | False Statements on Prior Auths. | Defendant |
|-------|------|---------|----------------------------------|-----------|
| 59 | January 16, 2015 | A.M. | Diagnosis of PBA | RAHEJA |
| 60 | January 16, 2015 | A.M. | "Patient is suffering from excessive laughing and crying due to PBA. Nuedexta is the only medication clinically proven to treat this condition." | RAHEJA |
| 61 | February 11, 2015 | D.L. | Diagnosis of PBA | RAHEJA |
| 62 | February 11, 2015 | D.L. | "Patient is suffering from excessive laughing and crying due to PBA. Nuedexta is the only medication clinically proven to treat this condition." | RAHEJA |
| 63 | June 15, 2015 | S.G. | Diagnosis of PBA | RAHEJA |
| 64 | June 15, 2015 | S.G. | "Patient is experiencing severe episodes of laughing and crying due to PBA. Nuedexta is the only FDA approved medication clinically proven to effectively treat these symptoms." | RAHEJA |
| 65 | July 9, 2015 | R.P. | Diagnosis of PBA | RAHEJA |
| 66 | July 9, 2015 | R.P. | "Patient needs a medication to help control her symptoms of PBA. She has outbursts of laughing and crying for no apparent reason. Medically necessary. Nuedexta is the only medication FDA approved to treat PBA." | RAHEJA |
| 67 | December 16, 2015 | K.B. | Diagnosis of PBA | RAHEJA |

| Count | Date | Patient | False Statements on Prior Auths. | Defendant |
|-------|------|---------|----------------------------------|-----------|
| 68 | December 16, 2015 | K.B. | "Patient was recently diagnosed. Medically necessary to treat PBA. Nuedexta is the only FDA approved drug to treat PBA." | RAHEJA |
| 69 | December 17, 2015 | S.S. | Diagnosis of PBA | SAWHNY and HAYSLETTE |
| 70 | December 17, 2015 | S.S. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has Pseudobulbar Affect secondary to TBI (Head Trauma, Brain Injury)." | SAWHNY and HAYSLETTE |
| 71 | January 14, 2016 | T.K. | Diagnosis of PBA | SAWHNY and HAYSLETTE |
| 72 | January 14, 2016 | T.K. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has Pseudobulbar Affect secondary to TBI (Head Trauma, Brain Injury)." | SAWHNY and HAYSLETTE |
| 73 | January 27, 2016 | L.T. | Diagnosis of PBA | SAWHNY and HAYSLETTE |
| 74 | January 27, 2016 | L.T. | "Nuedexta is the only FDA approved medication to treat Pseudobulbar Affect (PBA). Pt has PBA (Pseudobulbar Affect) secondary to TBI." | SAWHNY and HAYSLETTE |

All in violation of Title 18, United States Code, Section 1035.

COUNT 75
(Aiding and Abetting Wrongful Disclosure of Individually Identifiable Health Information,
42 U.S.C. §§ 1320d-6(a)(3) and (b)(1), and 2)

The Grand Jury further charges:

95.     The factual allegations contained in Paragraphs 3 and 5 are incorporated by reference as if fully restated herein.

96.     From in or around July 2015 through in or around July 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants BHUPINDER SAWHNY and GREGORY HAYSLETTE, aiding and abetting one another, did knowingly and without authorization, disclose protected individually identifiable health information relating to an

individual that was maintained by a covered entity, as defined in Title 45, Code of Federal

Regulations, Section 160.13, to wit, SAWHNY disclosed to HAYSLETTE, and HAYSLETTE

accessed, patient records containing protected individually identifiable health information at the

offices of SAWHNY, a covered entity, without authorization from the patient.

In violation of Title 42, United States Code, Sections 1320d-6(a)(3) and (b)(1), and 2.

COUNT 76

(Aiding and Abetting Wrongful Disclosure of Individually Identifiable Health Information,
42 U.S.C. §§ 1320d-6(a)(3) and (b)(1), and 2)

The Grand Jury further charges:

97.     The factual allegations contained in Paragaphs 3 and 6 are incorporated by

reference as if fully restated herein.

98.     From in or around July 2015 through in or around July 2016, in the Northern

District of Ohio, Eastern Division, and elsewhere, Defendant GREGORY HAYSLETTE and

F.P. (known to the Grand Jury but not charged herein), aiding and abetting one another, did

knowingly and without authorization, disclose protected individually identifiable health

information relating to an individual that was maintained by a covered entity, as defined in Title

45, Code of Federal Regulations, Section 160.13, to wit, F.P. disclosed to HAYSLETTE, and

HAYSLETTE accessed, patient records containing protected individually identifiable health

information at the offices of F.P., a covered entity, without authorization from the patient.

In violation of Title 42, United States Code, Sections 1320d-6(a)(3) and (b)(1), and 2.

COUNT 77
(Conspiracy to Commit Honest Services Mail Fraud and Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury further charges:

99.     The factual allegations contained in Paragraphs 1-5 and 7-24 are incorporated by reference as if fully restated herein.

100.    At all times relevant to this Indictment, the patients of RAHEJA and SAWHNY had an intangible right to the honest services of their physicians.  RAHEJA and SAWHNY, as fiduciaries, owed their patients a duty to refrain from receiving bribes and kickbacks.

101.    From in or around July 2015, through in or around July 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, FRANK MAZZUCCO, and BHUPINDER SAWHNY, and others known and unknown to the Grand Jury did knowingly and intentionally combine, conspire, confederate and agree to commit federal offenses, that is, to devise a scheme and artifice, to wit, the scheme and artifice to defraud and deprive the patients of RAHEJA and SAWHNY of their intangible right to the honest and faithful services of RAHEJA and SAWHNY through bribes and kickbacks to RAHEJA and SAWHNY to induce them to prescribe Nuedexta, and the concealment of material information related thereto, and for purposes of executing such scheme and artifice:

a.      to cause matters to be placed in any post office and authorized depository for mail matter to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, according to the directions thereon; and

b.      to transmit and cause to be transmitted by means of wire communication in interstate commerce any writings, signs, signals, pictures and sounds

in violation of Title 18, United States Code, Sections 1341, 1343 and 1346.

## OBJECTS OF THE CONSPIRACY

102.    The objects of the conspiracy were: (a) for HAYSLETTE and MAZZUCCO to cause the unlawful payment of kickbacks to RAHEJA and SAWHNY; (b) for RAHEJA and SAWHNY to accept the unlawful payment of kickbacks; (c) to defraud and deprive the patients of RAHEJA and SAWHNY of their intangible right to the honest services of their physicians; (d) enrich the conspirators; and (e) avoid detection of their conspiracy.

## MANNER AND MEANS

103.    It was part of the conspiracy that RAHEJA, HAYSLETTE, MAZZUCCO and SAWHNY carried out the conspiracy through the manner and means alleged in Paragraphs 25-26 above.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

104.    The overt acts set forth in Paragraphs 27-59 are incorporated by reference as if fully restated herein.

105.    On or about the dates listed below, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, FRANK MAZZUCCO and BHUPINDER SAWHNY and others, for purposes of executing the above-described scheme and artifice, caused matters to be placed in any post office and authorized depository for mail matter to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, to be delivered according to the directions thereon, including the following checks, from New Jersey to the Northern District of Ohio, each mailing constituting a separate act in furtherance:

|   | Date | Approx. Amount | Description |
|---|------|---------|-------------|
| a | July 29, 2015 | $1,400.00 | Check # 048577 from HSC to RAHEJA |
| b | September 28, 2015 | $1,900.00 | Check # 052809 from HSC to RAHEJA |
| c | September 28, 2015 | $1,900.00 | Check # 052815 from HSC to RAHEJA |
| d | September 28, 2015 | $1,900.00 | Check # 052813 from HSC to RAHEJA |

|   | Date | Approx. Amount | Description |
|---|---|---|---|
| e | September 28, 2015 | $1,900.00 | Check # 052810 from HSC to RAHEJA |
| f | September 28, 2015 | $1,900.00 | Check # 052808 from HSC to RAHEJA |
| g | March 11, 2016 | $2,600.00 | Check # 0010204 from HSC to RAHEJA |
| h | March 15, 2016 | $1,600.00 | Check # 0010345 from HSC to RAHEJA |
| i | March 15, 2016 | $1,900.00 | Check # 0010346 from HSC to RAHEJA |
| j | March 21, 2016 | $1,737.34 | Check # 0010644 from HSC to RAHEJA |

106. On or about the dates listed below, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, FRANK MAZZUCCO and BHUPINDER SAWHNY and others, for purposes of executing the above-described scheme and artifice, caused to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures and sounds, including the following sign-in sheets for speaker program locations, from the Northern District of Ohio, to New Jersey, each transmission constituting a separate act in furtherance:

|   | Date | Sign-in Sheet for Speaker Program Location | Value of Meal |
|---|---|---|---|
| a | July 29, 2015 | Trivs | $94.08 |
| b | September 2, 2015 | Giovanni's | $124.54 |
| c | September 16, 2015 | Hyde Park | $124.50 |
| d | October 27, 2015 | Delmonico's | $112.49 |
| e | December 8, 2015 | Hyde Park | $120.59 |
| f | December 17, 2015 | Chez Francois | $120.11 |
| g | December 21, 2015 | Ken Stewart's | $124.84 |
| h | January 6, 2016 | Hyde Park | $123.24 |
| i | January 21, 2016 | Rosewood Grill | $93.82 |
| j | January 25, 2016 | Trivs | $117.84 |

All in violation of Title 18, United States Code, Section 1349.

COUNTS 78-83
(Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1))

The Grand Jury further charges:

107.    The allegations contained in Paragraphs 3 and 19-21 are incorporated by reference as if fully restated herein.

108.    On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant GREGORY HAYSLETTE, during and in relation to felony violation(s) of Title 18, United States Code, Section 1343 (Wire Fraud), knowingly transferred, possessed and used without lawful authority a means of identification of the persons identified below (real persons known to the Grand Jury), knowing that the means of identification belonged to another person, to wit, HAYSLETTE, without authorization, used the names and signatures of medical professionals on sign-in sheets for speaker programs, each use constituting a separate count:

| Count | Date | Venue of Speaker's Program | Identity |
|-------|------|---------------------------|----------|
| 78 | August 18, 2015 | Rosewood Grill | L.A. |
| 79 | September 2, 2015 | Giovanni's | M.G. |
| 80 | September 16, 2015 | Hyde Park | E.H. |
| 81 | December 8, 2015 | Hyde Park | T.H. |
| 82 | December 8, 2015 | Hyde Park | A.G. |
| 83 | December 17, 2015 | Chez Francois | S.L. |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(7))

The Grand Jury further alleges:

109.    The allegations of Counts 1, 42 through 74, and 77 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 982(a)(7). As a result of the foregoing offenses, Defendants DEEPAK RAHEJA, GREGORY HAYSLETTE, FRANK MAZZUCCO, and BHUPINDER SAWHNY shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds they obtained directly or indirectly as a result of such violations; and, all property, real and personal, which constitutes or is derived from gross proceeds traceable to the commission of such offenses.


A TRUE BILL.


Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002



U.S. Department of Justice

*United States Attorney*
*Northern District of Ohio*

United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

November 8, 2019

RE:  <u>U.S. v. Deepak Raheja, Gregory Hayslette, Frank Mazzucco & Bhupinder Sawhny</u>
     Court Docket # 19-CR-559

Dear Sir/Madam:

This notice is to inform you of criminal charges in the above referenced case. We are contacting you because according to insurance records you were previously treated by one of the physicians. Specifically, Medicare/Medicaid records indicate that you received and/or filled a prescription issued by Dr. Deepak Raheja or Dr. Bhupinder Sawhny for a medication called Nuedexta between July 1, 2015 and July 31, 2016.

On September 18, 2019, a grand jury returned an indictment against the above-named defendants alleging, in relevant part, that defendants Raheja and Sawhny accepted kickbacks for writing prescriptions of Nuedexta, a drug approved by the FDA solely to treat pseudobulbar affect (PBA), to patients who did not suffer from PBA. The prosecuting attorneys for this case are Megan Miller and Michael Collyer.

If you would like to discuss this matter further and/or believe you were harmed as a result of the alleged criminal conduct, please contact the FBI at 216-622-6963. Please note that calls will be returned once a week in the order they are received. Additionally, if you would like to access the court docket online you may do so by visiting www.pacer.gov.

Lastly, while our office cannot act as your attorney or provide you with legal advice, you can seek the advice of an attorney with respect to any related legal matters. Concerns regarding health implications, if any, should be directed to a medical professional.

Sincerely,

*Michael L. Collyer*

Michael L. Collyer
Assistant United States Attorney

**Complaint - Exhibit B**



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
Eastern Division (Akron)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | **5:15 CV 611** |
| | ) | Civil No. _____ |
| KEVIN MANIERI, Relator, | ) | |
| | ) | Judge _____ **JUDGE LIOI** |
| Plaintiffs, | ) | |
| | ) | **MAG. JUDGE LIMBERT** |
| v. | ) | |
| | ) | |
| AVANIR PHARMACEUTICALS, INC., | ) | **FILED UNDER SEAL,** |
| | ) | pursuant to 31 U.S.C. § 3730(b)(2) |
| and | ) | |
| | ) | |
| DEEPAK RAHEJA, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## COMPLAINT

Ann Lugbill (0023632)
Murphy Anderson, PLLC
2406 Auburn Avenue
Cincinnati, OH 45219
Phone: (513) 784-1280
Fax: (877) 784-1449
*alugbill@murphypllc.com*

**Attorney for Plaintiff-Relator**

David L. Scher (*Pro Hac Vice to be filed*)
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
Phone: (202) 261-2810
Fax: (202) 261-2835
*dscher@employmentlawgroup.com*

**Attorney for Plaintiff-Relator**

Complaint - Exhibit C

*CONFIDENTIAL AND UNDER SEAL*

## I.    INTRODUCTION

1.    Relator Kevin Manieri, individually and on behalf of the United States of America, brings this action against Defendants Avanir Pharmaceuticals, Inc. and Dr. Deepak Raheja for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS").

2.    Defendant Avanir is engaged in a drug kickback scheme with physicians around the United States, in which Avanir pays physicians speaking fees in exchange for the physicians' promises to prescribe Nuedexta, a drug that Avanir sells as a treatment for pseudobulbar affect (PBA).  PBA is a rare neurological condition that causes involuntary laughing and crying.

3.    Defendant Dr. Raheja participated in this illegal kickback scheme by knowingly soliciting and accepting kickbacks from Avanir in return for prescribing Nuedexta to his patients.

## II.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

5.    This Court has jurisdiction over Defendant Avanir pursuant to 31 U.S.C. § 3732(a) because Avanir does business in the Northern District of Ohio, including in Cuyahoga and Summit Counties, and knowingly offered inducements to Ohio physicians to induce those physicians residing in these counties to prescribe Nuedexta to patients residing in Ohio.  These inducements took the form of paid speaking engagements at venues in the Northern District of Ohio.  Avanir made these inducements through its Ohio-based sales employees for the purpose of establishing a network of prescribers of Nuedexta in Ohio.  As a result, Avanir committed acts proscribed by 42 U.S.C. § 1320a-7b and 31 U.S.C. § 3729 in this judicial district.

*CONFIDENTIAL AND UNDER SEAL*

6.    This Court has personal jurisdiction over Defendant Dr. Raheja because he resides in Summit County, Ohio. He has his principal place of business in the Cleveland, Ohio area in Cuyahoga County and committed acts proscribed by 42 U.S.C. § 1320a-7b and 31 U.S.C. § 3729 in the Northern District of Ohio, Eastern Division (Akron).

7.    Venue in the Northern District of Ohio, Eastern Division is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and this division.

8.    Venue in the Northern District of Ohio, Eastern Division (Akron) is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants Avanir and Dr. Raheja have extensive and deliberate contacts in this judicial district and division and because Dr. Raheja is a resident of Summit County.

9.    None of the allegations set forth in this Complaint have been "publicly disclosed," or are substantially the same as allegations that have been "publicly disclosed," as that phrase is used in 31 U.S.C. § 3730(e)(4)(A).

## III.    PARTIES

10.    Relator Kevin Manieri is a Pennsylvania resident and U.S. citizen. Mr. Manieri was employed by Defendant Avanir as Sales Director—North from August 2014 to November 2014. As Sales Director—North, Mr. Manieri was responsible for overseeing all sales in the Northeast, Midwest, and California, including in Ohio.

11.    Defendant Avanir Pharmaceuticals, Inc. is a biopharmaceutical company that markets and sells a single product, Nuedexta. Avanir's net revenues from Nuedexta exceed $25 million. Avanir is based in Aliso Viejo, California and has approximately 485 employees in the United States. Avanir is incorporated in Delaware.

*CONFIDENTIAL AND UNDER SEAL*

12.     On January 13, 2015, Avanir was acquired by Otsuka Pharmaceuticals Co., Ltd. for $3.5 billion. Avanir is now a wholly-owned subsidiary of Otsuka, but remains the same corporate entity with its headquarters in Aliso Viejo, California.

13.     At all relevant times, Avanir's President and Chief Executive Officer (CEO) was Keith Katkin. The Chief Commercial Officer, Rohan Palekar, reports directly to the CEO. Mr. Palekar oversees the Sales, Marketing, and Business Development divisions, each of which is headed by a Vice President. The Vice President of Sales, Michael McFadden, reports directly to Mr. Palekar. Relator Manieri reported directly to Mr. McFadden.

14.     Defendant Dr. Raheja is a neurologist whose practice is located at Grace Specialty Hospital, 2307 West 14th Street, Cleveland, Ohio. Dr. Raheja resides in Hudson, Ohio, in Summit County.

## IV.     FACTUAL ALLEGATIONS

### A. Nuedexta is FDA-Approved as a Treatment for Pseudobulbar Affect (PBA), a Rare Neurological Condition

15.     In October 2010, the U.S. Food and Drug Administration approved Nuedexta as a treatment for Pseudobulbar Affect, known as "PBA." Avanir began selling Nuedexta in January 2011.

16.     PBA is a neurological condition that causes involuntary outbursts of laughing and/or crying. PBA can afflict people who suffer from more serious conditions, such as Alzheimer's, dementia, multiple sclerosis (MS), Lou Gehrig's disease (ALS), traumatic brain injury (TBI), and stroke. The severity and frequency of PBA symptoms vary widely among patients, such that only some patients exhibiting PBA symptoms benefit substantially from pharmacological treatment. Nuedexta is not effective for all patients with PBA symptoms. The

*CONFIDENTIAL AND UNDER SEAL*

neurological standards for diagnosis of PBA as an illness have not been conclusively established by the medical community.

17. Doctors who observe PBA symptoms do not necessarily choose to treat PBA and frequently only treat the more serious underlying disease, which carries with it much greater health risks than PBA.

18. Avanir's marketing of Nuedexta targets Alzheimer's and dementia patients, who tend to be 65 years old and over and covered by Medicare. As a result, doctors who treat PBA with Nuedexta prescribe the drug predominantly to patients who are 65 years old and over.

19. Nuedexta can cause a number of side effects, including dizziness, diarrhea, hepatotoxicity, and certain cardiac effects. Nuedexta may cause "serotonin syndrome," with changes including altered mental status, restlessness, hyperthermia, shivering, and tremor.

20. To the best of Relator Manieri's knowledge, no independent studies have been conducted on the prevalence of PBA in the United States.

21. According to the American Academy of Neurology, PBA affects 20-50% of patients with ALS. Between 20,000 and 30,000 people in the United States have ALS, suggesting that somewhere between 4,000 and 15,000 people in the United States with ALS also have PBA.

22. The only published study on the prevalence of PBA in the U.S. is the PRISM study, released in 2013 and titled "PRISM: A Novel Research Tool to Assess the Prevalence of Pseudobulbar Affect Symptoms across Neurological Conditions" and authored by physicians Benjamin Rix Brooks, David Crumpacker, Jonathan Fellus, Daniel Kantor, and Randall E. Kaye. The article is available free online on the PLOS publication system, catalogued as August 2013 | Volume 8 | Issue 8 | e72232.

*CONFIDENTIAL AND UNDER SEAL*

23.     PRISM was funded and developed by Avanir. One of the study's five authors, Randall Kaye, is an Avanir employee. Another of the study's authors, Dr. Jonathan Fellus, received $64,085.39 in payments from Avanir between August and December of 2013, including $43,500 in speaking fees. Dr. Fellus's medical license was later revoked by the New Jersey Board of Medical Examiners for having a sexual relationship with a patient.

24.     Funding for conducting the PRISM study on PBA patients and the efficacy of Nuedexta and editorial support for manuscript preparation of the published study were provided by Defendant Avanir Pharmaceuticals, Inc. Other potential conflicts of interest are as follows: Dr. Brooks has received funding and/or research grants from Avanir Pharmaceuticals, Inc.; Dr. Crumpacker has served on a scientific advisory board for and received speaking fees from Avanir Pharmaceuticals, Inc.; Dr. Fellus has received a research grant and consulting fees from, has served on the Speakers Bureau for, and is a stockholder of Avanir Pharmaceuticals, Inc.; Dr. Kantor has received speaking and consulting fees from Avanir Pharmaceuticals, Inc., including in 2013; and Dr. Kaye is an employee and stockholder of Avanir Pharmaceuticals, Inc.

25.     The PRISM study used an overly broad definition of PBA, including within the 36.7% prevalence figure many participants who merely exhibited some of the symptoms commonly associated with PBA. The PRISM study's definition of PBA is not recognized by the American Academy of Neurology (AAN). AAN has not endorsed Avanir's estimate of the prevalence of PBA. Indeed, the PRISM study itself concluded that further research is needed to determine whether the definition of PBA it used actually confirms the presence of PBA. Accordingly, the number of participants in the PRISM study who were actually afflicted with PBA could be less than 1,941.

*CONFIDENTIAL AND UNDER SEAL*

26.     Clinical diagnosis of PBA is difficult, as physicians rarely observe the symptoms and must rely upon self-reporting of symptoms and their frequency and severity by patients or caregivers. Additionally, physicians trying to distinguish between PBA and other conditions must evaluate patients for other illnesses, often more serious and far more debilitating, which cause PBA-like symptoms, such as depression. The self-reporting interview process is time-consuming, particularly with elderly and disabled patients. Most busy physicians do not devote the time required for an in-depth review of patient symptoms necessary to make a definitive PBA diagnosis. While Avanir's sales and marketing promotes Nuedexta for all with PBA symptoms, a finding of PBA or PBA symptoms does not necessarily mean that pharmacological treatment with Nuedexta is appropriate. Many patients' PBA symptoms are not sufficiently severe to interfere with daily activities. Other patients' symptoms show little or no improvement with Nuedexta. Additionally, Nuedexta has potential side effects that can pose serious risks. Because Nuedexta may cause dizziness, the danger of falling is heightened, a serious consequence for the elderly and disabled.

27.     Nuedexta is typically prescribed for 30 days at a time, so that a refill is required every month. The list price of the drug in 2014 was approximately $625 for a 30-day prescription. Thus for a patient who takes the drug year-round, the annual cost (at list price) is about $7,500. The cost of Nuedexta is ultimately reimbursed by Medicare, Medicaid, or another government payor.

28.     Nuedexta is a combination of two generic drugs, quinidine and dextromethorphan, that cost about $20 monthly in their generic form. Both drugs had been available for at least 60 years before Avanir started developing Nuedexta.

*CONFIDENTIAL AND UNDER SEAL*

7

## B. Avanir Encourages its Salesforce to Leverage Speaking Fees

29.     Avanir has a national sales operation to support Nuedexta sales.  At the corporate level, Vice President of Sales Michael McFadden oversees sales for the entire United States.

30.     Relator Manieri held the position of Sales Director—North and reported directly to Mr. McFadden.  Mr. Manieri's counterpart in the southeastern states, Denise Prindiville, was Sales Director—South, and also reported directly to Mr. McFadden.

31.     Avanir divided the North and South into regions, each headed by a Regional Business Manager.  Eight Regional Business Managers reported directly to Mr. Manieri.

32.     Each Regional Business Manager oversees 8 to 10 Sales Representatives, who are each responsible for generating Nuedexta prescriptions within a geographic subset of their respective regions.

33.     Avanir Vice President of Sales McFadden oversees two Nuedexta sales groups: Specialty (where Relator Manieri worked) and Long-Term Care (LTC).  The Specialty group markets Nuedexta to physicians' practices, while LTC markets Nuedexta primarily to nursing homes and long term care facilities.

34.     Avanir's corporate leadership approves an annual speaker program budget, to be distributed in portions to each Sales Representative.  Avanir approves these funds for Sales Representatives to use to pay Nuedexta prescribers to appear at speaking engagements.

35.     Avanir Vice President of Sales McFadden approves the speaker program budgets for the North and South areas in the Specialty group and the national speaker program budget for LTC.  Avanir's Chief Commercial Officer, Rohan Palekar, determines the overall speaker program budget for both sales forces.

*CONFIDENTIAL AND UNDER SEAL*

8

36.     Avanir allocates to each Sales Representative about $15,000 annually for speaker programs.  Although Regional Business Managers have discretion as to how to spend speaking funds, Vice President of Sales McFadden, as discussed below, intervened on at least two occasions to arrange for speaker programs for high-volume Nuedexta prescribers.

37.     Avanir judges sales employees' performance based solely on the number of Nuedexta prescriptions written by physicians in their respective territories. In addition, Avanir ranks Sales Representatives in order of the number of prescriptions written in their territories, effectively pitting them against each other.

38.     Avanir further encourages improper sales techniques by rewarding Sales Representatives based on the total number of prescriptions in their territories, rather than the number of new prescribers in their territories.  Avanir measures prescription results solely based on the total number of prescriptions (which includes refills), which creates an incentive for sales employees to encourage existing physician prescribers to prescribe more Nuedextra for inappropriate and illegal reasons.

39.     Avanir's intentional sales promotion policy enables and encourages Sales Representatives to meet their personal performance goals by maximizing the number of prescriptions written by a few high-volume prescribers.

40.     The combination of Avanir's measure of performance with the low prevalence of diagnosed PBA necessarily leads to Sales Representatives rewarding high-volume prescribers with speaking fees to induce them to continue prescribing Nuedexta and to increase the number of their prescriptions.

41.     The low prevalence of diagnosed PBA and the challenges involved in diagnosis make it difficult for an individual physician to consistently identify candidates for treatment with

*CONFIDENTIAL AND UNDER SEAL*

Nuedexta. The only way for a physician to become a high-volume prescriber, then, is to prescribe the drug to patients who present questionable or borderline cases for treatment, but do not necessarily need or benefit from Nuedexta.

42.     Avanir sales employees must give physicians an incentive to prescribe Nuedexta if they are to meet their performance goals, since sales employees are judged relative to the performance of their peers. The most effective incentive for physicians is a financial one.

43.     Avanir's requirement that Sales Representatives draft "Money Maker" lists of the top 10 to 15 prescribers in their territories and concentrate their sales efforts on those "money makers" reinforces Avanir's sales and marketing policy of encouraging a small number of prescribers to write large numbers of Nuedexta prescriptions.

44.     Because Regional Business Managers' performance depends on the prescriptions generated by the Sales Representatives they oversee, many Regional Business Managers instruct their employees to leverage speaking fees to induce physicians to prescribe Nuedexta. Most Regional Business Managers consider use of speaking fees as the only way to produce prescription results that are acceptable to management, as the low prevalence of diagnosed PBA often means that the only way to produce high-volume prescribers is to reward physicians who prescribe Nuedexta by paying them speaking fees.

45.     As a result, most physicians who prescribe Nuedexta on a consistent basis do so because they expect to receive or have been promised future speaking fees from Avanir.

46.     Avanir's business model is vividly illustrated by Avanir's relationship with Defendant Dr. Raheja.

*CONFIDENTIAL AND UNDER SEAL*

### C. Avanir Has a *Quid Pro Quo* Relationship with Defendant Dr. Raheja, Who Writes Twice as Many Prescriptions as any Other Doctor in the Country

47.     Defendant Dr. Raheja is by far the most prolific prescriber of Nuedexta in the United States. In the six months ending September 19, 2014, Dr. Raheja wrote 1,287 prescriptions.

48.     During this period, from March to September 2014, Dr. Raheja wrote an average of 50 prescriptions every week.

49.     In the week of May 5, 2014 alone, Dr. Raheja wrote 68 prescriptions.

50.      Dr. Raheja's total of 1,287 prescriptions is more than twice the number of prescriptions written by the physician with the second-highest number of prescriptions, Dr. Idan Sharon, who wrote 541 prescriptions in the same period.

51.     In fact, Dr. Raheja wrote more prescriptions than the second- and third-ranked physicians in the United States combined (ranked by the total number of prescriptions written).

52.     Consistent with Avanir's policy of rewarding high-prescribing physicians with lucrative speaking fees, Dr. Raheja is Avanir's highest-paid speaker in the United States.

53.     In FY 2014, Avanir paid Dr. Raheja for 42 speaking programs. For these appearances, Avanir paid Dr. Raheja a total of $56,250.

54.     Relator Manieri learned during a September 29, 2014 conversation with Frank Mazzucco, Regional Business Manager for Ohio Valley, that Avanir paid Dr. Raheja speaking fees to induce him to prescribe Nuedexta.

55.     During their September 29, 2014 conversation, Mr. Mazzucco told Relator Manieri that he needed additional speaker funds because he "need[ed] to have eight or nine speaking engagements guaranteed for Dr. Raheja."

*CONFIDENTIAL AND UNDER SEAL*

56.     When Relator Manieri asked Mr. Mazzucco why the speaker funds that had already been allocated to his region were not enough, Mr. Mazzucco replied, "He's our biggest prescriber and he likes to speak," referring to Dr. Raheja.

57.     Relator Manieri responded that he was concerned that Mr. Mazzucco was offering Dr. Raheja speaking engagements to encourage Dr. Raheja to prescribe Nuedexta.  Mr. Mazzucco replied, "Well yeah, that's kind of what I'm doing."

58.     Relator Manieri told Mr. Mazzucco that he was not comfortable with his request for more speaker funds for Dr. Raheja and that Mr. Mazzucco should move forward with the existing funds that had been budgeted.  Relator Manieri said he would reconsider the request if Mr. Mazzucco presented a compelling business reason why Avanir should budget additional funds for speaking programs.

59.     That same day, Mr. Mazzucco forwarded Relator Manieri an email from his direct report, Sales Representative Bill Stackhouse, showing that Avanir paid Dr. Raheja a total of $56,250 in FY 2014.

60.     Mr. Stackhouse is responsible for Avanir's Cleveland, Ohio territory, where Dr. Raheja's practice is located.  Dr. Raheja is Mr. Stackhouse's most important physician on his sales call list.

61.     Regional Sales Manager Mazzucco's September 29, 2014 request to Relator Manieri for additional funds indicates that he needed the funds immediately, as Avanir allocated the FY 2015 speaker funds days later in early October 2014 (when the new fiscal year began).

62.     Around this same time, in late September 2014, Dr. Raheja ramped up his prescription writing to help Mr. Stackhouse, the Sales Representative who arranges Dr. Raheja's speaker programs, win a year-end sales bonus.

*CONFIDENTIAL AND UNDER SEAL*

63.     The bonus Mr. Stackhouse was vying for was the President's Club Trip, an all-expenses paid vacation that Avanir awards to Sales Representatives with the highest number of prescriptions written by physicians in their territories.  Mr. Stackhouse was in the running for the bonus, but was competing with other top-producing Sales Representatives.

64.     At Mr. Stackhouse's request, Dr. Raheja accelerated his prescription-writing in the final weeks of FY 2014, which ended September 30, 2014, to increase Mr. Stackhouse's total number of prescriptions for FY 2014.  Mr. Stackhouse is credited with every Nuedexta prescription that Dr. Raheja writes.

65.     Dr. Raheja accelerated his prescriptions by moving up his Nuedexta patients' regularly scheduled appointments so that he could refill Nuedexta prescriptions in September that he otherwise would have refilled in October 2014.

66.     Accelerating patient visits necessarily meant that Dr. Raheja had fewer opportunities to prescribe the drug in October 2014; as a result, he wrote fewer prescriptions in October than in September.  This was acceptable for both Mr. Stackhouse and Dr. Raheja, as their purpose was to give Stackhouse a final "bump" in FY 2014 sales production to increase his chances of winning the bonus.  The bonus was not affected by his October 2014 sales results.

67.     Dr. Raheja's prescription-writing surge in the final weeks of FY 2014 is such a common company sales practice that it is referred throughout Avanir as "closing business."

68.     Relator Manieri heard other Regional Business Managers, as well as Vice President of Sales McFadden, discuss the need to "close business" in late September 2014.  This indicates that other physicians were encouraged to employ Dr. Raheja's tactic in order to benefit the Avanir Sales Representatives calling upon them.  The physicians had an incentive to trade

*CONFIDENTIAL AND UNDER SEAL*

favors with Sales Representatives in this way, as the Sales Representatives have authority to schedule speaking engagements and authorize the lucrative payments made to Avanir speakers.

69.     Accordingly, Dr. Raheja and other physicians participated in "closing business" with the expectation that Avanir would reward their efforts with future paid speaker programs.

70.     Dr. Raheja also used his influence with Avanir's management to try to win Mr. Stackhouse the year-end bonus. In early October 2014, Dr. Raheja called Vice President of Sales McFadden, who was responsible for deciding which sales employees would win the bonus. While the bonus was automatically awarded to employees who ranked in the top 10% nationally, Mr. McFadden had discretion to award the bonus to one "wild card" person outside the top 10%.

71.     Because Mr. Stackhouse was not in the top 10% in Avanir's Nuedexta sales results for FY 2014, when Dr. Raheja called Vice President of Sales McFadden, he urged Mr. McFadden to select Mr. Stackhouse as the "wild card" and award him the bonus.

72.     The fact that Dr. Raheja went to such great lengths to benefit Mr. Stackhouse demonstrates that Dr. Raheja did so expecting something in return, namely, continued fees from paid speaker programs.

73.     In addition to speaking fees, Avanir pays Dr. Raheja consulting fees for being a member of an Avanir advisory board. Avanir currently has no products on the market other than Nuedexta.

74.     Under his consulting contract, Avanir pays Dr. Raheja a fixed sum for each board meeting he attends, plus reimbursement for travel expenses.

**D. Avanir's Speaker Programs**

75.     Dr. Raheja's speaker programs usually take place in the Cleveland, Ohio area.

*CONFIDENTIAL AND UNDER SEAL*

76.     For each speaker program, Avanir Sales Representative Bill Stackhouse and Regional Business Manager Mazzucco organize the programs through a third-party speaker bureau. Up until recently, the speaker bureau Avanir retained was CRG. In the fall of 2014, Avanir switched to Healthstar.

77.     Avanir's speaker programs typically take the form of a meeting in a restaurant. Avanir pays speakers a standard fee for each engagement. Avanir pays for the attendees' meals and reimburses the speaker for travel expenses. Attendance varies, but the attendance is generally small, often 5 to no more than 10 physicians. The responsible Avanir Sales Representative attends as well.

78.     If the audience is mostly comprised of physicians affiliated with the same practice, Avanir may hold the speaker program in that practice's office.

79.     When Avanir pays a physician to appear at a speaker program, Avanir requires the physician to read from a standard slide presentation that was prepared by Avanir's Compliance Department. The speaker programs focus on the prevalence of PBA, the PRISM study, and the use of Nuedexta as a treatment for patients with Alzheimer's and dementia. The physician's presentation is not supposed to go beyond the prepared slides, but Avanir allows speakers to talk about their own Nuedexta prescribing experiences with patients in response to participant questions.

80.     Avanir encourages physicians to speak about a patient they diagnosed with PBA who had a positive experience with Nuedexta. Many Avanir Sales Representatives have commented that few physicians recognize when a patient has PBA.

*CONFIDENTIAL AND UNDER SEAL*

Electronically Filed 01/21/2020 11:01 / / CV 20 928108 / Confirmation Nbr. 1920927 / CLSLP

81.     Avanir's goal is for speakers to endorse diagnosing PBA and treating it by
prescribing Nuedexta.  From Avanir's point of view, the most effective speakers are those who
promote diagnosis and treatment based upon a bare minimum of symptoms.

82.     Avanir has approximately 150 physicians enrolled in its speaker bureau.  Avanir
does not enroll a physician in the speaker bureau unless the physician consistently prescribes
Nuedexta.

83.     As a result, many physicians prescribe Nuedexta to patients whom they would not
otherwise prescribe the drug to because of the speaking fees they expect to receive.  This
financial motive is apparent in the case of Defendant Dr. Raheja.

**E.  Avanir's Management Endorses the Use of Speaking Fees as Inducements**

84.     Even before Relator Manieri learned of Avanir's *quid pro quo* relationship with
Dr. Raheja, his boss, Vice President of Sales McFadden, was aware of the arrangement and
tacitly approved it.

85.     After Relator Manieri's September 29, 2014 conversation with Regional Business
Manager Mazzucco, Mr. Manieri reported Mr. Mazzucco's request for additional speaker funds
for Dr. Raheja to Mr. McFadden.

86.     Relator Manieri told Mr. McFadden that he was concerned about the reason for
Mr. Mazzucco's request for additional speaking funds and about Avanir's relationship with Dr.
Raheja.  Mr. McFadden responded, "Well, we just have to deal with people like that."

87.     Mr. McFadden then told Relator Manieri about a New York doctor who
demanded that Avanir arrange more speaker programs for him. After Avanir declined to do so,
Mr. McFadden said, the doctor "stopped writing Nuedexta prescriptions in order to teach us a

*CONFIDENTIAL AND UNDER SEAL*

lesson." Mr. McFadden then said words to the effect of, "Avanir went back and provided him more speaking opportunities and now he's writing prescriptions again."

88.     Avanir Vice President of Sales McFadden told Relator Manieri that the New York physician who demanded more speaker fees in return for writing prescriptions "is in a position where he can affect our goal nationally," referring to Avanir's national sales goal for Nuedexta sales.

89.     After hearing about the additional speaker fees Avanir paid to the New York doctor who stopped writing Nuedexta prescriptions until his demand for more speaking engagements and fees was met, Relator Manieri asked Mr. McFadden if he was "comfortable with that." Mr. McFadden replied, "It's just something that we have to do." Relator Manieri observed that Mr. McFadden was uncomfortable with Mr. Manieri raising this concern about the ethics and legality of Avanir's response to physician demands for payments.

90.     Avanir's Chief Commercial Officer, Rohan Palekar, knew or should have known that a *quid pro quo* relationship exists between Dr. Raheja and Avanir.

91.     Dr. Raheja and Mr. Palekar have met in person on more than one occasion to discuss Avanir's business. Mr. Palekar reports directly to the CEO of Avanir, Keith Katkin.

92.     Mr. Palekar has met in person with other physicians who are top prescribers of Nuedexta, including Dr. Zepure Kouyoumdjian, the sixteenth-highest ranking prescriber in the country, who Mr. Palekar met on November 7, 2014.

93.     Dr. Raheja has met Relator Manieri and his counterpart, Denise Prindiville, the Sales Director for the South area. Relator Manieri and Ms. Prindiville had dinner with Dr. Raheja in Cleveland, Ohio, on October 30, 2014, where Ms. Prindiville introduced Relator Manieri as Dr. Raheja's new Senior Sales Leadership contact.

*CONFIDENTIAL AND UNDER SEAL*

94.    Avanir Sales Director Prindiville approves of Avanir's use of speaking fees as inducements to physicians.

95.    In late 2014, Avanir Sales Director Prindiville and Relator Manieri jointly interviewed Robert Crump, an applicant for an Ohio Sales Representative position. This interview took place in Dallas, Texas. At the time, Mr. Crump was a sales representative working for a different pharmaceutical company.

96.    In the pre-employment interview with Mr. Crump, Relator Manieri asked him to describe a time when he developed a hard-to-reach physician into a great customer. Mr. Crump responded that he first invited the physician to join the company's speaker bureau. Then, once the physician was enrolled, Mr. Crump told the physician that Mr. Crump would not arrange any speaking engagements for him until he prescribed the company's drug to at least 100 patients.

97.    After the interview, Relator Manieri told Ms. Prindiville that he was bothered by Mr. Crump's statement that he used his company's speaker bureau to generate business. Ms. Prindiville responded that she was not bothered by Mr. Crump's statement. Ms. Prindiville subsequently directed Human Resources to offer Mr. Crump the Sales Representative position, which he accepted. Ms. Prindiville made the final decision to hire Mr. Crump.

**F. Avanir Offers Speaking Fees as Inducements To Doctors around the Country**

98.    Avanir has arrangements with doctors in New Jersey, New York, and California similar to its kickback arrangement with Dr. Raheja.

99.    For example, Dr. Idan Sharon, a Brooklyn, New York-based neurologist, is the second-highest ranked prescriber of Nuedexta in the United States. Dr. Sharon is related to Odelia Harel, the Avanir Sales Representative responsible for sales in Brooklyn, New York. Ms. Harel has authority to arrange speaker programs for physicians in Brooklyn.

*CONFIDENTIAL AND UNDER SEAL*

100. Avanir paid Dr. Sharon a total of $20,322.72 over a four-month period in 2013. This amount includes $18,000 in speaking fees and a $500 "Consulting Fee," indicating that Dr. Sharon, like Dr. Raheja, is a member of Avanir's advisory board.

101. Dr. Jonathan Fellus, a neurologist based in New Jersey, was the seventeenth-highest ranked prescriber of Nuedexta in the United States. Dr. Fellus wrote 220 prescriptions in the six months ending on September 19, 2014. Dr. Fellus was one of the five authors of Avanir's PRISM study, which was released in August 2013.

102. Avanir paid Dr. Fellus a total of $64,085.39 between August and December of 2013. These payments included $43,500 in speaking fees and $6,125 in consulting fees. On September 25, 2013 alone—just before the end of fiscal year 2013—Avanir made 7 payments to Dr. Fellus for speaking fees, totaling $9,000.

103. In June 2014, the New Jersey Board of Medical Examiners revoked Dr. Fellus's medical license for having a sexual relationship with a woman he was treating for recurring seizures.

104. Avanir encourages Sales Representatives in upstate New York to leverage speaking fees to induce physicians to prescribe Nuedexta.

105. Albany, New York Sales Representative Karen Kaufman's business plan for 2013 emphasizes the use of speaking fees in this way, as she lists one of her goals as: "Get my 3 speakers to write more consistently."

106. Ms. Kaufman's business plan also states that she plans to use the paid speaker programs to encourage Drs. Wymer and Grosso to write more Nuedexta prescriptions:

*CONFIDENTIAL AND UNDER SEAL*

**Territory Goals**: (SMART - Specific, Measurable, Attainable, Realistic and Timely)

- Grow Nuedexta prescriptions with Wymer and Brehaut- additional 2 scripts a week by start of Q2

- Develop Wymer and Grosso as speakers

107.    Avanir requires Sales Representatives to draft business plans for approval by their Regional Business Manager.  Once approved, business plans are reviewed by the Area Sales Director (either Relator Manieri or Ms. Prindiville) and Vice President of Sales McFadden. Once a business plan is approved, that Sales Representative is bound to the plan's objectives and strategies.

108.    Ms. Kaufman's 2014 business plan, which was approved by her Regional Business Manager, Matt Powers, contains further evidence that Avanir endorsed her tactic of offering speaker programs to physicians to induce the physicians to increase their Nuedexta prescriptions:

**High Access/High Decile**: (This is the list each of us created at our POA. Must be someone you can see at least 2x a month taken from 7-10s. You can include 6's if your number of 7-10s is relatively small)
-Brehaut 1b G
-Wymer 9 N
-Gooch 9 N
-Kucherov 7 N

Does my call activity reflect what I committed to? It can improve on my high decile, high access doctors.

What is your plan to accelerate business among this group? Higher frequency, additional speaker opps, corp touches, updates on managed care

*CONFIDENTIAL AND UNDER SEAL*

109. The excerpt above indicates that Ms. Kaufman only offers speaker programs to physicians who consistently prescribe Nuedexta, with the expectation that the physician will continue to prescribe at an equal or greater rate.

110. Sales Representative Kaufman's comments with respect to Dr. Buonnano illustrate Avanir's policy of rewarding only high-prescribing physicians with speaking fees. Ms. Kaufman states in her business plan: "Growing relationship. May consider as a speaker if vol[ume] continues to grow."

111. In Ms. Kaufman's August 26, 2013 evaluation, Regional Business Manager Matt Powers instructed her to "ask for more" from two doctors, Drs. Wymer and Gooch, who Mr. Powers referred to as "our Speakers."

112. In Ms. Kaufman's September 19, 2013 evaluation, Powers wrote: "For you to accomplish your goals--the ones you sent me, your speakers need to actively look for PBA and put pen to pad," referring to Drs. Wymer and Gooch. In her January 30, 2014 evaluation, Regional Business Manager Powers instructed her to "spend $$$ [money] on lunches and programs" to encourage physicians to prescribe Nuedexta.

113. As a result, Ms. Kaufman arranged a speaker program on March 25, 2014, which Drs. Wymer and Gooch both attended. Nine people attended this program.

114. Ms. Kaufman arranged another speaker program on May 8, 2014, which nine people attended, including Dr. Gooch. Ms. Kaufman also arranged a speaker program on May 14, 2014, which seven people attended, including Dr. Wymer.

115. Avanir paid a total $2,773.56 in speakers fees and expenses for these two small group presentations.

*CONFIDENTIAL AND UNDER SEAL*

116.     Regional Business Manager Powers's instruction to Ms. Kaufman, which she executed, shows that Avanir offers speaker programs as a thing of value in exchange for the physician-speakers' promise to prescribe Nuedexta.

117.     Regional Business Manager Kevin Tiffany, who oversaw the entire Nuedexta California market, also encouraged his salesforce to use speaker programs as inducements.  One of his top-performing Sales Representatives, Chris Lambrecht, offered speaker programs as either inducements or rewards to physicians who consistently prescribed Nuedexta.  Mr. Lambrecht's business plan states that he sought to arrange a speaker program for Dr. Dramov simply because she requested it and not for any marketing or educational purpose.  Mr. Lambrecht's business plan reveals that he was "working" to get Dr. Zepure Kouyoumdjian "trained as a speaker."  Dr. Kouyoumdjian was the sixteenth-highest ranked prescriber of Nuedexta in the nation in 2014.

118.     Avanir's sales methods, as demonstrated in the approved sales plan of Mr. Lambrecht, amount to *quid pro quo* arrangements between Avanir and Drs. Kouyoumdjian and Dramov.

119.     Avanir's management encourages the use of *quid pro quo* arrangements by rewarding the sales behaviors practiced by Mr. Lambrecht.

120.     At a sales leadership meeting in October 2014, Avanir's leadership commended Mr. Lambrecht's sales performance as an example of "best practices."

121.     Regional Business Manager Kevin Tiffany, who approved Mr. Lambrecht's business plan, knew and approved of Mr. Lambrecht's use of speaker programs as inducements. Avanir has since promoted Mr. Tiffany to Sales Director—West.

*CONFIDENTIAL AND UNDER SEAL*

122.   Avanir's management encourages its salesforce to rank physicians by the number of Nuedexta prescriptions they write, which Avanir calls the "Money Maker List."

123.   Avanir Sales Representative Reid Yoshimura, who reported directly to Regional Business Manager Kelly Martin, stated in his Money Maker List (contained in his business plan, which was approved by Ms. Martin) that he plans to "squeeze" his top-performing customer, Dr. Rajiv Kumar, to write more Nuedexta prescriptions.

124.   The characterization of healthcare providers as "money makers" is encouraged by high-ranking Avanir officers, including Vice President of Sales McFadden, who prepared a PowerPoint presentation that contained an instruction that all Sales Representatives send their "money maker list[s]" to their Regional Business Manager.

125.   In a September 25, 2014 email, Denise Prindiville, Sales Director—South, directed the Regional Business Managers under her direction to rank providers in "money maker" lists.

126.   Regional Business Manager Matt Powers required his direct reports, including Nicole Guido and Karen Kaufman, to generate a "Money Maker List."  Regional Business Manager Powers conveyed this instruction in an October 2, 2014 email and in Ms. Kaufman's 2013 business plan.

127.   Avanir CEO Keith Katkin is aware of Avanir's use of "Money Maker Lists" and the reference to prescibers of Nuedexta as "money makers."

**G. Avanir Increased its Speaker Program Budget As Part of "Operation Barracuda"**

128.   In late August 2014, Avanir began expanding its salesforce in anticipation of an aggressive marketing campaign that Avanir dubbed "Operation Barracuda:"

*CONFIDENTIAL AND UNDER SEAL*

# Avanir Salesforce Size & Structure as of FY15



2 Salesforces:  Specialty and Long Term Care

**Specialty**
2 Area Directors (North and South)
17 Regions
140 Specialty Neuroscience Area Managers

129.     Operation Barracuda entailed a significant increase in the speaker funds allocated to each Sales Representative and an expansion of Avanir's Nuedexta salesforce.

130.     Denise Prindiville, Sales Director—South, stated in a September 8, 2014 email that Operation Barracuda would increase the speaker funds for each Sales Representative to $7,300 for the first half of the fiscal year, enough for about three speaker programs.

## H. Avanir Fired Relator Manieri in Retaliation for Objecting to Avanir's *Quid Pro Quo* Relationship with Dr. Raheja

131.     At a meeting in Boston, Massachusetts on November 17, 2014, a Regional Business Manager in the New England region complained to Relator Manieri that some of his direct reports were underperforming.

132.     Relator Manieri suggested to this Regional Business Manager that he consider terminating the underperforming employees. Relator Manieri's comment was overheard by a Sales Representative present at the meeting, who complained about Relator Manieri's suggestion. This complaint was passed on to Vice President of Sales McFadden.

133.     A few days later, on November 21, 2014, Mr. McFadden reprimanded Relator Manieri during a phone call for the suggestion Mr. Manieri made at the November 17 meeting. Mr. McFadden criticized Mr. Manieri's management skills during this call.  Mr. McFadden

*CONFIDENTIAL AND UNDER SEAL*

Electronically Filed 01/21/2020 11:01 / / CV 20 928108 / Confirmation Nbr. 1920927 / CLSLP

never before criticized any aspect of Mr. Manieri's management skills, nor had Mr. Manieri received any negative performance evaluations or been subjected to any disciplinary actions.

134.    Mr. McFadden ended the call by saying: "I have enough here to terminate you, but I'll give you an opportunity to resign." Relator Manieri defended his actions and urged Mr. McFadden not to terminate him, but Mr. McFadden ultimately said "the decision has been made." Mr. McFadden did not cite any reasons for the termination other than the suggestion Relator Manieri made to his direct report at the November 17 meeting.

135.    Avanir terminated Mr. Manieri's employment on November 21, 2014.

## COUNT I
### Defendant Avanir Knowingly Caused to be Presented False or Fraudulent Claims for Payment in Violation of 31 U.S.C. § 3729(a)(1)(A)
### (Against Defendant Avanir)

136.    Relator Manieri realleges and incorporates the allegations set forth above as though fully alleged herein.

137.    The False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

138.    The Anti-Kickback Statute deems a claim that results from an unlawful kickback to be a violation of 31 U.S.C. § 3729(a), providing that "a claim that includes items or services resulting from a violation of this section [42 U.S.C. § 1320a-7b] constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of Title 31." 42 U.S.C. § 1320a-7b(g).

139.    Avanir knowingly caused false or fraudulent claims for payment to be presented to the United States for Nuedexta prescriptions to Medicare patients written in 2013 and 2014. These claims include, but are not limited to, prescriptions written by Defendant Dr. Raheja

*CONFIDENTIAL AND UNDER SEAL*

(Cleveland, OH), Dr. Idan Sharon (Brooklyn, NY), Dr. James Wymer (Albany, NY), Dr. William Gooch (Kingston, NY), Dr. Zepure Kouyoumdjian (Morgan Hill, CA), and Dr. Borina Dramov (Salinas, CA) (collectively, the "Physicians"). The Physicians wrote these prescriptions knowing that the patients were enrolled in Medicare and knowing that payment for the drug would be made in whole or in part by the United States.

140.    Under 42 U.S.C. § 1320a-7b(g), these claims were false or fraudulent because they included items or services resulting from a violation of 42 U.S.C. § 1320a-7b(b):

a.  Dr. Raheja knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Dr. Raheja wrote 1,287 prescriptions over the course of only six months; during this period, Dr. Raheja received $56,250 in compensation from Avanir (not including fees Avanir paid Dr. Raheja pursuant to his consulting agreement). On September 29, 2014, Regional Business Manager Frank Mazzucco requested additional speaker funds specifically for Dr. Raheja and acknowledged that the speaking fees were meant as an inducement for Dr. Raheja to prescribe Nuedexta. At the time Mr. Mazzucco made this request, Dr. Raheja was ramping up his prescriptions to help Sales Representative Stackhouse win a year-end bonus, suggesting that Dr. Raheja and Mr. Stackhouse had an agreement that Dr. Raheja would ramp up his prescription writing in exchange for the promise of future speaking fees. That Dr. Raheja went to such great lengths to help Mr. Stackhouse win the bonus is itself evidence of a *quid pro quo*, as Dr. Raheja would not likely have done so unless he had been assured he would receive something in return.

b.  Dr. Idan Sharon knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Dr. Sharon wrote 541 prescriptions in only six months, more than any doctor in the country with the exception of Dr. Raheja; furthermore,

Electronically Filed 01/21/2020 11:01 / / CV 20 928108 / Confirmation Nbr. 1920927 / CLSLP

Dr. Sharon is related to the Avanir Sales Representative who had the authority to arrange speaking programs for Dr. Sharon.

c. Dr. Wymer knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Dr. Wymer received speaking fees for at least two speaking programs in 2014. Dr. Wymer received these fees knowing that Avanir paid him these fees in return for his writing a certain number of prescriptions in a given week. This knowledge is demonstrated by Dr. Wymer's understanding with Sales Representative Karen Kaufman that she would arrange for paid speaking programs for Dr. Wymer only if Dr. Wymer wrote a certain number of Nuedexta prescriptions, as shown by Ms. Kaufman's business plans and Regional Business Manager Matt Powers's comments in Ms. Kaufman's performance evaluations.

d. Dr. Gooch knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Dr. Gooch received speaking fees for at least three speaking programs in 2014. Dr. Gooch received these fees knowing that Avanir paid him these fees in return for his writing a certain number of prescriptions in a given week. This knowledge is demonstrated by Dr. Gooch's understanding with Sales Representative Karen Kaufman that she would arrange for paid speaking programs for Dr. Gooch only if Dr. Gooch wrote a certain number of Nuedexta prescriptions, as shown by Ms. Kaufman's business plans and Regional Business Manager Matt Powers's comments in Ms. Kaufman's performance evaluations.

e. Dr. Kouyoumdjian knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Dr. Kouyoumdjian received speaking fees in return for writing a certain number of Nuedexta prescriptions, as shown by Sales

*CONFIDENTIAL AND UNDER SEAL*

Representative Chris Lambrecht's business plan and the fact that Dr. Kouyoumdjian wrote 229 prescriptions in the six-month period ending September 12, 2014, placing her 16th in the United States in the number of Nuedexta prescriptions written.

f. Dr. Dramov knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Chris Lambrecht's business plan indicates that he arranged a speaker program for Dr. Dramov simply because Dr. Dramov requested it, evidencing the existence of a *quid pro quo*.

141. Dr. Raheja presented claims for payment for Nuedexta prescriptions to Medicare patients that were false or fraudulent for the additional reason that they were not supported by medical necessity, since it is implausible that Dr. Raheja was seeing an average of 50 patients per week who actually exhibited symptoms of PBA, which affects less than one million Americans. As a result, Dr. Raheja knew that the vast majority of claims for Nuedexta prescriptions that he wrote to Medicare patients were not supported by medical necessity.

142. Avanir knew that the above-mentioned claims for payment that were presented to the United States for Nuedexta prescriptions written by the Physicians were false or fraudulent because Avanir knew that the prescriptions were written in return for speaker fees.

143. The knowledge of Sales Representatives Bill Stackhouse, Karen Kaufman and Chris Lambrecht; Regional Business Managers Frank Mazzucco, Kelly Martin, and Matt Powers; Sales Director Denise Prindiville; and Vice President of Sales Michael McFadden of the kickback scheme alleged herein is attributable to Defendant Avanir because each of these employees knew that Avanir paid speaking fees to the Physicians to induce the Physicians to prescribe Nuedexta and because each of these employees participated in Avanir's kickback scheme with intent to benefit Avanir.

*CONFIDENTIAL AND UNDER SEAL*

## COUNT II
### Defendant Raheja Knowingly Presented or Caused to be Presented False or Fraudulent Claims for Payment in Violation of 31 U.S.C. § 3729(a)(1)(A)
### (Against Defendant Raheja)

144.    Relator Manieri realleges and incorporates the allegations set forth above as though fully alleged herein.

145.    Dr. Raheja knowingly presented or caused to be presented false or fraudulent claims for payment for Nuedexta prescriptions to Medicare patients in 2013 and 2014. Dr. Raheja wrote these prescriptions knowing that payment for the drug would be made by the United States.

146.    Under 42 U.S.C. § 1320a-7b(g), these claims were false or fraudulent because they included items or services resulting from a violation of 42 U.S.C. § 1320a-7b(b).

147.    Specifically, Dr. Raheja knowingly and willfully solicited or received speaking fees in return for prescribing Nuedexta to Medicare patients. Dr. Raheja wrote 1,287 prescriptions over the course of six months; during this period, Dr. Raheja received $56,250 in compensation from Avanir (not including consulting fees). On September 29, 2014, Regional Business Manager Frank Mazzucco requested additional speaker funds specifically for Dr. Raheja and acknowledged that the speaking fees were meant as an inducement for Dr. Raheja to prescribe Nuedexta. At the time Mazzucco made this request, Dr. Raheja was ramping up his prescriptions to help Sales Representative Stackhouse win a year-end bonus, suggesting that Dr. Raheja and Mr. Stackhouse had an agreement that Dr. Raheja would ramp up his prescription writing in exchange for the promise of future speaking fees. That Dr. Raheja went to such great lengths to help Mr. Stackhouse win the bonus is itself evidence of a *quid pro quo*, as Dr. Raheja would not likely have done so unless he had been assured he would receive something in return.

*CONFIDENTIAL AND UNDER SEAL*

148.     These claims were false or fraudulent for the additional reason that they were not supported by medical necessity, since it is implausible that Dr. Raheja was seeing an average of 50 patients per week who actually exhibited symptoms of PBA, which affects less than one million Americans.  As a result, Dr. Raheja knew that the vast majority of claims for Nuedexta prescriptions that he wrote to Medicare patients were not supported by medical necessity.

## COUNT III
### Defendants Avanir and Raheja Knowingly Conspired to Present False or Fraudulent Claims in Violation of 31 U.S.C. § 3729(a)(1)(C) (Against Defendants Avanir and Raheja)

149.     Relator Manieri realleges and incorporates the allegations set forth above as though fully alleged herein.

150.     Avanir and Dr. Raheja knowingly conspired to present false or fraudulent claims for payment to the United States.

151.     Avanir and Dr. Raheja had an agreement that Avanir would give Dr. Raheja kickbacks in the form of speaker fees in exchange for Dr. Raheja writing Nuedexta prescriptions to Medicare patients.  This scheme violated 42 U.S.C. § 1320a-7b(b), which provides for criminal penalties, and thus constituted an agreement to violate a federal criminal statute.

152.     Avanir and Dr. Raheja knowingly and voluntarily participated in this kickback scheme, as shown by the pressure Dr. Raheja exerted on Avanir to offer him additional speaker fees and the acknowledgements by Regional Business Manager Frank Mazzucco and Vice President of Sales Michael McFadden that these speaker fees were intended to induce Dr. Raheja to prescribe Nuedexta.

153.     Both Avanir and Dr. Raheja committed overt acts in furtherance of this conspiracy, including Avanir's payment of speaker fees to Dr. Raheja for the 42 speaking

*CONFIDENTIAL AND UNDER SEAL*

programs he attended in FY 2014 and Dr. Raheja's acts of writing 1,287 Nuedexta prescriptions, the vast majority of which were for Medicare patients.

## COUNT IV
### Defendant Avanir Terminated Relator Manieri's Employment in Violation of the False Claims Act, 31 U.S.C. § 3730(h) (Against Defendant Avanir)

154.    Relator Manieri realleges and incorporates the allegations set forth above as though fully alleged herein.

155.    Relator Manieri was an "employee" of Avanir as that term is used in 31 U.S.C. § 3730(h).

156.    Relator Manieri engaged in protected activity under the False Claims Act when he objected to Avanir's illegal kickback scheme in conversations with Vice President of Sales Michael McFadden.

157.    After Relator Manieri objected to Avanir's use of speaking fees as inducements in his conversation with Mr. McFadden, Mr. Manieri's relationship with Mr. McFadden quickly soured.

158.    Mr. McFadden's criticism of Relator Manieri's management practices during their November 21, 2014 conversation was pretext for retaliation for Mr. Manieri's opposition to Avanir's illegal kickback scheme.

159.    Avanir terminated Relator Manieri's employment in retaliation for his opposition to Avanir's kickback scheme, in violation of 31 U.S.C. § 3730(h).

160.    Avanir's violation of 31 U.S.C. § 3730(h) has caused and will continue to cause Relator Manieri to sustain economic and other harm, including, but not limited to, the loss of employment opportunities, the loss of future earning power, back pay and front pay, and interest.

*CONFIDENTIAL AND UNDER SEAL*

161.   Avanir's violations of 31 U.S.C. § 3730(h) entitle Relator Manieri to reinstatement with the same seniority status that he would have had but for Avanir's unlawful retaliation, recovery of 2 times the amount of back pay, including interest on the back pay, and Mr. Manieri's special damages sustained as a result of the retaliation, including his litigation costs, expert witness fees, and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, as to all claims brought by Relator Kevin Manieri on behalf of and in the name of the United States of America, Relator prays that judgment be entered against all Defendants as follows:

(a) In favor of the United States and against Defendants for treble damages to the federal government from the submission of false or fraudulent claims, and the maximum civil penalties for each violation of the False Claims Act;

(b) In favor of the United States and against Defendants for the maximum civil penalties for each violation of 42 U.S.C. § 1320a-7b(b), as provided for by 42 U.S.C. § 1320a-7a;

(c) In favor of Relator Manieri for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorney fees, and costs incurred by him;

(d) In favor of Relator Manieri for the maximum relief allowed under 31 U.S.C. § 3730(h)(2), including 2 times the amount of back pay, interest on the back pay, and compensation for special damages sustained as a result of the retaliation, including litigation costs and reasonable attorneys' fees;

(e) For all costs incurred as a result of maintaining this civil action; and

(f) For such other and further relief as this Court deems just and proper.

*CONFIDENTIAL AND UNDER SEAL*

Respectfully submitted,

*[signature]*

Ann Lugbill (0023632)
Murphy Anderson, PLLC
2406 Auburn Avenue
Cincinnati, OH 45219
Phone: (513) 784-1280
Fax: (877) 784-1449
*alugbill@murphypllc.com*

David L. Scher (*Pro Hac Vice to be filed*)
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
Phone: (202) 261-2810
Fax: (202) 261-2835
*dscher@employmentlawgroup.com*

**Attorneys for Plaintiff-Relator Kevin Manieri**

## <u>REQUEST FOR TRIAL BY JURY</u>

Relator hereby demands a trial by jury.

*[signature]*

Counsel for Relator

*CONFIDENTIAL AND UNDER SEAL*

## CERTIFICATE OF SERVICE

I hereby certify that on March _27_ , 2015, a true and correct copy of the foregoing was

served upon the following and indicated below.

Ann Lugbill (Ohio Bar 0023632)
Murphy Anderson, PLLC
2406 Auburn Avenue
Cincinnati, OH 45219
Phone: (513) 784-1280
Fax: (877) 784-1449
*alugbill@murphypllc.com*

### Via Hand Delivery:

Eric H. Holder, Jr., Esq.
Attorney General of the United States
Office of the Attorney General, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Steven M. Dettelbach, Esq.
United States Attorney
U.S. Attorney's Office
2 South Main Street
Akron, OH 44308
Phone: (330) 375-5716

### Via Regular U.S. Mail:

Kent W. Penhallurick
Assistant U.S. Attorney
Office of the United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852
Phone: (216) 622-3682

*CONFIDENTIAL AND UNDER SEAL*

**SUMMONS IN A CIVIL ACTION     COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER CLEVELAND, OHIO 44113**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20928108 | D4 FX | 40907657 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

|  |  |
|---|---|
| MARILYN WILLIAMS-SALMON **VS** DEEPAK RAHEJA, M.D., ET AL | **PLAINTIFF** **DEFENDANT** |

## SUMMONS

AVANIR PHARMACEUTICALS, INC.
30 ENTERPRISE
SUITE 400
ALISO VIEJO CA 92656

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Said answer is required to be served on:



**Plantiff's Attorney**

THOMAS P RYAN
55 PUBLIC SQUARE, SUITE 2100

CLEVELAND, OH 44113-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

PETER J CORRIGAN
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Jan 22, 2020 |

By _____
Deputy

COMPLAINT FILED   01/21/2020



CMSN130

**FedEx**

January 25, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 779805303780

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | D.RODRIGEZ | Delivery Location: | 30 ENTERPRISE |
| Service type: | FedEx Express Saver | | ALISO VIEJO, CA, 92656 |
| Special Handling: | Deliver Weekday;<br>Direct Signature Required | Delivery date: | Jan 24, 2020 11:20 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 779805303780 | Ship Date: | Jan 22, 2020 |
| | | Weight: | 2.0 LB/0.91 KG |

**Recipient:**
AVANIR PHARMACEUTICALS, INC.,
30 ENTERPRISE
SUITE 400
ALISO VIEJO, CA, US, 92656

**Shipper:**
CCoC,
1200 Ontario
Cleveland, OH, US, 44113

| | |
|---|---|
| Reference | CV20928108 |
| Invoice | 40907657 |



CV20928108 / 40907657 / AVANIR PHARMACEUTICALS, INC. / 2020-1-25 05:30

Thank you for choosing FedEx



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

**STIPULATION FOR LEAVE TO PLEAD**
**February 19, 2020 10:31**

By: RICHARD T. HAMILTON 0042399

Confirmation Nbr. 1946801

MARILYN WILLIAMS-SALMON

vs.

DEEPAK RAHEJA, M.D., ET AL

CV 20 928108

**Judge:** PETER J. CORRIGAN

**Pages Filed:** 2

COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| MARILYN WILLIAMS-SALMON, | ) | CASE NO. CV-20-928108 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER J. CORRIGAN |
| | ) | |
| v. | ) | **STIPULATION TO EXTEND TIME** |
| | ) | **FOR DEFENDANT AVANIR** |
| DEEPAK RAHEJA, M.D., *et al.*, | ) | **PHARMACEUTICALS, INC. TO** |
| | ) | **ANSWER, PLEAD, OR OTHERWISE** |
| Defendants. | ) | **MOVE IN RESPONSE TO THE** |
| | ) | **COMPLAINT** |

Pursuant to Local Rule 8(C), Defendant Avanir Pharmaceuticals, Inc. ("Avanir") and Plaintiff Marilyn Williams-Salmon, by and through counsel, hereby stipulate to an extension of 30 days, through and including March 23, 2020, of Avanir's time in which to answer, plead, or otherwise move in response to the Complaint. No prior extensions have been sought or granted.

Respectfully submitted,

*/s/ Daniel J. Ryan* (with consent)
Daniel J. Ryan (0012134)
55 Public Square, Suite 2100
Cleveland, OH 44113
Tel: (216) 363-6082
Daniel.ryan@ryanllp.com
*Counsel for Plaintiff Marilyn Williams-Salmon*

*/s/ Richard T. Hamilton, Jr.*
Joshua A. Klarfeld (0079833)
Richard T. Hamilton, Jr. (0042399)
Ulmer & Berne LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113
Tel: (216) 583-7000/Fax: (216) 583-7001
jklarfeld@ulmer.com
rhamilton@ulmer.com
*Counsel for Defendant Avanir Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February, 2020, a copy of the foregoing was served on the following via the court's electronic filing system as well as via U.S. Mail, postage prepaid:

Daniel J. Ryan, Esq.
Thomas P. Ryan, Esq.
55 Public Square, Suite 2100
Cleveland, OH 44113

*Attorneys for Plaintiff*

Donald J. Malarcik
54 E. Mill Street, Suite 400
The Gothic Building
Akron, OH 44308-0000

*Attorney for Defendant Frank Mazzucco*

I hereby further certify that on this 19th day of February, 2020, a copy of the foregoing was served via regular U.S. Mail, postage prepaid, on the following parties who have not yet entered an appearance in this case:

Deepak Raheja, M.D.
2307 West 14th Street
Cleveland OH 44113

Gregory Hayslette
280 Birchbark Trail
Aurora, OH 44204

*/s/ Richard T. Hamilton, Jr.*
*One of the Attorneys for Defendant*
*Avanir Pharmaceuticals, Inc.*

2618369.3